IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: C. R. BARD, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC CORP. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2326 |
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2327 |
| IN RE: COLOPLAST CORP. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2387 |

Honorable Joseph R. Goodwin
United States District Court Judge

THIS DOCUMENT APPLIES TO ALL CASES

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

As Judge Joseph Goodwin aptly stated, "courts should be reluctant to sacrifice the interests of clients and former clients for the perceived business interests of lawyers, especially when the state supreme court, in promulgating the Rules of Professional Conduct, has failed to adopt contrary rules." *Roberts & Schaefer Co. v. San-Con, Inc.*, 898 F. Supp. 356, 363 (S.D. W. Va. 1995). In this case, Daniel J. Christensen ("Mr. Christensen") and MedStar Funding, LC ("MedStar") (collectively, "Movants") are being sacrificed by their *current counsel*, Cox Smith Matthews Incorporated ("Cox Smith") in favor of another Cox Smith client, American Medical Systems, Inc. ("AMS"). As a result, Cox Smith, and their co-counsel, Reed Smith LLP ("Reed

Smith"), through Cox Smith's representation of Movants, presumptively have knowledge of Movants' confidential and privileged information. In an effort to act in response to this clear violation of ethical guidelines, Movants have filed a Motion to Disqualify Cox Smith and its co-counsel, Reed Smith, from the Texas state court transvaginal mesh litigation this afternoon. (*See Medstar Funding, L.C.'s Motion to Disqualify Counsel*, attached to Motion as **Exhibit A**).

Despite this clear ethical conflict, and presumptively possessing privileged and confidential information obtained from its co-counsel, Cox Smith, Reed Smith asks that this Court permit it to go forward with Mr. Christensen's deposition, which is currently set for January 28, 2014. (*See Second Amended Notice of Videotaped Deposition*, Doc. No. 1055, attached to Motion as **Exhibit B**).

It is now the province of this court to put an end to the "trend to dispose of centuries-old confidentiality rules solely for the convenience of modern lawyers" and prevent the use of Movants' privileged information against them by Reed Smith and its co-counsel Cox Smith. *Healthnet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 758 (S.D. W. Va. 2003) (*quoting Roberts & Schaefer Co.*, 898 F. Supp. at 363). Therefore, for the foregoing reasons and those stated below, Movants respectfully request this Court preclude AMS from taking Mr. Christensen's deposition until the ethical conflicts are resolved. Additionally, Movants request that this Court enter a protective order precluding *any party* from taking Mr. Christensen's deposition until such time as Movants can fully evaluate the extent to which their confidential and privileged information has been prejudicially divulged to AMS and the other transvaginal mesh MDL defendants by Cox Smith and Reed Smith.

## I.     FACTUAL BACKGROUND

Movants seek a protective order due to the intimate relationship between Cox Smith, a firm that currently represents *both* MedStar and AMS, and Reed Smith, AMS's co-counsel with Cox Smith in transvaginal mesh litigation in Texas and lead counsel for AMS in this MDL. The complex factual background giving rise to this significant ethical issue warrants precise explanation.

### A.     The relationship between Movants and Cox Smith.

In the months of March–May 2012, MedStar retained the services of Cox Smith for the purpose of conducting legal research and providing opinions on various matters of importance to MedStar's business dealings. (*See* Ex. A, p. 1). In the process, Cox Smith obtained access to confidential and privileged information about Movants' business operations. Cox Smith continued to provide legal services at various times to Movants through March 2013, and Movants even sought Cox Smith's counsel as late as October 2013.

### B.     The relationship between AMS, Cox Smith and Reed Smith.

Movants discovered the nature of the relationship between Cox Smith and AMS on January 16, 2014, when Jane E. Bockus, Shareholder of Cox Smith, filed "*American Medical Systems, Inc.'s Amended Emergency Motion to Compel an Independent Medical Examination of Plaintiff and a Preliminary Deposition of Treating Physician* in the matter of *Williams v. Rufus Green, M.D. et al.* (hereinafter the "Dallas Motion"), Cause No. DC-12-13771 in the District Court of Dallas County, Texas. (*See* Dallas Motion, attached to Motion as **Exhibit C**). In the Dallas Motion, Cox Smith, <u>representing AMS</u>, noted that the plaintiff's treating physician "suggest that [plaintiff] obtain a loan to pay for the surgery," and proceeded to state that such a recommendation was "especially troubling in light of the recent discovery that certain 'litigation

funding' companies have been recruiting doctors to perform mesh removal surgeries on plaintiffs and to prepare operative reports tailored to improve their positions in litigation." (Dallas County Motion, p. 5 n.3 (*citing Affidavit of Andrew Cassidenti, M.D.* (hereinafter, the "Cassidenti Affidavit"))). The Cassidenti Affidavit, as this Court is well aware, arose out of <u>this MDL</u>, and unambiguously impugns MedStar as a business and Mr. Christensen's personal integrity. In other words, Cox Smith levied a direct attack against MedStar, its current client, with the purpose of advancing the interests of AMS, another Cox Smith client.

Recognizing the Cassidenti Affidavit, Movants began to inquire about Cox Smith's relationship with AMS and AMS's lead counsel in this litigation, Reed Smith, which initially procured the Cassidenti Affidavit for use in this MDL. Movants did not have to wait long—the next day, January 17, 2014, Cox Smith and Reed Smith, **as co-counsel for AMS**, filed a number of deposition notices in the matter of *Garza v. Ramirez, M.D. et al.* (hereinafter, the "Hidalgo Notices"), Cause No. C-0362-13-B in the District Court of Hidalgo County, Texas. (*See* Hidalgo Notices, attached to Motion as **Exhibit D**). Yet another connection was revealed on January 20, 2014, when MRC, employed by Cox Smith to obtain records, submitted a *Notice of Intention to Take Deposition by Written Questions* (in the *Garza* matter mentioned *supra*. (*See Notice of Intention to Take Deposition by Written Questions*, attached to Motion as **Exhibit E**, p. 1) Unsurprisingly, the party to whom records were to be disclosed was Reed Smith. (*See id.* at p. 6)

At this point, it became clear to Movants that its counsel, Cox Smith, was working side-by-side with AMS's lead counsel in this MDL, Reed Smith, in the defense of the transvaginal mesh litigation in Texas. Further investigation revealed an extensive working relationship. Indeed, in this MDL, on August 30, 2013, AMS issued a subpoena to Mr. Christensen for a deposition, which was to take place at the offices of Cox Smith. (*See* Ex. B). Further, in CTO –

128, the United States Judicial Panel on Multidistrict Litigation ("J.P.M.L.") transferred *Chaffin, et al. v. American Medical Systems, Inc. et al.*, 5:13-cv-00863 (W.D. Tex 2013) to the Southern District of West Virginia for consolidated pre-trial proceedings, and notified attorneys Jane Elizabeth Bockus, Sandra Celine Zamora and Michael Douglas Napoli of Cox Smith alongside Tracy G. Weiss of Reed Smith of the transfer. (*Conditional Transfer Order (CTO – 128)*, Doc. No. 905, attached to Motion as **Exhibit F**, p. 14). Notably, Cox Smith removed that case was on September 19, 2013. (*See Notice of Removal*, Case 5:13-cv-00863-HLH, Doc. No. 1, attached Motion as **Exhibit G**, p. 6). Another Western District of Texas case, *Martinez et al. v. American Medical Systems, Inc., et al.*, 3:13-cv-00357 (W.D. Tex. 2013), lists counsel from **both Cox Smith and Reed Smith as counsel for AMS** before the case was transferred to this MDL. (*See "Attorneys" Query for 3:13-cv-00357*, attached to Motion as **Exhibit H**, p. 8–10).[1]

The evidence is overwhelming—Cox Smith and Reed Smith, both of whom represent AMS, are intimately involved not only in the Texas-based transvaginal mesh litigation, but also in the cases that now comprise a significant portion of the cases in this MDL. Equally obvious is the simple fact that Cox Smith, as shown through the Dallas Motion, has little regard for Mr. Christensen and MedStar as its clients and will attack Movants without hesitation for AMS's benefit.

In sum, Cox Smith maintains an attorney-client relationship with Movants and AMS, has demonstrated no qualms with attacking Movants for AMS's benefit, works side-by-side with Reed Smith in AMS's defense in transvaginal mesh litigation, and has intimate knowledge of

---

[1] The list of cases involving both Reed Smith and Cox Smith is extensive, as can be seen in Conditional Transfer Order (CTO – 136), dated November 25, 2013, in which Cox Smith and Reed Smith are notified of the transfer of no less than **eight cases in that transfer order alone.** (*See Conditional Transfer Order (CTO – 136)*, Doc. No. 975, attached to Motion as **Exhibit I**, p. 8–9, 11–12, 14–17, 19–20, 23–24, 26–27, 30). While it is not possible to know the full extent of the relationship between these two firms as counsel for AMS, it is clear that they are inextricably linked with regard to the transvaginal mesh litigation in both West Virginia and Texas.

confidential and privileged information that could be extremely harmful to Movants' business dealings and ability to defend itself with regard to AMS's subpoena in this MDL. This combination leads to only one possible result—Cox Smith will do whatever is necessary to aid AMS, including sharing confidential information with Reed Smith for AMS's benefit.

In an effort to protect themselves, Movants have had to incur the expense of retaining Texas counsel to file a Motion to Disqualify Cox Smith and Reed Smith from representing AMS in the Texas state court transvaginal mesh litigation <u>this afternoon</u>. (*See* Ex. A). Movants are requesting an expedited hearing on the matter given the sensitive nature of the issues involved, and anticipate that a hearing will be held in the very near future.

## II. <u>LEGAL STANDARD</u>

Rule 26(c) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery [or] specifying terms, including time and place, for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A–B). The party moving for a protective order bears the burden of establishing good cause. *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009); *Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 221 (N.D. W. Va. 2007). In so doing, the moving party "may not rely upon 'stereotyped and conclusory statements.'" *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D. Md. 2006) (quoting 8A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2035 (2d ed. 1994)). Instead, the movant "must present a 'particular and specific demonstration of fact' as to why a protective order should issue." *Id.* (quoting Wright et al., *supra,* § 2035). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" *Id.* (quoting *Merit Indus., Inc. v. Feuer,* 201 F.R.D. 382, 384–85 (E.D. Pa. 2001)) see also *Medlin v. Andrew,* 113

F.R.D. 650, 653 (M.D.N.C. 1987). There is no better example of "good cause" than in this case—failure to grant this protective order subjects Mr. Christensen to the abusive use of his own privileged and confidential information for the benefit of an adverse party without his consent.

### III. ARGUMENT

**A. The ethical concerns surrounding the relationship of Cox Smith and Reed Smith are good cause for issuing a protective order precluding Mr. Christensen's deposition.**

Good cause exists for issuance of a protective order in this case. Notably, "the mere allegation of . . . an attorney-client conflict of interest is sufficient to stay discovery until the district court resolves the issue of conflict of interest." *Williams v. KOPCO, Inc.*, 162 F.R.D. 670, 672 (D. Kan. 1995). In *KOPCO*, plaintiff's counsel represented the defendant in a collection matter which had been finalized prior to commencement of that case. *Id.* at 671. Plaintiff's counsel asserted that there was no conflict of interest, but KOPCO claimed "an existing attorney-client relationship." *Id.* at 672. The court was especially concerned with plaintiff's counsel having the opportunity to depose a former employee of KOPCO after having advised him in a prior matter, stating that "the uncontested facts are sufficiently compelling in the case to present a bias against defendant by having [the former employee] answer deposition questions by" plaintiff's counsel or a member of plaintiff's counsel's firm. *Id.* As such, the court reasoned that "until the matter of the potential conflict of interest has been resolved, discovery should not proceed."

The *KOPCO* decision is even more persuasive in this context because of the indisputable evidence of a co-counsel relationship between Cox Smith and Reed Smith that extends into both the Texas state court transvaginal mesh litigation and this MDL. That same evidence demonstrates that Cox Smith has conducted itself in a manner directly adverse to Movants' interests, which constitutes a violation of Rule 1.06 of the Texas Disciplinary Rules of

7

Professional Conduct.[2] That violation can and should be imputed to Cox Smith's acting co-counsel, Reed Smith. *See In re American Home Prods. Corp.*, 985 S.W.2d 68 (Tex. 1998).[3] Thus, while *KOPCO* involved an "allegation" of a conflict of interest, Movants have presented this Court with hard evidence of such a conflict, rendering the reasoning of *KOPCO* even more applicable in this case.

Indeed, the whole purpose of Movants' Motion to Disqualify Cox Smith and Reed Smith in the Texas state court matters is to prevent the unethical use of Movants' privileged and confidential information for AMS's benefit. If this Court permits Mr. Christensen's deposition to go forward, that purpose is rendered moot, as Reed Smith will be able to use the information it undoubtedly obtained from its co-counsel Cox Smith against Mr. Christensen, unfairly prejudicing Movants' ability to protect their interests in both this MDL and the Texas state court litigation. This is the precise concern that the court in *KOPCO* expressed when issuing the stay on discovery. *KOPCO*, 162 F.R.D. at 672. While Cox Smith will not be conducting the

---

[2] The Fourth Circuit has made it clear that the Rules of Professional Conduct that apply to ethical questions in this jurisdiction are the rules of the state where counsel who committed the original ethical violation is located. *See In re Liotti*, 667 F.3d 419, 423 (4th Cir. 2011) (applying the New York Rules of Professional conduct "because Mr. Liotti's office is located in the State of New York.") At all times during the relevant ethical violations, Cox Smith operated out of Texas. (*See, e.g.*, Exs. C, E and F) Therefore, Texas's ethical rules and the interpretation thereof govern this case.

Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct states that "a lawyer shall not represent a person if the representation of that person: (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm" unless "each affected or potentially affected client consents to such representation." A matter is "substantially related" when "a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar." *State Bar of Texas v. Dolenz*, 3 S.E.2d 260, 270–71 (Tex. Ct. App. 1999) (*citing In re Epic Holdings*, 985 S.W.2d 41, 51 (Tex. 1998)) (emphasis added). Movants and AMS are clearly adverse in this MDL; further, given Cox Smith's willingness to attack Movants openly in a pleading, there is clearly a genuine threat that Cox Smith will divulge confidential information behind closed doors to benefit AMS.

[3] *American Home Products Corporation* provides that the "party seeking disqualification must first demonstrate that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information." *In re American Home Prod. Corp.*, 985 S.W.2d at 81 (emphasis added). A "rebuttable presumption then arises that disqualified counsel shared confidential information with co-counsel." *Id.* As shown by Movants' evidence attached to the Motion filed herewith, Reed Smith and Cox Smith have appeared *on pleadings* as co-counsel, demonstrating "joint preparation for trial" and the "apparent receipt by co-counsel of confidential information." (*See* Exs. E, I) Therefore, a rebuttable presumption arises that Reed Smith has knowledge of Movants' confidential and proprietary information.

discovery directly, there is no doubt that Cox Smith's knowledge is imputed to Reed Smith, making the reasoning and conclusion of *KOPCO* directly on point with the facts of this case.

Therefore, because there is indisputable evidence of ethical violations, the adjudication of which will have an immediate and substantial impact on AMS's right to conduct Mr. Christensen's deposition through its lead counsel Reed Smith, a protective order forbidding the deposition is warranted. Alternatively, Movants request that this Court grant a stay of the deposition until the Texas court can fully and adequately adjudicate Movants' Motion to Disqualify in Texas state court.

**B.** **Permitting the other MDL defendants to conduct the deposition will be unduly burdensome and render the protection obtained by the Court's protective order moot.**

While a protective order precluding AMS from deposing Mr. Christensen until the conflict of interest is resolved is necessary, it alone is insufficient to serve the purposes for which it is intended. Currently, Mr. Christensen's deposition is *cross-noticed* among the various transvaginal mesh MDLs in the Southern District of West Virginia. (*See, e.g., Amended Cross-Notice of Video Deposition of Daniel J. Christensen*, 2:12-md-2327, Doc. No. 1044, attached to Motion as **Exhibit J**). Therefore, even if this Court were to issue a protective order with regard to AMS, Mr. Christensen would still be subject to deposition by the other MDL defendants. This is improper for a number of reasons.

First, assuming AMS is eventually permitting to conduct a deposition, Mr. Christensen would be forced to undergo multiple depositions without good cause. The MDL defendants have never presented a scintilla of support for the notion that Mr. Christensen's deposition is time-sensitive. Without a legitimate reason for requiring that Mr. Christensen be *immediately* subject to deposition, forcing him to submit to multiple depositions would be in direct contravention to

the plan language of Rule 26(c), which expressly condemns "undue burden or expense." Fed. R. Civ. P. 26(c). In this case, the undue burden and expense is the cost of attending multiple depositions, including the cost of retaining counsel for each.

Second, it is important to recall that Movants have no direct interest in this case—they are not parties, and furthermore they are not even responsible for the conflict of interest and subsequent need for protection. Many "courts have considered the fact that discovery is being sought from a third or non-party, which weighs against permitting discovery." *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012). Indeed, "the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs." *Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 (M.D.N.C. 2002). These well-reasoned opinions hold especially true in this case, where permitting multiple depositions would double the "unwanted burden" as a result of conduct completely outside Movants' control.

Finally, the circumstance of the MDLs in the Southern District of West Virginia suggest that the MDL defendants *share information* amongst themselves. For example, simple review of the subpoenas issued to Mr. Christensen and MedStar in each of the MDLs reveals virtually identical language. (*Compare* 2:12-md-2327, Doc. No. 915-1, attached to Motion as **Exhibit K**, *with* 2:12-md-2325, Doc. No. 855, in part, attached to Motion as **Exhibit L**). The sharing of work product amongst the various MDL defendants is a strong indicator that those MDL defendants are also sharing other information. In turn, MDL defendants have the opportunity to take advantage of Cox Smith and Reed Smith's wrongdoing for the benefit of their own clients.

While such conduct may not necessarily be an issue in standard litigation, it is well recognized that the fact that these cases are MDLs, which involve thousands of individuals, creates "tension between individual justice and mass litigation. Courts must be particularly

sensitive to the feelings of lay people about what constitutes justice in these mass cases that are widely discussed." *Blue Cross & Blue Shield of New Jersey v. Philip Morris, Inc.*, 53 F. Supp. 2d 338, 347 (E.D.N.Y. 1999).

The *Phillip Morris* court continues:

> In small-scale litigation, it is generally possible to explain ethical issues and questions of conflicts of interest to the litigants. In a mass case we lack that opportunity. *See generally* Carrie Menkel–Meadow, *Ethics and the Settlements of Mass Torts: When the Rules Meet the Road*, 80 Cornell L. Rev. 1159 (1995) ("The existing [ethics] rules ... do not really contemplate either the kind of lawyer-client relations that exist in the settlement of mass torts or the kinds of tasks and activities engaged in by the legal actors in these situations."); Essay, *Ethical Dilemmas in Mass Tort Litigation*, 88 Nw.L.Rev. 469 (1994) (discussing need to adapt ethical rules developed in the context of small-scale litigations to mass torts); Stephen Gillers, *A Rule Without a Reason*, 79–Oct. ABAJ 118 (inapplicability of Rule 5.6(b) to mass torts). Particularly in such a highly visible case, where the conduct of the parties and their attorneys is subject to public scrutiny, the need to avoid all appearance of impropriety is acute.

Id. In short, the fact of the matter is that this is mass litigation, not a singular case—the rules do not fit quite as well in this context. In turn, the appearance of propriety is extremely important. Such issues are particularly relevant here because there is a strong possibility, based on the apparent manner in which the MDL defendants share work product, that they share information, which extends the "taint" of Cox Smith and Reed Smith's unethical conduct to the other MDL defendants as well. To prevent the appearance of impropriety, this Court should take special precaution to ensure that Movants' privileged and confidential information *cannot* be used against them.

Therefore, because subjecting Mr. Christensen to multiple depositions would be unduly burdensome, based on wrongful conduct not attributable to Movants, and because permitting the other MDL defendants to conduct depositions would give the appearance of impropriety until the

conflict issues are resolved, Movants request that this Court issue a protective order staying such deposition until the Texas court can fully and adequately adjudicate Movants' Motion to Disqualify in Texas state court.

## IV.  CONCLUSION

Based on the foregoing analysis, it is clear that the only equitable and logical way to ensure that Movants are not unfairly prejudiced by the improper use of their privileged and confidential information is a protective order (1) precluding AMS from taking Mr. Christensen's deposition through counsel Reed Smith until the ethical conflicts are resolved, and (2) staying Mr. Christensen's deposition by *any* MDL defendant until the Texas state court is able to fully adjudicate the issue of Cox Smith and Reed Smith's conflict of interest and the extent to which such conflict is imputable to counsel for the other defendants in these MDLs.

Dated: January 24, 2014                         Respectfully Submitted,

                                                                     s/ James S. Crockett, Jr.
Alexander Macia (WV State Bar No. 6077)
James S. Crockett, Jr. (WV State Bar No. 9229)
David A. Bosak (WV State Bar No. 11947)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard East
Charleston, West Virginia 25301
Phone: 304.340.3800
Fax: 304.340.3801

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| IN RE: C. R. BARD, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC CORP. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2326 |
| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2327 |
| IN RE: COLOPLAST CORP. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | MDL No. 2387 |

**Honorable Joseph R. Goodwin**
**United States District Court Judge**

**THIS DOCUMENT APPLIES TO ALL CASES**

## CERTIFICATE OF SERVICE

I, James S. Crockett, Jr., do hereby certify that on January 24, 2014, I electronically filed the foregoing "**Memorandum of Law in Support of Motion for Protective Order**" with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ James S. Crockett, Jr.
James S. Crockett, Jr. (WV State Bar No. 9229)