IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: C. R. BARD, INC.,
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION                MDL No. 2187

---

THIS DOCUMENT RELATES TO C. R. BARD WAVE 4 & WAVE 5 CASES

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Ahmed El-Ghannam, Ph.D.)

Pending in *In re C. R. Bard, Inc. 2:10-md-2187*, MDL 2187, is C. R. Bard, Inc. ("Bard")'s *Daubert* motion[1] to Exclude or Limit Certain Opinions and Testimony of Ahmed El-Ghannam, Ph.D. [ECF No. 4567]. The motion is now ripe for consideration because the briefing is complete. As set forth below, Bard's motion is **DENIED**.

I.  Background

These groups of cases reside in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 29,000 cases currently pending, approximately 3,000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized

---

[1] Rather than refile, Bard entered a "notice" adopting prior *Daubert* motions that incorporate the parties positions previously formulated in Waves 1 and 2.

1

basis. To this end, I selected certain cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded.

Upon the creation of a wave, I enter a docket control order subjecting each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. *See, e.g.*, Pretrial Order ("PTO") # 236, *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10-md-02187, Jan. 27, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Included among the discovery rules imposed by the court is the obligation of the parties to file *Daubert* motions seeking to limit or exclude the testimony of general experts in the main MDL, MDL 2187, and to identify which cases the motion would affect.

## II. Legal Standard

Under Federal Rule of Evidence 702, expert testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue" and (1) is "based upon sufficient facts or data" and (2) is "the product of reliable principles and methods" which (3) has been reliably applied "to the facts of the case." Fed. R. Evid. 702. A two-part test governs the admissibility of expert testimony. The evidence is admitted if it "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). The proponent of expert testimony does not have the burden to "prove" anything. However, he or she must "come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).

The district court is the gatekeeper. It is an important role: "[E]xpert witnesses have the potential to be both powerful and quite misleading"; the court must "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 588, 595; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). I "need not determine that the proffered expert testimony is irrefutable or certainly correct" – "[a]s with all other admissible evidence, expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (alteration in original) (quoting *Daubert*, 509 U.S. at 596 (alteration in original)); *see also Md. Cas. Co.*, 137 F.3d at 783 ("All *Daubert* demands is that the trial judge make a 'preliminary assessment' of whether the proffered testimony is both reliable . . . and helpful.").

*Daubert* mentions specific factors to guide the overall relevance and reliability determinations that apply to all expert evidence. They include (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94).

Despite these factors, "[t]he inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594-95); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("We agree with the Solicitor General that '[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" (citation omitted)); *see also Crisp*, 324 F.3d at 266 (noting "that testing of reliability should be flexible and that *Daubert*'s five factors neither necessarily nor exclusively apply to every expert").

With respect to relevancy, *Daubert* also explains:

> Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. The consideration has been aptly described by Judge Becker as one of "fit." "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.

*Daubert*, 509 U.S. at 591-92 (citations and internal quotation marks omitted).

## III. Analysis

The plaintiffs seek to introduce Dr. Ahmed El-Ghannam as an expert in the field of biomaterials and bioengineering.[2] In moving to exclude his testimony, Bard

---

[2] As described by the plaintiffs, "A biomaterial is a natural or synthetic material (such as a metal or polymer) that is implanted into living tissue, especially as part of an implantable medical device. Bioengineering (short for biological engineering or biomedical engineering) is the biological or medical application of engineering principles." Notice by Pls. of Adoption of Prior Daubert Resp. to Notice of Adoption of Mot. to Exclude or Limit Ops. & Test. of Ahmed El-Ghannam, Ph.D. in Wave 4 & Wave 5 Cases, Ex. 1 at 2 n.1. [ECF No. 4594-1].

4

requests the court prevent Dr. El-Ghannam from testifying on five topics: (1) general and specific causation; (2) design defect; (3) FTIR or SEM testing on polypropylene; (4) MSDS Polypropylene interaction or resin quality opinions; and (5) manufacturing stresses and mesh testing.

At the outset, I note that the court's opinion regarding certain aspects of Dr. El-Ghannam's proffered expert testimony is reflected in the bellwether opinion, *In re C. R. Bard, Inc.*, 948 F. Supp. 2d 589, 631-36 (S.D. W. Va. 2013). It appears that since the entry of this opinion, the parties modified the pleadings in certain respects. Though dissimilar enough to warrant consideration with fresh eyes, the motion before the court currently indeed shares aspects of its predecessor's arguments. My prior decision therefore governs and I **ADOPT** that holding and the reasoning articulated therein.

As discussed below, the plaintiffs' motion to exclude certain opinions expressed by Dr. El-Ghannam is **DENIED**.

1. <u>Opinions Regarding General and Specific Causation</u>

Bard claims that Dr. El-Ghannam is unqualified to render opinion on the issue of causation, general or specific. According to Bard, an opinion as to specific causation requires Dr. El-Ghannam to analyze medical and immunological factors. Dr. El-Ghannam, lacking a medical degree or clinical experience in pathology, is therefore unqualified to render an opinion on the issue of causation. Furthermore, Bard continues, Dr. El-Ghannam's specific causation opinions lack reliability as he

5

acknowledges his failure to review deposition testimony of any plaintiff, spouse, treating physician, or fact witness for whom he purports to give specific opinions.

In response, the plaintiffs argue that Dr. El-Ghannam's opinions concern his observations, from the perspective of the product, of the effects polypropylene degradation has inside the body. In other words, although their conclusions conflict, the plaintiffs argue that the relevancy of Dr. El-Ghannam's opinion is no different in character from Dr. Maureen Reitman's viewpoint that she "will not address medical causation, but will address the underlying materials and product factors that may relate to medical causation." Notice by Pls. of Adoption of Prior Daubert Resp. to Notice of Adoption of Mot. to Exclude or Limit Ops. & Test. of Ahmed El-Ghannam, Ph.D. in Wave 4 & Wave 5 Cases, Ex. 1 at 6 [ECF No. 4594-1].

As it relates to the issue of general causation, and as I previously stated, Dr. El-Ghannam is certainly qualified in the field of biomaterials and biomedical engineering—he is educated and his professional experience has focused in this field. In moving to exclude, Bard fails identify any particular opinion advanced by Dr. El-Ghannam that speaks to the issue of general causation outside the scope of his expertise. Instead, Bard relies upon its conclusory assertion that without a medical education or background Dr. El-Ghannam is not "qualified to draw any connection between polypropylene degradation and any alleged injury to a particular plaintiff." Notice of Adoption of Mot. to Exclude or Limit Certain Ops. & Test. by Ahmed El-Ghannam, Ph.D in Wave 4 & Wave 5 Cases, Ex. C at 4 [ECF No. 4567-3]. I disagree, Dr. El-Ghannam's experience and review of the scientific literature adequately

6

qualify him to opine on polypropylene, including its purported degradation and the resulting inflammatory response.

As it relates to specific causation, however, the motion currently before the court considers the parties' dispute pertaining to other multidistrict litigation plaintiffs. It is therefore inapplicable to Bard Wave 4 cases and the motion on this point is **DENIED as moot**.

    2. Opinions Regarding Alleged Design Defect

Bard next argues that Dr. El-Ghannam is not qualified to render an expert opinion on the degradation of the specific material at issue, polypropylene. As stated above, I disagree. Dr. El-Ghannam is well-qualified in the field of biomaterials and biomedical engineering to testify regarding the interaction between implanted medical devices and, more specifically, the mechanisms and biologic effects of degradation of polypropylene. *See Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) (explaining that "a lack of specialization does not affect the admissibility of the opinion, but only its weight"). I **FIND** that Dr. El-Ghannam has demonstrated sufficient knowledge of the area of polypropylene to qualify him to offer opinions on design defects.

Bard next argues that Dr. El-Ghannam reached his design defect opinion by virtue of an unreliable methodology. According to Bard, Dr. El-Ghannam reviewed only a small number of relevant materials in this litigation, neglecting to review a substantial portion of other witnesses' deposition or trial testimony, expert reports, or other materials prepared in this litigation. According to Bard, Dr. El-Ghannam's

failure to consider such information in this litigation evidences a lack of vigor and renders his opinions unreliable.

Last, Bard claims that Dr. El-Ghannam's opinion on the biocompatibility of the mesh products and his opinion that polypropylene is not an appropriate biomaterial are unsupported and not reliable. Bard argues that Dr. El-Ghannam's failure to recollect the biocompatibility standards by which Bard tested its products prevents him from criticizing Bard's biocompatibility testing, its procedures, appropriateness, or their outcomes

Bard does not cite, and the court could not locate, any relevant authority to support Bard's position that a lack of vigor in reading other witness' testimony renders the opinion of an expert unreliable. Likewise, Bard does not explain how Dr. El-Ghannam's failure to review these materials undermines the reliability of his methods, or how his unawareness of a particular standard and Bard's compliance with its regulations renders Dr. El-Ghannam's methodology unreliable. Rather, Bard's contentions are more properly tested at trial during cross-examination and the testimony of counter experts. I **FIND** that Dr. El–Ghannam's testing methodology is sufficiently reliable for his design defect opinion to withstand a *Daubert* challenge.

3. <u>Reliability of FTIR and SEM Testing</u>

Bard argues that Dr. El–Ghannam is not qualified to perform SEM or FTIR testing or interpret its results on polypropylene. As such, Bard contends that his opinions derived from these tests are unreliable. The plaintiffs, in response, claim that Bard's argument disregards Dr. El-Ghannam's several years of practical

8

experience utilizing FTIR and SEM testing in the course of his scholarly work with biomaterials, and my previous finding that his FTIR and SEM testing is reliable. I agree.

Accepting Bard's position requires the court to find that, in order to interpret the results of a FTIR or SEM test on a polymer appropriately, the expert needs to have practical experience testing polymers specifically. Bard, however, does not explain how a person with Dr. El-Ghannam's qualifications cannot conduct or interpret the results of FTIR and SEM testing on polymers. Likewise, Bard's contention that Dr. El-Ghannam is unqualified to measure the pore size of mesh products using SEM because he has never analyzed the pore size of mesh products misses the point. I **FIND** Dr. El-Ghannam has demonstrated sufficient knowledge of the area of FTIR and SEM testing of biomaterials to qualify him to opine on findings derived from FTIR and SEM tests on polymers.

Next, Bard argues that Dr. El-Ghannam incorrectly used the diffuse reluctance method instead of the attenuated total reflectance method during his FTIR tests. Bard, however, does not explain how Dr. El-Ghannam's use of the diffuse reluctance method discredits, manipulates, or bears on the reliability of his FTIR methodology. Therefore, I **FIND** that Dr. El-Ghannam's FTIR and SEM testing methodology is sufficiently reliable to pass a *Daubert* challenge.

4. <u>Opinions Regarding MSDS, Polypropylene Interaction, and Resin Quality</u>

Bard argues that Dr. El-Ghannam is not qualified to opine on the language used in the MSDS and a "technical service memorandum." Notice of Adoption of Mot.

to Exclude or Limit Certain Ops. & Test. by Ahmed El-Ghannam, Ph.D in Wave 4 & Wave 5 Cases, Ex. C at 23. Bard further challenges the veracity of the MSDS and memorandum in an attempt to cast further doubt on Dr. El-Ghannam's ability to decipher the materials' purpose and meaning. This line of reasoning ignores Dr. El-Ghannam's experience working with MSDSs and serves merely as a conduit to challenge the conclusion Dr. El-Ghannam reaches – i.e., that the MSDS and memorandum support his conclusion – rather than the principles that underlie his methodology. As such, exclusion under *Daubert* is not appropriate and Bard's motion on this point is **DENIED**.

     5. <u>Opinions Regarding Manufacturing Stresses</u>

According to Bard, Dr. El-Ghannam criticizes the manufacturing process of the mesh products, claiming Bard improperly subjects the products to mechanical stresses during knitting and heat setting. Bard argues that Dr. El-Ghannam is not qualified to render an expert opinion on these topics because he is neither a textile engineer nor did he review the necessary documents to understand how the process is conducted.

The plaintiffs represent that the court has considered and addressed these arguments, and that "nothing has changed in the interim that would affect the validity or applicability of the [c]ourt's prior ruling in this regard." Notice by Pls. of Adoption of Prior Daubert Resp. to Notice of Adoption of Mot. to Exclude or Limit Ops. & Test. of Ahmed El-Ghannam, Ph.D. in Wave 4 & Wave 5 Cases, Ex. 1 at 29 [ECF No. 4594-1]. Notably, I stated:

> Bard argues that Dr. El–Ghannam is not qualified to opine on the manufacturing process, and that his opinions are unreliable and nothing more than *ipse dixit* opinions. After review of Dr. El-Ghannam's deposition testimony and his supplemental report, it appears that he is qualified—and his opinions are reliable—to an extent. With respect to the heating process, Dr. El-Ghannam has explained adequately and with sufficiently reliable basis in his deposition testimony and supplemental report, the effects of subjecting the polypropylene material in the Avaulta mesh to the heat during the manufacturing process. However, with respect to the knitting process, Dr. El–Ghannam testified, in part:
>
>> Q. How are these—can you—do you understand how the knitting process works for these implants?
>>
>> A. I have an idea, but really I'm not a textile engineer.
>>
>> Q. Okay. So you're not—textile engineering is not an area of your expertise?
>>
>> A. No, it's not.
>>
>> Q. And you've not carefully reviewed the manufacturing documents to see and understand how the knitting process is conducted, correct?
>>
>> A. Correct.
>
> Accordingly, I **FIND** that Dr. El–Ghannam may opine on the manufacturing process as it relates to temperature, but not as it relates to the knitting process of the mesh.

*See In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 948 F. Supp. 2d 589, 635-36 (S.D. W. Va. 2013) (citations omitted).

I agree with the plaintiffs' assessment that there has been no change that affects the applicability of my previous determination here. My reasoning and conclusions govern, and I **FIND** that Dr. El-Ghannam may opine on the

manufacturing process as it relates to temperature, but not as it relates to the knitting process of the mesh.

Bard next challenges the reliability of Dr. El-Ghannam's opinion that "increased stiffness of the polypropylene fibers is a degradation mark." Notice of Adoption of Mot. to Exclude or Limit Certain Ops. & Test. by Ahmed El-Ghannam, Ph.D in Wave 4 & Wave 5 Cases, Ex. C at 25.

Previously, I found as unreliable Dr. El-Ghannam's statement that "stiffness measurements" reflect "a further defect with this mesh as the variation of the degree of stiffness would result in improper transduction of the mechanical signal between the components of the same mesh." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 636 (S.D. W. Va. 2013). Here, the plaintiffs argue that Dr. El-Ghannam's opinions regarding stiffness are directly related to degradation of the material due to thermomechanical stresses, and that his opinions are based on his own extensive testing and analysis of over 100 explants, as well as his review of applicable peer-reviewed literature. In particular, Dr. El-Ghannam cites SEM photographs of mesh explants and an article by Costello in 2007 describing the byproducts of the inflammatory response including increasing the rigidity of the product. *See* Notice of Adoption of Mot. to Exclude or Limit Certain Ops. & Test. by Ahmed El-Ghannam, Ph.D. in Wave 4 & Wave 5 Cases, Ex. B (El-Ghannam's Report) at 33 [ECF No. 4567-2]. Based on Dr. El-Ghannam's report, I am satisfied that Dr. El-Ghannam may opine on whether increased stiffness of the polypropylene fibers is a degradation mark. Bard's motion on this point is **DENIED**.

## IV. Conclusion

To summarize, I **DENY** Bard's motion concerning Dr. Ahmed El-Ghannam, Ph.D. [ECF No. 4567] consistent with my reasoning above.

The court **DIRECTS** the Clerk to file a copy of this Memorandum Opinion and Order in 2:12-md-2187, and the Bard Wave 4 and Wave 5 cases identified in the Exhibit attached hereto. The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 23, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

| PLAINTIFF | CURRENT CIVIL ACTION # | WAVE |
|---|---|---|
| Barker, Lorie | 2:13-cv-33690 | 4 |
| Bivens, Geraldine L | 2:16-cv-11116 | 4 |
| Black, Brenda L | 2:14-cv-00952 | 4 |
| Branscome, Christine E | 2:16-cv-10995 | 4 |
| Brewer, Pamela R | 2:16-cv-11135 | 4 |
| Brown, Cathy | 2:16-cv-10807 | 4 |
| Carnahan, Kathy | 2:13-cv-24208 | 4 |
| Cooley, Dedra | 2:14-cv-07543 | 4 |
| Cuffee, Carolyn D | 2:14-cv-02528 | 4 |
| Degarmo, Nora | 2:12-cv-07578 | 4 |
| Drake, Theresa | 2:16-cv-03709 | 4 |
| Edwards, Claudine | 2:14-cv-27463 | 4 |
| Ford, Janet Marie | 2:14-cv-09878 | 4 |
| Gardiner, Gloria | 2:13-cv-15209 | 4 |
| Gilbert, April D | 2:16-cv-11118 | 4 |
| Gritten, Linda | 2:16-cv-03707 | 4 |
| Guerrero, Angelia | 2:14-cv-14209 | 4 |
| Hall, Cardisa M | 2:16-cv-11113 | 4 |
| Henderson, Teresa | 2:16-cv-03779 | 4 |
| Holmes, Robin | 2:13-cv-01524 | 4 |
| Hummel, Niki | 2:13-cv-32359 | 4 |
| Johnson, Nancy | 2:13-cv-19736 | 4 |
| Jones, Thelma J | 2:16-cv-03719 | 4 |
| Keisling, Linda | 2:16-cv-03721 | 4 |
| Lackey, Danielle R | 2:16-cv-11011 | 4 |
| Landers, Samantha | 2:13-cv-26574 | 4 |
| Ledwein, Judy | 2:16-cv-03778 | 4 |
| Lee, Frankie | 2:12-cv-07570 | 4 |
| Long, Pamela D | 2:13-cv-20881 | 4 |
| Martin, Judy A | 2:16-cv-11103 | 4 |
| Massey, Shannon L. | 2:14-cv-01027 | 4 |
| McWilliams, Brenda K | 2:16-cv-11104 | 4 |
| Miller, Alice F | 2:16-cv-11014 | 4 |
| Moore, Carol | 2:16-cv-03842 | 4 |
| Moore, Carolyn S | 2:14-cv-00606 | 4 |
| Morgan, Khristina S | 2:16-cv-11016 | 4 |
| Nadeau, Susan J | 2:16-cv-11112 | 4 |
| Nall, Stephanie | 2:13-cv-01526 | 4 |
| Newell, Carmen | 2:13-cv-16405 | 4 |
| Phelps, Inna V | 2:16-cv-11114 | 4 |
| Pickering, Hope | 2:16-cv-03896 | 4 |
| Politi-Topal, Kathleen D. | 2:14-cv-01411 | 4 |
| Powell, Mary C | 2:16-cv-11017 | 4 |

| PLAINTIFF | CURRENT CIVIL ACTION # | WAVE |
|---|---|---|
| Powers, Lisa R | 2:16-cv-11041 | 4 |
| Priddy, Judy M | 2:13-cv-10318 | 4 |
| Purcell, Kim | 2:13-cv-34058 | 4 |
| Radatz, Mary L. | 2:13-cv-17989 | 4 |
| Raines, Cynthia Ann | 2:13-cv-26748 | 4 |
| Richardson, Cynthia O | 2:13-cv-20036 | 4 |
| Richardson, Demetria | 2:12-cv-02564 | 4 |
| Rodericks, Rhonda K | 2:16-cv-11115 | 4 |
| Rogers, Rosemary J | 2:16-cv-11106 | 4 |
| Sheaffer, Julie A | 2:14-cv-05601 | 4 |
| Silvia, Diane | 2:14-cv-25366 | 4 |
| Smith, Tamela | 2:13-cv-30640 | 4 |
| Speetzen, Michelle | 2:13-cv-12416 | 4 |
| Stapel, Catherine | 2:14-cv-25362 | 4 |
| Stewart, Mary Sue | 2:14-cv-27466 | 4 |
| Stoddard, Sloane | 2:14-cv-11940 | 4 |
| Struble, Maureen | 2:16-cv-03817 | 4 |
| Swiney, Ernestine F | 2:16-cv-11021 | 4 |
| Teeples, Mistie D | 2:16-cv-11020 | 4 |
| Toulson, Patricia | 2:16-cv-03816 | 4 |
| Updike, Melody A | 2:16-cv-11035 | 4 |
| Weber, Erika | 2:16-cv-11105 | 4 |
| Wilson, Elizabeth J | 2:14-cv-14119 | 4 |
| Woodard, Elizabeth E | 2:16-cv-11040 | 4 |
| Alvey, Christine | 2:16-cv-07705 | 5 |
| Bailey, Carla | 2:16-cv-06362 | 5 |
| Barton, Joan | 2:16-cv-07655 | 5 |
| Bess, Joyce | 2:16-cv-06318 | 5 |
| Clarke, Janice | 2:16-cv-10809 | 5 |
| Cole, Jeanene | 2:16-cv-07402 | 5 |
| Collins, Dana | 2:16-cv-06739 | 5 |
| Corley-Davis, Celia | 2:16-cv-10811 | 5 |
| Crook, Julie | 2:16-cv-06360 | 5 |
| Crowe, Karen F | 2:16-cv-11136 | 5 |
| Currie, Arlene | 2:16-cv-10814 | 5 |
| Daily, Catherine T | 2:16-cv-11137 | 5 |
| Davis, Debra M | 2:16-cv-11139 | 5 |
| Dennis, Barbet | 2:16-cv-10815 | 5 |
| Donley, Teresa | 2:16-cv-07322 | 5 |
| Donovan, Thoris L | 2:16-cv-11142 | 5 |
| ~~Duncan, Andrea~~ | ~~2:16-cv-10816~~ | ~~5~~ |
| Ellis, Karen | 2:16-cv-07694 | 5 |
| Elrod, Josephine | 2:16-cv-04032 | 5 |

| PLAINTIFF | CURRENT CIVIL ACTION # | WAVE |
|---|---|---|
| Fay, Paula A | 2:16-cv-11144 | 5 |
| Frederick, Cheryl D | 2:16-cv-11266 | 5 |
| Hale-Cuellar, Patricia A | 2:16-cv-11150 | 5 |
| Hauber, Elizabeth A | 2:16-cv-11158 | 5 |
| Herrera, Wynde Lynn | 2:16-cv-10819 | 5 |
| Hill, Mignon M | 2:16-cv-11161 | 5 |
| Jasso, Mary | 2:16-cv-06361 | 5 |
| Jeffries, Lynda | 2:16-cv-11798 | 5 |
| Johnson, Elisa J | 2:16-cv-11147 | 5 |
| Josey, Tammy | 2:16-cv-11803 | 5 |
| Knernschield, Peggy | 2:16-cv-06743 | 5 |
| Kolodzyk, Virginia L | 2:16-cv-11163 | 5 |
| Krishnan, Meera | 2:16-cv-06740 | 5 |
| Kyes, Marilyn | 2:16-cv-11804 | 5 |
| Leyba, Lorraine | 2:13-cv-16401 | 5 |
| Lingenfelter, Nancy | 2:16-cv-07610 | 5 |
| Mahnke, Joyce C | 2:16-cv-11167 | 5 |
| Martinez, Tammy | 2:16-cv-10821 | 5 |
| Mathis, Nellie | 2:16-cv-08014 | 5 |
| Miecznikowski, Jennifer C | 2:16-cv-11169 | 5 |
| Morrill, June | 2:16-cv-11170 | 5 |
| Nichols, Brandey R | 2:16-cv-11186 | 5 |
| Piper, Connie | 2:16-cv-11811 | 5 |
| Prince, Marjorie | 2:16-cv-04949 | 5 |
| Reynolds, Cassandra | 2:16-cv-11175 | 5 |
| Roberts, Carla | 2:16-cv-06741 | 5 |
| Roberts, Sheila | 2:16-cv-05003 | 5 |
| Smith, Sandra | 2:16-cv-11817 | 5 |
| Stephenson, Erin | 2:16-cv-11819 | 5 |
| Stevens, Terri L | 2:16-cv-11820 | 5 |
| Tatum, Tuesday | 2:16-cv-11821 | 5 |
| Thompson, Reba | 2:16-cv-04536 | 5 |
| Watson, Charlotte | 2:16-cv-03989 | 5 |
| Yoder-Brady, Bobbye | 2:16-cv-03954 | 5 |
| Young, Carolyn | 2:16-cv-04037 | 5 |