IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: C. R. BARD, INC.,
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION                MDL No. 2187

---

THIS DOCUMENT RELATES TO C. R. BARD WAVE 4 & WAVE 5 CASES
BEFORE JUDGE GOODWIN:

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Nathan Guerette, M.D.)

The plaintiffs filed their Notice of Adoption of Prior Daubert Motion of Nathan Guerette, M.D. for Waves 4 and 5 cases ("Notice") [ECF No. 4542] in *In re C. R. Bard, Inc.*, *2:10-md-2187*, MDL 2187, on September 27, 2017. The plaintiffs attached as exhibits to their Notice a motion [ECF No. 4542-1], memorandum in support [ECF No. 4542-2], and reply brief [ECF 4542-3], which plaintiffs seek to adopt and incorporate as their briefing for Waves 4 and 5. Defendants also adopted and incorporated by Notice of Adoption of C.R. Bard's Prior Memorandum in Law in Opposition to Plaintiffs' Motion to Exclude the Opinions and Testimony of Nathan Guerette, M.D., and C.R. Bard, Inc.'s Prior Memorandum of Law in Opposition to Plaintiffs' Supplemental Motion to Exclude Certain General Opinions and Testimony of Nathan Guerette, M.D., for Wave 4 and Wave 5 cases, two briefs in response to Plaintiffs' Motion. [ECF No. 4640]. The court construes the plaintiffs' Notice as a Motion. As such, the Notice is now ripe for consideration because the briefing is

1

complete. As set forth below, the plaintiffs' motion is **GRANTED in part** and **RESERVED in part**.

I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 16,000 cases currently pending, approximately 1,500 of which are in the Bard MDL, 2187 MDL.

In this MDL, the court's tasks include "resolv[ing] pretrial issues in a timely and expeditious manner" and "resolv[ing] important evidentiary disputes." Barbara J. Rothstein & Catherine R. Borden, Fed. Judicial Ctr., *Managing Multidistrict Litigation in Products Liability Cases* 3 (2011). In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I selected certain cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded.

Upon the creation of a wave, a docket control order subjects each case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. *See, e.g.*, Pretrial Order ("PTO") # 236 (establishing Wave 4); PTO # 244 (establishing Wave 5). To handle motions to exclude or to limit expert testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court developed a specific procedure for cases designated in Wave 4 and

Wave 5. The court instructed the parties to file briefing on general causation issues in the main MDL, MDL 2187, while specific causation *Daubert* motions, responses, and replies were to be filed in the individual member cases. To the extent that an expert is both a general and specific causation expert, the court advised the parties that they could file a general causation motion in the main MDL and a specific causation motion in an individual member case. *See* PTO # 236, at 4; PTO # 244, at 4.

Before plunging into the heart of the motion, and to clarify the record, I am compelled to comment on the manner in which the parties filed the instant *Daubert* motion and response in opposition. Similar to other *Dauberts* filed in the main MDL, the plaintiffs filed the instant motion as a "Notice," adopting and incorporating the entirety of a motion and its corresponding papers filed in a previous case before the court. Defendant C. R. Bard, Inc. ("Bard"), likewise, filed its opposing briefs in conjunction with a similar "Notice." The parties then attached the substance of their briefs, i.e., the supporting or opposing memorandum of law, as an exhibit to their respective Notice. So, for example, the plaintiffs attach the memorandum in support of their *Daubert* motion as "Exhibit 1" to their Notice. The plaintiffs also integrate into Exhibit 1 vital supporting papers, such as deposition transcripts demarcated rather confusingly within Exhibit 1 as "Exhibit 1," forming one large document. With this in mind, the court turns its attention to the present dispute.

## II.    Legal Standard

Under Federal Rule of Evidence 702, expert testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue" and (1) is "based upon sufficient facts or data" and (2) is "the product of reliable principles and methods," which (3) has been reliably applied "to the facts of the case." Fed. R. Evid. 702. A two-part test governs the admissibility of expert testimony. The evidence is admitted if it "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). The proponent of expert testimony does not have the burden to "prove" anything. However, he or she must "come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).

The district court's role as gatekeeper is an important one. "[E]xpert witnesses have the potential to be both powerful and quite misleading"; the court must "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 588, 595; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). I "need not determine that the proffered expert testimony is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (alteration in original) (citation omitted) (quoting *Daubert*, 509 U.S. at 596); *see also Md. Cas. Co.*, 137 F.3d at 783 ("All *Daubert* demands is that the trial

judge make a 'preliminary assessment' of whether the proffered testimony is both reliable . . . and helpful.").

*Daubert* mentions specific factors to guide the overall relevance and reliability determinations that apply to all expert evidence. They include (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94).

Despite these factors, "[t]he inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594-95); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("We agree with the Solicitor General that '[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" (alteration in original)); *see also Crisp*, 324 F.3d at 266 (noting "that testing of reliability should be flexible and that *Daubert*'s five factors neither necessarily nor exclusively apply to every expert").

With respect to relevancy, *Daubert* also explains:

> Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. The

5

> consideration has been aptly described by Judge Becker as one of "fit." "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.

*Daubert*, 509 U.S. at 591-92 (citations and internal quotation marks omitted).

## III. Analysis

Dr. Guerette is a practicing urogynecologist who is board-certified in the fields of Female Pelvic Medicine and Reconstructive Surgery, and Obstetrics and Gynecology. He is the Director and President of the Female Pelvic Medicine Institute of Virginia, and is a clinical professor at Virginia Commonwealth University. He performs an average of approximately 500 to 600 pelvic floor surgeries each year.

### A. Adequacy of Warnings

First, plaintiffs argue that Dr. Guerette is unqualified to opine on the adequacy of the Avaulta Instructions for Use ("IFU") because he has no specific expertise in the area of product warnings. I have repeatedly ruled that, without additional expertise in the specific area of product warnings, a doctor is not qualified to opine that a product warning is adequate merely because it includes risks that he observed in his own practice. In response, Bard states that Dr. Guerette "has, in fact, assisted in drafting an IFU in the past." Bard's Mem. in Opp'n to Pls.' Mot. to Exclude the Ops. & Test. of Nathan Guerette, M.D 6 [ECF No. 4542-2]. Bard provides no further details on Dr. Guerette's "additional qualifications" in the area of product warnings. Therefore, I **FIND** that I do not have sufficient information at this time to determine whether Dr. Guerette is qualified to opine on the adequacy of the Avaulta IFU.

Accordingly, I **RESERVE** ruling until further testimony may be offered and evaluated firsthand at trial.

B. Standard of Care

Second, plaintiffs argue that Dr. Guerette is not qualified to opine on whether any of the plaintiffs' treating physicians breached the applicable standard of care. The basis of this claim is Dr. Guerette's statement during his deposition that he does not intend to offer any standard of care opinions:

> My purpose here today is not to criticize the physicians or to make any judgments as to whether they met the standard of care. I think we stated earlier I practice in Virginia. I am not licensed in I think any of the states that we're talking about here, so I wouldn't be able to make any specific claim as to their standard of care.

Guerette Dep. (Dec. 21, 2014) 358:11–18 [ECF No. 4542-1].

Based on Dr. Guerette's own admission that he is unable to make any judgments as to whether the plaintiffs' treating physicians breached the applicable standard of care, these opinions are **EXCLUDED**. The plaintiffs' motion is **GRANTED** on this point.

IV. Conclusion

For the reasons stated above, the court **ORDERS** that the Notice of Adoption of Prior Daubert Motion of Nathan Guerette, M.D. for Waves 4 and 5 cases [ECF No. 4542], which as been construed by this court as a Motion, is **GRANTED in part** and **RESERVED in part**.

The court **DIRECTS** the Clerk to file a copy of this Memorandum Opinion and Order in 2:10-md-2187, and the Bard Wave 4 and Wave 5 cases identified in the

Exhibit attached hereto. The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 5, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

# Exhibit A

| CIVIL ACTION NUMBER | Case Name |
|---|---|
| 2:14-cv-03439 | Kitchen v. C. R. Bard, Inc. et al. |
| 2:14-cv-18890 | McManus v. C. R. Bard, Inc. et al. |
| 2:14-cv-21874 | McCray v. C. R. Bard, Inc. et al. |
| 2:14-cv-23401 | Barber v. C. R. Bard, Inc. et al. |
| 2:14-cv-28943 | Smith et al. v. C. R. Bard, Inc. et al. |
| 2:16-cv-01855 | Eiffler v. Sofradim Production SAS et al. |