**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABIILITY LITIGATION | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| IN RE: COLOPLAST CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL No. 2511 |

*This Document Relates To All Cases*

**Recommended Allocation of Common Benefit Fees and the Reimbursement of Shared Expenses and Held Costs by the Court Appointed External Review Specialist for the Period of December 21, 2016, Through December 30, 2020**

COMES NOW, The Honorable Daniel J. Stack, Retired, as External Review Specialist[1] (as identified in the Order Granting Motion to Appoint the Hon. Daniel J. Stack Ret., as External Review Specialist (the "Appointment Order") and in accordance with the Fee Committee Protocol[2] (the "Protocol") issue my Recommended Allocation in accordance with Section F of the Protocol as follows:

The Court having entered its Memorandum Opinion and Order (Re: Petition for an Award of Common Benefit Attorneys' Fees and Expenses) (S.D. W. Va. Jan. 30, 2019), which was entered in each of the seven MDLs, (hereinafter referred to as "Fee Petition Order") establishing the common benefit fund, this Recommended Allocation sets forth the basis for my recommendation that the Court award payment from the common benefit fund for payment of fees in the percentages shown in **Exhibit 1** to this Recommended Allocation and award payment of costs from the common benefit fund in the amounts shown in **Exhibit 2** to this Recommended Allocation.

This Recommended Allocation is the second of two allocations ordered by the Court. The first allocation addressed time and expenses incurred through December 21, 2016, which I will refer to as the "First Round." This Recommended Allocation is addressed only to time and expenses from December 21, 2016, through December 30, 2020, which I will call the "Second Round." In making this Recommended Allocation, I am relying on the same information and documentation that I relied upon in making my Recommended Allocation in the First Round and

---

[1] Appointed by Court Order entered October 13, 2017: Bard MDL 2187 [ECF No. 4663], AMS MDL 2325 [ECF No. 5112], BSC MDL 2326 [ECF No. 4422], Ethicon MDL 2327 [ECF No. 4783], Cook MDL 2440 [ECF No. 592], Coloplast MDL 2387 [ECF No. 1572], Neomedic MDL 2511 [ECF No. 177].

[2] Bard MDL 2187 PTO 257 [ECF No. 4020], AMS MDL 2325 PTO 244 [ECF No. 4346], BSC MDL 2326 PTO 166 [ECF No. 3968], Ethicon MDL 2327 PTO 262 [ECF No. 4044], Cook MDL 2440 PTO 81 [ECF No. 503], Coloplast MDL 2387 PTO 133 [ECF No. 1437], Neomedic MDL 2511 PTO 38 [ECF No. 172].

I am utilizing the same methodology that I employed in the First Round.  That same methodology resulted in my Recommended Allocation in the First Round, which the Court found to be fair and reasonable and which was adopted and incorporated into the Court's Allocation Order and subsequently the Court's Judgment on the Allocation Order.  I am aware that there were multiple appeals from the Court's Allocation Order, each of which were dismissed by the U.S. Court of Appeals for the Fourth Circuit.

In making this Recommended Allocation, I rely upon the time and expense submissions made by firms seeking common benefit funds and/or expenses (hereinafter may be referred to as "applicant firms"), the Common Benefit Orders of this Court, the Final Written Recommendation of the Common Benefit Fee and Cost Committee, including the Declaration of Henry Garrard and the other material supplied therewith,[3] information delivered to me by the Chairman of the Common Benefit Fee and Cost Committee (the "FCC") regarding the FCC's observations and deliberations, written correspondence in the form of appeals from applicant firms, and applicable law.[4] In delivering this Recommended Allocation to the Court, I request that the FCC provide  to

---

[3] Available to me for my evaluation of applicant firms were: (1) attorney biographies provided by applicant firms, (2) the original time submission made by each applicant firm to the Court appointed CPA, (3) the self-audited time submission made by each applicant firm to the Court appointed CPA, (4) the materials provided by applicant firms including affidavits accompanying their self-audited time, (5) the letter to each applicant firm reflecting the FCC's initial review of time and expense submissions including Exhibits identifying time and expenses found not compensable by the FCC at that time, (6) the materials provided by applicant firms in response to the FCC's initial review including affidavits provided by applicant firms, (7) the expense submissions provided by each applicant firm, where applicable, (8) the letter to each applicant firm reflecting FCC's revised time and expense review after the FCC's consideration of the materials received from applicant firms including the Exhibits thereto, (9) the transcripts of the meetings conducted among the FCC, myself and those firms seeking an opportunity to be heard by the FCC, (10) the FCC's Preliminary Written Recommendation delivered to each firm and the two Exhibits attached thereto, and (11) the FCC's Final Written Recommendation including all Exhibits.

[4] A copy of the Final Written Recommendation of the Common Benefit Fee and Cost Committee Concerning the Allocation of Common Benefit Fees and the Reimbursement of Shared Expenses and Held Costs for the Period of December 21, 2016, through December 30, 2020, delivered by the FCC which includes the Declaration of Henry Garrard is attached hereto as **Exhibit 3** and is incorporated by reference.

the Court for its consideration, *in camera*, all of the same materials that were made available to me.

## I.      BACKGROUND

For the sake of brevity and avoidance of duplication, I am incorporating the Background section of my prior Recommended Allocation from the First Round in its entirety.   That Background remains unchanged.  As set forth in the FCC's Final Written Recommendation and in the Declaration of Henry Garrard, Plaintiffs' leadership continued their prior work in moving the MDLs toward conclusion during the time period applicable to this Recommended Allocation for the Second Round (December 21, 2016, through December 30, 2020).  MDL leadership continued to support firms in the wave process by identifying deposition transcripts, relevant documents in support of liability, and briefing and other materials for use by counsel in preparation of individual cases for trial.  MDL leadership also continued to provide the support and materials associated with plaintiffs' expert witnesses so that cases placed in the MDL Court's wave process and ultimately those cases remanded for trial could satisfy the expert requirements.

While the litigation against the majority of products and defendants was fully mature prior to the Second Round time period, there were certain instances where the development of the litigation involving certain products and defendants continued.  For example, the development of the general liability case regarding Coloplast products continued during the applicable time period including corporate depositions, document review, development of expert witnesses, *Daubert* and dispositive motion briefing, and depositions of defendant's expert witnesses.   Continuing discovery and development were also undertaken with regard to the *Mullins* consolidation in the Ethicon MDL, as well as with respect to the Bard Alyte product and the AMS MiniArc product.

At the Court's direction, MDL leadership continued to work to aid in the resolution of cases in an effort to ensure that those plaintiff's attorneys with limited numbers of cases received the full benefit of MDL leadership's knowledge and experience when negotiating the resolution of their cases. MDL leadership appeared in West Virginia to aid in the negotiation and resolution of individual cases for other MDL plaintiffs' firms without charge to any plaintiff.

Finally, the FCC members devoted significant time to the review of time and expense submissions for the First Round through December 20, 2016. FCC members along with members of their firms reviewed time and expense submissions, met to evaluate the merit of submissions, prepared materials for distribution to firms and drafted pleadings in support of the Court's Order establishing the payment of common benefit funds including briefing on multiple appeals to the Fourth Circuit Court of Appeals and the United States Supreme Court. Despite multiple challenges, the Court's Order and allocation were upheld by the appellate courts.

In the prior period, ending December 20, 2016, ninety-four law firms submitted more than 900,000 hours of time for common benefit consideration, and the Court-appointed FCC recognized a total of 679,191.20 of those hours as being for common benefit. For the current period of December 21, 2016, through December 30, 2020, (the subject of this Recommended Allocation) the FCC received submissions from thirty-seven firms totaling more than 138,000 hours, and the Court-appointed FCC recognized a total of 61,646.48 of those hours as being for common benefit.

Over ninety-five percent of cases in these MDLs have reached resolution or otherwise been dismissed, which has resulted in approximately $525,000,000 in payments into the common benefit fund by the MDL Defendants. Approximately $490,000,000 of that amount has already been distributed to firms pursuant to the percentages set forth in the Court's July 25, 2019, Allocation Order, including continuing quarterly distribution of seventy percent (70%) of funds

received into the common benefit fund each calendar quarter since January of 2020.  At present, there remains a fund of approximately $33,000,000 available for payment of common benefit time and expenses for the Second Round period of December 21, 2016, through December 30, 2020.

## II.    EXPERIENCE AND METHODOLOGY OF THIS REPORT

### A.  Methodology of Review of the Work Performed

In its execution of its duties under the Protocol, the FCC utilized several due process safeguards. As in the First Round, the Second Round applicant firms were presented with several opportunities to interact with the FCC in the review and evaluation of time and expense submissions.  The Second Round applicant firms were first presented the opportunity to perform a "self-audit" of their time and expense submissions. The self-audited time and expense submissions provided applicant firms the opportunity to clarify and correct entries prior to consideration by the FCC.  Not all applicant firms took advantage of this opportunity.[5] After the opportunity for self-audit, the FCC then evaluated the time and expense submissions for each applicant firm along with review of written materials provided by the applicant firms.  This review resulted in a communication sent to each applicant firm reflecting the initial review of time and expense submissions.  The applicant firms received a spreadsheet indicating those individual time entries where the FCC found that the work was not for the common benefit and a separate spreadsheet indicating those individual time entries where the FCC had questions regarding the common benefit of the work performed.  The applicant firms also received information identifying

---

[5] Some firms diligently reviewed and performed the self-audit in accordance with the Protocol while others did not. Despite allegations by one objecting firm, Kline & Specter, I observed no evidence that any firm was "punished" for not performing a thorough self-audit. The impact of failing to perform a thorough self-audit arises only when a firm attempts to compare its recommended allocation against its number of hours submitted.  There was no punitive aspect of the FCC's review of the time submissions.

those expenses sought for reimbursement which were allowed by the FCC as common benefit and those expenses which were disallowed by the FCC as common benefit. The FCC requested that applicant firms respond to those individual time and expense entries identified by the FCC and provide information that would substantiate the common benefit of the entry, thus presenting a second opportunity for applicant firms to provide additional information for consideration by the FCC.  The FCC received those responses along with additional written materials from the applicant firms. Pursuant to the Protocol, each applicant firm was to inform the FCC of how the firm "made a substantial common benefit contribution to the outcome of the litigation" as follows:

a. The consistency quantum, duration, and intensity of the firm's commitment to the litigation;

b. The level of experience, reputation, and status of each attorney and firm, including partner participation by the firm;

c. The firm's membership and/or leadership on the [PSC] and/or Executive Committee;

d. The firm's participation and leadership in discovery (motions, depositions);

e. The firm's participation and leadership in law and briefing matters;

f. The firm's participation and leadership in science and expert matters;

g. The firm's participation and leadership in document review;

h. The firm's activities in preparation for, support of or conduct of bellwether trials or other trials which impacted proceedings on a common benefit level . . . [including] an explanation. . . of why the Firm believes such work should be considered as common benefit. For example, whether and how such work benefitted the MDL plaintiffs generally; the status of settlements in the particular MDL in which the work was performed at the time such work was performed, and whether the case-specific work assisted in bringing about settlements with the defendant in that MDL. Each Firm requesting common benefit reimbursement for work done in any State Court case shall provide an explanation in their affidavit of why the Firm believes such work should be considered as common benefit;

i. The firm's participation and leadership in settlement negotiations, drafting of settlement documentation and closing papers, and administration of settlement agreements (excluding individual representations);

    j.   Where common benefit work occurred;

    k.   The . . . members of the firm [that] held leadership positions in groups that engaged in common benefit work (describe position and group);

    l.   The firm's participation in ongoing activities, such as the Fee and Cost Committee, Settlement Claims Administration, or Court-Appointed Committees and Leadership, which are intended to provide common benefit;

    m.   [Explanation of] whether counsel in the firm were or were not involved in the litigation prior to the formation of the MDL, and the time and expenses incurred during such time period;

    n.   The firm made the following, significant contributions to the funding of the litigation (include all assessments made to the MDL) and the amount of any sums reimbursed and date(s) of reimbursement;

    o.   The members of the firm who were PSC members, group members, or Executive Committee members whose commitment to the litigation did not ebb; and

    p.   The other relevant factors which the Fee Applicant requests be considered by the Court.

*See* Protocol at 6.

The FCC then communicated to each of the applicant firms the FCC's decision based upon its review of the responsive information received from the applicant firm. The FCC invited each applicant firm to appear for a meeting with the FCC, which is the third opportunity applicant firms were presented to provide additional information for consideration by the FCC. Of the thirty-seven Second Round applicant firms, four firms chose to appear before the FCC. After conducting these meetings, the FCC prepared and delivered its Preliminary Written Recommendation. Applicant firms were given the opportunity to object in writing to the Preliminary Written Recommendation – their fourth opportunity to provide information and share concerns with the FCC – and five firms chose to do so. The FCC received and evaluated those written objections in preparing its Final Written Recommendation. Under the Protocol, applicant firms also had the opportunity to object to the Final Written Recommendation, which was the fifth opportunity that

these firms had to present facts and argument to the FCC and to receive feedback from the FCC. Only two of the thirty-seven Second Round applicant firms objected to the FCC's Final Written Recommendation.

In preparing this Recommended Allocation, I familiarized myself with the history of this litigation since the First Round time frame and the contributions of the applicant firms during the Second Round time frame through review of the materials submitted by those firms. I attended an in-person meeting with the FCC and an additional in-person meeting with the Chairperson of the FCC to discuss the quality and value of the Second Round applicant firms' contribution to the common benefit. I reviewed the materials submitted by each of the Second Round applicant firms, including the written materials, affidavits, and biographical information for attorneys seeking common benefit reimbursement for their work. In addition, I received and considered the applicant firms' responses to the FCC's initial review, as well as the two objecting applicant firms' objections to the FCC's Preliminary Written Recommendation and Final Written Recommendation.

For those four applicant firms who sought to meet with the FCC to further discuss their contribution to the litigation following the FCC's Initial Review of the time and expense submissions, I attended each of their presentations to the FCC, and I considered the information provided during these presentations in making my recommendation. As noted above, 32 of the 37 firms accepted the FCC's Preliminary Written Recommendation without objection. While I did not participate in the FCC's allocation decision in their Final Written Recommendation, the opportunity to review the applicant firms' objections and to meet with the FCC and the Chairperson of the FCC was informative and helpful. I also reviewed and considered the Final Written Recommendation of the FCC, including the factual background of the common benefit

process provided in the provided in the Declaration of Henry Garrard and the firm-specific paragraphs addressing the contribution of each firm that the FCC proposed to receive common benefit funds. Consistent with the evaluation process for the First Round submissions, I found that the methodology utilized by the FCC was fair and in accordance with the law and directions of this Court.  In summary, before issuing its Final Written Recommendation, the FCC provided ample opportunities for the firms to advocate for their contribution to the common benefit of the litigation, including through providing for a period of self-audit prior to submission for review, written responses to the initial review performed by the FCC, an opportunity to provide supporting written materials addressing the nature and value of the applicant firm's contribution to the common benefit, an opportunity to be heard by the FCC, and the opportunity to submit a written objection to the Preliminary Written Recommendation.

In meeting with the FCC and the Chairperson of the FCC, I was informed of the FCC's process of reviewing the time and expense submissions from 37 different Second Round applicant firms, which is explained in detail in the Final Written Recommendation, and which consumed several months.  The total individual time entries across the 37 firms exceeded over 138,000 hours in entries.  I also observed the FCC meetings with applicant firms who chose to appear where those firms' contributions to and participation in the litigation, were discussed and analyzed.[6] Based on my meetings with the FCC, the Chairperson of the FCC, my attendance at each of the applicant firms' presentations, and my review of the materials submitted by the applicant firms, I was able to evaluate the nature and quantity of the work performed by each applicant firm in considering each applicant firm's contribution to the outcome of the litigation.

---

[6] As I noted in my prior Recommended Allocation, all Second Round applicant firms were subject to the same process, rules, guidelines and analysis regarding the common benefit time, including the FCC firms.

I find it particularly instructive that of the thirty-seven Second Round applicant firms who submitted common benefit time for consideration, and of five firms that objected to the FCC's Preliminary Written Recommendation, only two firm remain as objectors.  Much like during the First Round, the multiple opportunities to give and receive feedback and the FCC's demonstrated willingness to hear and give due consideration to the positions of those applicant firms who made objections and to adjust its recommended allocation where appropriate is evidence of the allocation process working as the Court intended.  *See*, *In re Vioxx Prods. Liab. Litig.*, 802 F.Supp.2d 740, 774 (E.D.La.2011) (J. Fallon) ("The Court interprets this ongoing development of the FAC's and the Special Master's recommended allocations as an indication that the allocation process was working properly. The effectiveness of this [allocation] process in this case is supported by the fact that only 4 out of the 108 common benefit fee applicants continue to maintain their objections."). As shown in **Exhibit 1** to this Recommended Allocation, the proposed allocation of common benefit funds to applicant firms changed from the FCC's Preliminary Written Recommendation to its Final Written Recommendation in response to information received by the FCC through its review and objection process.  Based on the information I received through the two objections to the Final Written Recommendation, I have made further changes in allocation to certain applicant firms.

I have considered the arguments and submissions of each of the firms that objected to the FCC's Final Written Recommendation in making this Recommended Allocation.

One of the firms that objects to the FCC's Final Written Recommendation, Kline & Specter (K&S), previously objected to the Final Written Recommendation, my Recommended Allocation and to the Court's Allocation Order, ultimately filing an appeal with the U.S. Court of Appeals for the Fourth Circuit.  K&S raises many of the same arguments in its objection to the FCC's Second

Round Final Written Recommendation that they raised previously. Those arguments were rejected at every turn.

K&S first objects on the ground that an alleged "stark contrast" between the percentage awarded to K&S during the First Round allocation process and that recommended by the FCC during the Second Round "is reason to doubt the methodology, if one even exists, employed by the FCC in reaching those awards." Thus, K&S is merely attempting to relitigate the First Round allocation process, raising the same arguments that its work in the Philadelphia Court of Common Pleas should have warranted a higher allocation than the firm was awarded in the First Round. Those same arguments were rejected by the undersigned and by the Court and K&S's appeal asserting these same arguments was dismissed by the Fourth Circuit. K&S also argues that its present allocation (3%) is inconsistent with the number of hours that the firm was credited by the FCC. In other words, K&S appears to contend that while it received too low an allocation during the First Round given the number of hours submitted, the FCC's Second Round recommendation for K&S is too high given the relatively few hours that were recognized by the FCC as for the common benefit.

As with its similar argument that was rejected during the First Round allocation process, K&S's narrow focus on the number of hours submitted compared to the firm's recommended allocation is misguided. I am not required to, and I did not attempt to, employ any "lodestar" calculation in making my recommended allocation. *Glaberson v. Comcast Corp.*, 2016 WL 6276233 (E.D.Pa. 2016) ("a mathematical application of a ratio of the firms' lodestars is not mandated" in the allocation of common benefit attorneys' fees). I also did not perform a comparative lodestar calculation comparing hourly rates for a particular firm in the Court's allocation of common benefit funds from the initial period of review to this recommended

allocation for the period from December 21, 2016, through December 30, 2020. In making this Recommended Allocation, I considered the appropriate award for each firm in light of the available funds for this time period based on the contribution of the firm to the common benefit of the litigation. Citing to Judge Fallon's *Vioxx* opinion, the Special Master in *Deepwater Horizon* observed that **"[m]echanically calculating hours and allocating fees solely on that basis would incentivize padded hours and diminish the work that truly moved the litigation towards its conclusion**." (*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2:10-md-2179, Doc. 23574-1 (Special Master's Recommendation Concerning the Allocation of Common Benefit Fees) (Oct. 24, 2017), p. 8 (emphasis added)). I similarly find that multiplying the number of hours submitted by an hourly rate would only serve to reward firms that abused the process and would not adequately account for the wide variations in the value of the benefit of the work performed by the applicant firms.

While the hours submitted by the applicant firms was considered as a part of my analysis, I reviewed the submitted time and applicant presentations and materials not to calculate a "lodestar" but rather in light of the Court's overarching instruction to "evaluat[e] what work and expenses furthered the common benefit of the litigation." (Fee Committee Protocol, p. 10). *See also*, *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995) ("While the time logged is still relevant to the court's inquiry – even under the [percentage of fund] method, time records tend to illuminate the attorney's role in the creation of the fund, and, thus, inform the court's inquiry into the reasonableness of a particular percentage…."); *In re Copley Pharmaceutical, Inc., Albuterol Prods. Liab. Litig.*, 50 F.Supp.2d 1141, 1149-50 (D.Wyo.1999) ("[t]he value of time expended with appropriate adjustments may

provide a rough starting point for assessing the respective roles of counsel, but it should not be used rigidly as a precise measure to the exclusion of other intangible factors.").

In addition to the number of hours submitted, my review of the work performed considered additional factors in order to determine its quality and the value it generated towards the overall litigation and ultimate settlements.  I also took into account the financial contribution of the firms to the common benefit fund which is not reflected in any submission of hours.

As previously noted in making my Recommended Allocation during the first round, my methodology in assigning a percentage to each applicant firm of the aggregate award based on the firm's relative contribution to the outcome of the litigation is consistent with the methodology in similar multi-plaintiff product liability MDLs, including those in which I have served in a similar role. See, *In re Nuvaring Prods. Liab. Litig.*, 2014 WL 7271959, *6 (E.D.Mo.2014) (MDL court affirming my recommended allocation of common benefit fees based on the quality and value of the work performed rather than on a "lodestar" analysis of rates multiplied by hours); *In re Yasmin and Yaz Prods. Liab. Litig.*, 3:09-md-02100, Doc. 3843 (Special Master's Report and Recommendation Regarding the Allocation and Distribution of Common Benefit Fees and Expenses) (S.D.Ill. Nov. 6, 2015), pp. 7-8 (my recommended allocation based on the quality and value of the work to the litigation and resolution, expressly declining the "lodestar" approach, adopted by MDL Court in its entirety). *Id.*, Doc. 3856 (Minute Order adopting Special Master's recommended allocation in its entirety) (S.D. Ill. Nov. 20, 2015).  The First Circuit in *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307-08 (1st Cir.1995), ruled that "the court below did not err in purposing to allocate fees based on the [percentage of fund] method, emphasizing the attorneys' 'relative contribution' to the creation of the Fund."  Similarly, the MDL court in *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,

2013 WL 1867117, *4-*15 (E.D.La.2013) approved the common benefit fee allocation proposed by the steering committee and the court-appointed special master, which awarded a stated percentage of available common benefit fees to each of the firms applying for common benefit. Similarly, in *In re Prempro Prods. Liab. Litig.*, 2014 WL 3809101, *1-*2 (E.D. Ark. 2014), the MDL court adopted a percentage-based common benefit allocation as recommended by fee committee and proposed by the special master.  Similarly, in *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, MDL 2428 ("*Granuflo*"), the court-appointed fee committee recommended an allocation to each applicant firm of a percentage of the total fee award based on the committee's experience and the facts submitted and after receiving input from the interested firms. *Granuflo*, 1:13-md-2428, Doc. 1983 (Memorandum in Support of Plaintiff Leadership's Petition for Award and Allocation of Common Benefit Fees) (D.Mass. Dec. 12, 2017). The fee committee in *Granuflo* emphasized in its petition that it did not undertake to apply "an unyielding mathematical formula," which it noted could not properly account for the subjective differences that must be considered in making such an award, such as the differing skills and contributions of the attorneys and varying nature and complexity of the tasks involved. *Id.*, p. 22.  The MDL court approved the committee's recommendation. *Granuflo*, 2018 WL 2163627 (D.Mass.2018). Notably, this methodology was also approved and adopted and incorporated into the Court's Allocation Order and Judgment in the First Round, which were subject to multiple appeals, all of which proved unsuccessful.

K&S also argues that its work in state court was treated differently than the time submissions of other firms.  The cutoff dates provided to all firms as part of the FCC's review of time and expense were applied to all firms and all cases.  These dates were applied to cases in both state and federal court and reflect the lack of common benefit derived from work in a firm's

individual cases at this late stage in the litigation. I further note that state court trials were subject to the same analysis by the FCC, regardless of the identity of trial counsel and irrespective of whether the time was expended by Plaintiffs' leadership, Participating Counsel, or member firms of the FCC. Arguments that there were different "rules" for state court cases or for the FCC members and other applicant firms are simply without merit and factually incorrect.

K&S further complains that it is unable to adequately respond to or assess the FCC's recommended allocation without first receiving discovery from the FCC regarding its deliberations. Contrary to K&S's suggestion, however, I have observed the FCC's process to be open and transparent. The FCC provided ample information and explanation regarding its process and its analysis to each of the objecting firms. The FCC's process provided applicant firms with meaningful opportunities to object and to be heard. K&S has also had the opportunity to be heard by me through its written objection to the Final Written Recommendation, and again I have taken their objections into consideration in making my recommendation. As the FCC has pointed out previously in this litigation, and as the Court has previously held in connection with the First Round allocation, discovery in connection with fee motions is rarely permitted and should never result in a second major litigation. *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014). The Court has denied K&S's motions seeking discovery from the FCC on multiple occasions. It is not the FCC's or my obligation to demonstrate why any particular time submission was *not* considered for the common benefit. To the contrary, it is the burden of the applicant firm who claims entitlement to common benefit to prove its compliance with the Court's Common Benefit Orders as well as to prove how and the extent to which its work benefited the litigation. *See*, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, 2019 WL 274036, *5-*9 (9th Cir. Jan. 22, 2019).

The Potts Firm's objection to the FCC's Second Round Final Written Recommendation is essentially that its work during the Second Round time period was undervalued by the FCC while other firms would receive too much money for their work during that same time frame under the FCC's recommendation.  I note that the FCC took the Potts' Firm's objections into consideration and recommended an increase in the Potts Firm's allocation from its Preliminary Recommendation.  As noted below, I am also increasing the Potts Firm's recommended allocation from that suggested by the FCC.  However, it is inevitable that law firms that have devoted significant time and effort to this litigation will view the value of their own work, and that of others, differently.  It would be unrealistic to expect that every lawyer (or judge) would reach the same conclusion regarding the value of every applicant firm's work.  In *Diet Drugs*, 2003 WL 21641958 *10-*11, the court made an observation that I find particularly instructive here, stating "[w]ith so much money at stake and so much time invested by skilled attorneys on valuable common benefit work, it is not surprising that disputes exist concerning the proper method and dollar amount of the individual allocations. We emphasize, however, that the allocation of fees is not an exact science."

Because many of the relevant factors in the allocation decision process are inherently subjective, Judge Fallon noted in *Vioxx* that "some subjectivity is unavoidable in allotting common benefit fees." 802 F. Supp. 2d at 774.  As Judge Fallon explained further, "[t]**he best that can be done to assure the validity of the analysis is to base the subjectivity quotient on sufficient facts and experience, and to invite input from those affected**." *Id.* at 774 (emphasis added).

The common benefit allocation process is intended to provide meaningful input and feedback, the ultimate goal of which is not to achieve perfection but rather a result that is fair and reasonable. The court in *In re Motor Fuel Temperature Sales Practices Litig.*, 2016 WL 4445438,

*13 (D.Kan.2016), observed that "[i]n determining reasonable attorneys' fees, the essential goal 'is to do rough justice, not to achieve auditing perfection.'" *See also*, *Diet Drugs*, 2003 WL 21641958 at *6 (noting that applicants had the opportunity to object to their proposed fee allocation, meet with the fee committee and discuss their objections, suggest revisions before a final recommended allocation was determined, and, if still dissatisfied, seek relief from the court). As outlined above, the common benefit allocation process here provided multiple opportunities to object and to be heard.  Where appropriate, adjustments have been made in light of the feedback and information provided for certain of the applicant firms.

As noted above, there are only two remaining objectors to the FCC's Final Written Recommendation. I believe that this is a direct result of the Due Process safeguards put into place by the Court in the Fee Protocol and its implementation by the FCC. It is also a testament to the reasonableness of certain objectors and the FCC, as well as a willingness to reach compromise despite good faith disagreements concerning the ultimate common benefit value provided by a particular firm. I discuss each of the two remaining objectors in turn below. I am satisfied that the methods employed by the FCC, as well as my methodology in making allocations, is consistent with applicable precedent, as well as the directives given by the Court. For each of the two firms that objected to the FCC's Final Written Recommendation, I make the following findings and recommendations regarding allocation of common benefit funds:

1. **Kline & Specter:** I received the materials submitted by this objector and considered the contribution of the firm to the common benefit of the litigation. This firm's objection is premised on its insistence upon the use of a lodestar methodology that is inconsistent with the Court's direction and inconsistent with the FCC's evaluation. Likewise, as stated in this Recommended Allocation this objector's proposed lodestar

methodology is inconsistent with my evaluation of firms seeking common benefit compensation.  Because this objector seeks to evaluate itself and all other firms through its own lens of a lodestar (hours x rate) methodology, its arguments regarding a purported need for discovery, its evaluation of its own compensation, and its evaluation of the compensation of other firms are flawed. In making my recommendation, I reviewed and considered the time and effort expended by this objector and recognize that a great deal of their work was done in individual cases filed in the Court of Common Pleas in Philadelphia, Pennsylvania. I also note the significant financial contribution that this objector has made to the common benefit fund through the payments associated with its cases. In balancing the information gained from this objector with the information gleaned from the evidence developed throughout the common benefit review process under the Protocol, I recommend no change in the amount allocated for common benefit fees as reflected in **Exhibit 1** hereto.

2. **Potts Law Firm:** I received the materials submitted by this objector, and I considered the contribution of the firm to the common benefit of the litigation. The firm's objection provided helpful information describing its role in the resolution of those cases remaining after many of the larger inventory settlement in these MDLs.  The firm also described its role in the preparation of the case involving the Bard Alyte product. I note that the FCC's Final Written Recommendation increased the recommended percentage allocation for this objector in response to the firm's objection to the Preliminary Written Recommendation. I also note that in making its objection, the objector premised part of its argument upon a self-calculated hourly rate. The firm's self-calculated hourly rate was miscalculated by the objector and incorrectly understated the award previously

recommended by the FCC in its Final Written Recommendation.  In balancing the information gained from this objector with the information gleaned from the evidence developed throughout the common benefit review process under the Protocol, I recommend an increase of 0.46000% which, when considered in light of the anticipated $30,000,000 available fund for distribution for common benefit fees, results in an effective increase of $138,000.00. This increase in the recommended award results in a total percentage of 4.30000% as reflected in **Exhibit 1** hereto.

## III.    REIMBURSEMENT OF SHARED EXPENSES AND HELD COSTS

The common fund doctrine also authorizes reimbursement of the reasonable amounts paid out-of-pocket to achieve a common benefit recovery or to advance the common goals of all plaintiffs in MDL litigation. As discussed above, this Court previously ordered that 5% of all proceeds of cases be held back for "payment of attorneys' fees and approved common benefit and MDL expenses." The common benefit attorneys have incurred a substantial amount in common benefit "held" expenses.

Through my meetings with the FCC and the Chairperson of the FCC along with my review of the materials submitted to me as part of my "record" for preparation of this Recommended Allocation, I observed that the same due process protections provided to applicant firms with regard to common benefit time submissions were also applied to the review of expense submissions.  The FCC ensured that each request complied with this Court's direction as set forth in the Protocol and the FCC Order. All the expenses that the FCC has recommended for reimbursement were incurred in the ordinary course of litigation for the common benefit of all plaintiffs and are reasonable.

## IV.    ALLOCATION OF COMMON BENEFIT FEES, SHARED EXPENSES AND HELD COSTS

Based upon all of this work, I made my determination for each firm independently of the FCC. The FCC's process for evaluation of firms continued to be the most thorough that I have ever encountered.  While I am convinced that the FCC process was thorough and fair, I did reach a different conclusion as to one of the two objecting firms - including adjusting allocations for firms on the FCC.

The allocations of fees and expenses are attached as **Exhibits 1 and 2**, and for the detailed reasons set-forth herein, I make the recommendation that this Court approve these allocations. Further, I agree with the recommendation of the FCC that this Recommended Allocation should be the final proposal from the External Review Specialist, and there should be no further review of time and expense submissions.  I recommend that the Court (1) allocate the currently held thirty percent (30%) fund amongst applicant firms utilizing the proposed expense reimbursements and percentages as set forth in this Recommended Allocation; (2) allocate thirty percent (30%) of future funds received in the MDL common benefit fund amongst applicant firms utilizing the same percentages as set forth in this Recommended Allocation; and (3) continue to allocate seventy percent (70%) of future funds received in the MDL common benefit fund amongst applicant firms utilizing the percentages as set forth in the Court's July 25, 2019, Allocation Order.

## V.      CONCLUSION

For the reasons set forth above, in my capacity as External Review Specialist, I respectfully request that this Court adopt my Recommended Allocation, including the following:

1. To approve the allocation of common benefit fees as set forth in **Exhibit 1**, and order that those funds be distributed from the common benefit fund account to those firms promptly;

2. To approve the reimbursement of common benefit expenses as set forth in **Exhibit 2**, and order that those amounts be distributed from the common benefit fund account promptly;

3. To allocate thirty percent (30%) of future funds received in the MDL common benefit fund amongst applicant firms utilizing the same percentages as set forth in this Recommended Allocation in **Exhibit 1**; and

4. To allocate seventy percent (70%) of future funds received in the MDL common benefit fund amongst applicant firms utilizing the same percentages as set forth in the Court's July 25, 2019, Allocation Order.

Respectfully submitted this 5ᵗʰ day of July , 2022.

Daniel J. Stack, Court Appointed External Review Specialist
1529 Anton Drive
Columbia, IL 62236
618-792-8604

External Review Specialist's
Recommended Allocation

# Exhibit 1

EXHIBIT 1

External Review Specialist's
Recommended Allocation of Fees

| Firm | FCC's Preliminary Written Recommendation Allocation | FCC's Final Written Recommendation Allocation | External Review Specialist's Recommended Allocation |
|---|---|---|---|
| A. Craig Eiland | 1.1940000% | 1.1940000% | 1.1940000% |
| Adam Peavy | 1.3700000% | 1.3700000% | 1.3700000% |
| Anderson Law Offices | 0.2470000% | 0.2470000% | 0.2470000% |
| Andrus Wagstaff, PC | 0.8880000% | 0.8880000% | 0.8880000% |
| Aylstock, Witkin, Kreis & Overholtz | 10.8000000% | 10.8000000% | 10.8000000% |
| Blasingame, Burch, Garrard & Ashley P.C. | 13.8643400% | 13.6593400% | 13.5443400% |
| Blizzard Law, PLLC | 0.0860000% | 0.0860000% | 0.0860000% |
| Bossier & Associates, PLLC | 0.1100000% | 0.1100000% | 0.1100000% |
| Burnett Law Firm | 6.8000000% | 6.8000000% | 6.8000000% |
| Carey Danis | 0.2000000% | 0.2000000% | 0.2000000% |
| Clark, Love & Hutson G.P. | 13.3643200% | 13.1593200% | 13.0043200% |
| Evers Law Group | 0.1400000% | 0.1400000% | 0.1400000% |
| Frankovitch, Anetakis, Simon, Decapio & Pearl, | 3.3400000% | 3.3400000% | 3.3400000% |
| Freese & Goss, PLLC | 0.0000000% | 0.0000000% | 0.0000000% |
| Hail Law Office | 0.7700000% | 0.7700000% | 0.7700000% |
| Keith, Miller, Butler | 0.0000000% | 0.0000000% | 0.0000000% |
| Kline & Specter, PC | 3.0000000% | 3.0000000% | 3.0000000% |
| Lanier Law Firm, P.C. | 0.1750000% | 0.1750000% | 0.1750000% |
| Levin Simes LLP | 0.7500000% | 0.7500000% | 0.7500000% |
| Lockridge, Grindal, Nauen, PLLP | 3.3400000% | 3.3400000% | 3.3400000% |
| Mazie Slater Katz & Freeman | 4.2500000% | 4.2500000% | 4.2500000% |
| Meyers & Flowers, LLC | 0.0680000% | 0.0680000% | 0.0680000% |
| Monsour Law Firm | 1.0450000% | 1.0450000% | 1.0450000% |
| Mostyn Law | 1.6000000% | 1.6000000% | 1.6000000% |
| Motley Rice, LLC | 8.8643200% | 8.6593200% | 8.5443200% |
| Mueller Law Offices | 0.0180000% | 0.0180000% | 0.0180000% |
| Oliver Law Group, P.C. | 0.0060000% | 0.0060000% | 0.0060000% |
| Perdue and Kidd | 0.6290000% | 0.6290000% | 0.6290000% |
| Potts Law Firm, LLP | 3.3400000% | 3.8400000% | 4.3000000% |
| Restaino Law Firm | 0.9870000% | 0.9870000% | 0.9870000% |
| Salim-Beasley | 3.5000000% | 3.5000000% | 3.5000000% |
| Sanders Viener Grossman, LLP | 0.0527000% | 0.0527000% | 0.0527000% |
| Schneider, Wallace, Cottrell, Konecky | 0.0690000% | 0.0690000% | 0.0690000% |
| Schroeder Law Office, PLLC | 0.1100000% | 0.1100000% | 0.1100000% |
| Wagstaff & Cartmell, LLP | 13.3643200% | 13.1593200% | 13.0043200% |
| Watts Guerra, LLP | 0.0080000% | 0.0080000% | 0.0080000% |
| Wexler Wallace, LLP | 1.6500000% | 1.9700000% | 1.9700000% |

External Review Specialist's
Recommended Allocation

# Exhibit 2

EXHIBIT 2

External Review Specialist's
Recommended Allocation of Expenses

| Firm | Total Expense Reimbursement |
|---|---|
| A. Craig Eiland | $ 14,994.96 |
| Adam Peavy | - |
| Anderson Law Offices | 8,238.77 |
| Andrus Wagstaff, PC | 29,671.75 |
| Aylstock, Witkin, Kreis & Overholtz | 84,358.30 |
| Blasingame, Burch, Garrard & Ashley P.C. | 467,202.31 |
| Blizzard Law, PLLC | 2,243.67 |
| Bossier & Associates, PLLC | 11,242.94 |
| Burnett Law Firm | 37,594.84 |
| Carey Danis | - |
| Clark, Love & Hutson G.P. | 583,616.22 |
| Evers Law Group | - |
| Frankovitch, Anetakis, Simon, Decapio & Pearl, LLP | 34,964.75 |
| Freese & Goss, PLLC | 325,359.03 |
| Hail Law Office | - |
| Keith, Miller, Butler | - |
| Kline & Specter, PC | - |
| Lanier Law Firm, P.C. | - |
| Levin Simes LLP | 85,162.70 |
| Lockridge, Grindal, Nauen, PLLP | 60,546.69 |
| Mazie Slater Katz & Freeman | 81,000.00 |
| Meyers & Flowers, LLC | - |
| Monsour Law Firm | 5,891.50 |
| Mostyn Law | 30,570.59 |
| Motley Rice, LLC | 176,626.47 |
| Mueller Law Offices | 2,809.75 |
| Oliver Law Group, P.C. | - |
| Perdue and Kidd | 14,220.75 |
| Potts Law Firm, LLP | 62,082.84 |
| Restaino Law Firm | - |
| Salim-Beasley | 519,242.97 |
| Sanders Viener Grossman, LLP | - |
| Schneider, Wallace, Cottrell, Konecky | - |
| Schroeder Law Office, PLLC | - |
| Wagstaff & Cartmell, LLP | 229,768.56 |
| Watts Guerra, LLP | - |
| Wexler Wallace, LLP | - |
| Total: | $ 2,867,410.36 |

External Review Specialist's
Recommended Allocation

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABIILITY LITIGATION | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| IN RE: COLOPLAST CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL No. 2511 |

*This Document Relates To All Cases*

**Final Written Recommendation of the Common Benefit Fee and Cost Committee
Concerning the Allocation of Common Benefit Fees and the Reimbursement of Shared
Expenses and Held Costs For the Period of December 21, 2016 Through December 30, 2020**

COMES NOW, The Common Benefit Fee and Cost Committee ("FCC") and on May 18,

2022, issues its Final Written Recommendation concerning the allocation of common benefit fees

1

and the reimbursement of shared expenses and held costs for the period of December 21, 2016, through December 30, 2020.

### 1.  Formation of the FCC:

The Court, on January 15, 2016, entered its Pretrial Order Establishing Criteria for Applications to the MDL Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit and Appointment of Common Benefit Fee and Cost Committee in MDL Nos. 2187, 2325, 2326, 2327, 2387, 2440, and 2511 (the "FCC Order").[1]  Much like the litigation had been conducted by a cross-MDL leadership team tasked with working across MDL lines, the FCC Order appointed nine individuals to serve as members of the Common Benefit Fee and Cost Committee for purposes of recommending an allocation of a singular common benefit fund. The nine members of the FCC are Chairperson Henry G. Garrard III (Blasingame, Burch, Garrard & Ashley), Renee Baggett (Aylstock, Witkin, Kreis & Overholtz), Riley L. Burnett, Jr. (Burnett Law Firm), Thomas P. Cartmell (Wagstaff & Cartmell), Clayton A. Clark (Clark, Love & Hutson), Yvonne M. Flaherty (Lockridge, Grindal, Nauen), Carl N. Frankovitch (Frankovitch, Anetakis, Colantonio & Simon), William H. McKee, Jr., and Joseph F. Rice (Motley Rice).[2]

On June 23, 2017, the Court entered its Pretrial Orders establishing the Fee Committee Protocol for the review and evaluation of time and expense for consideration by the FCC (the

---

[1] Bard MDL 2187 PTO 207, AMS MDL 2325 PTO 204, BSC MDL 2326 PTO 136, Ethicon MDL 2327 PTO 211, Cook MDL 2440 PTO 71, Coloplast MDL 2387 PTO 85, Neomedic MDL 2511 PTO 23.

[2] The FCC members have no financial arrangement with one another with regard to the payment of funds associated with common benefit awards. Each member's conduct is independent and guided by the Court's Orders.

"Protocol").[3]   Pursuant to the terms of the Protocol, on October 13, 2017, the Court entered its Order Granting Motion to Appoint the Honorable Daniel J. Stack, Retired, as External Review Specialist to work with the FCC in accomplishing the Court's directives under the FCC Order and the Protocol.[4]

## 2.   History of the Litigation:

In its prior final written recommendation for the period ending December 20, 2016, the FCC provided an exhaustive history of the development of the multi-district litigations ("MDLs") pending before this Court. The FCC incorporates its prior recitation of the history of the MDLs in its present Final Written Recommendation for the seven multidistrict litigations ("MDLs") in the Southern District of West Virginia. Never before in the history of MDL practice has the JPML sent multiple, large-scale product liability MDLs involving different products and manufacturers to a single MDL court for inter-MDL coordinated proceedings. The pelvic mesh litigation coordinated before this Court ultimately grew to include more than 100,000 filed cases, comprising one of the largest mass tort litigations in history.

As explained in the Plaintiffs' Proposed Counsel Organizational Structure, which was submitted to the Court on March 17, 2012, the common medical, scientific and legal claims and theories, common defenses, and common experts, as well as the presence of numerous plaintiffs implanted with different defendants' products, called for a singular "cross-MDL" Plaintiffs'

---

[3] Bard MDL 2187 PTO 257, AMS MDL 2325 PTO 244, BSC MDL 2326 PTO 166, Ethicon MDL 2327 PTO 262, Cook MDL 2440 PTO 81, Coloplast MDL 2387 PTO 133, Neomedic MDL 2511 PTO 38.

[4] Bard MDL 2187 Doc. No. 4663, AMS MDL 2325 Doc. No 5112, BSC MDL 2326 Doc No. 4422, Ethicon MDL 2327 Doc. No. 4783, Cook MDL 2440 Doc. No. 592, Coloplast MDL 2387 Doc. No. 1572, Neomedic MDL 2511 Doc. No. 177.

leadership structure.  The Proposed Counsel Organizational Structure was vetted and agreed upon by every attorney who was included in the proposal.

The Plaintiffs' lawyers involved in the litigation from the outset foresaw the onerous task that lay ahead and assembled a Plaintiffs' Steering Committee ("PSC") of 61 attorneys from law firms across the country, who were ultimately appointed and assigned by the Court the responsibility of marshaling resources and leading this sprawling litigation under a unified leadership structure.  The Court entered Orders in each of the MDLs stating that "[i]t shall be the responsibility of Coordinating Co-Lead Counsel **to work across MDL lines** in conjunction with the Executive Committee named below to determine which attorneys are best suited to handle a given task…." and appointing "[a] singular PSC **to coordinate across MDL lines** in the [] separate pelvic mesh MDLs before this court…." (Emphasis added).[5]

The FCC's previous final written recommendation detailed the efforts and accomplishments of plaintiffs' counsel in the MDLs.  In the time period applicable to the present Final Written Recommendation, Plaintiffs' leadership continued their prior work in moving the MDLs toward conclusion.  MDL leadership continued to provide the support and materials associated with plaintiffs' expert witnesses so that cases placed in the MDL Court's wave process and ultimately those cases remanded for trial could satisfy the expert requirements. MDL leadership also continued to support firms in the wave process by identifying deposition transcripts, relevant documents in support of liability, and briefing materials for use by counsel in preparation of individual cases for trial.

While the litigation against the majority of products and defendants was fully mature prior to the time period applicable to the present Final Written Recommendation, there were certain

---

[5] Bard MDL 2187 PTO 33, AMS MDL 2325 PTO 4, BSC MDL 2326 PTO 4, Ethicon MDL 2327 PTO 4, Cook MDL 2440 PTO 4, Coloplast MDL 2387 PTO 2, Neomedic MDL 2511 PTO 7.

instances where the development of the litigation continued.  The development of the general liability case regarding the Coloplast products continued during the applicable time period including corporate depositions, document review, development of expert witnesses, *Daubert* and dispositive motion briefing, and depositions of defendant's expert witnesses.  Likewise, continuing discovery and development was undertaken with regard to the *Mullins* consolidation in the Ethicon MDL, the Bard Alyte product and the AMS MiniArc product.

Additionally, MDL leadership worked at the Court's direction to aid in the resolution of cases in an effort to ensure that those plaintiff's attorneys with limited numbers of cases received the full benefit of MDL leadership's knowledge and experience when negotiating the resolution of their cases.  MDL leadership appeared in West Virginia to aid in the negotiation and resolution of individual cases without charge to any plaintiff.

Finally, the FCC members devoted significant time to the review of time and expense submissions for the initial review period through December 20, 2016.  FCC members along with members of their firms reviewed time and expense submissions, met to evaluate the merit of submissions, prepared materials for distribution to firms and drafted pleadings in support of the Court's Order establishing the payment of common benefit funds including briefing to the Fourth Circuit Court of Appeals and the United States Supreme Court.  The Court's Order and allocation were upheld by the appellate courts including the finding that all counsel participating in the Court's common benefit compensation process waive any right to appeal the Court's decisions or the ability to assert the lack of enforceability of the Court's common benefit Order.

In the prior period, ending December 20, 2016, ninety-four law firms submitted more than 900,000 hours of time for common benefit consideration, and the Court-appointed FCC recognized a total of 679,191.20 of those hours as being for common benefit. For the current period of

December 21, 2016, through December 30, 2020, (the subject of this Final Written Recommendation) the FCC received submissions from thirty-seven firms totaling more than 138,000 hours, and the Court-appointed FCC recognized a total of 61,646.48 of those hours as being for common benefit.

Over ninety-five percent of cases in these MDLs have reached resolution or otherwise been dismissed, which has resulted in approximately $525,000,000 in payments into the common benefit fund by Defendants. Of that amount, approximately $490,000,000 has been distributed to firms pursuant to the percentages set forth in the Court's July 25, 2019, Allocation Order, including continuing quarterly distribution of seventy percent (70%) of funds received into the common benefit fund each calendar quarter since January of 2020.  At present, there remains a fund of approximately $33,000,000 available for payment of common benefit time and expenses for the period of December 21, 2016, through December 30, 2020.

**3.  Process of Allocation of Funds for Common Benefit Fees and Expenses.**

On October 4, 2012, the Court entered its Pretrial Order Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit Issues.[6]  In this Order, the Court set preliminary procedures for attorneys establishing standards for maintaining and submitting time and expenses for possible future consideration as common benefit and established the account to receive and disburse funds for the common benefit of the litigation. The Court directed attorneys to submit time and expense records to the Court-appointed accountant on a periodic basis of every six weeks beginning November 1, 2012.  As part of this Order, which was approved by all members of the PSC and signed and submitted by all members of the Plaintiffs' Executive Committee,

---

[6] Bard MDL 2187 PTO 54, AMS MDL 2325 PTO 20, BSC MDL 2326 PTO 17, Ethicon MDL 2327 PTO 18, Cook MDL 2440 PTO 11 (entered on 10/28/2013), Coloplast MDL 2387 PTO 6, Neomedic MDL 2511 PTO 20 (entered on 12/22/2015).

counsel who desire to be considered for common benefit compensation acknowledged – as a condition for such consideration – that the Court will have "**final, non-appealable authority** regarding the award of fees, the allocation of those fees and awards for cost reimbursements in this matter" and they "have (or will have) agreed to and therefore **will be bound by the court's determination** on common benefit attorney fee awards, attorney fee allocations, and expense awards, and…**knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of this Agreed Order or to otherwise challenge its adequacy**." (Emphasis added).

As it had done previously for time and expense submissions through December 20, 2016, the FCC's review of submissions was made pursuant to the Court's Orders and applicable law. On October 26, 2020, the FCC held its first meeting, by telephone, for the purpose of performing the tasks required under the Court's Orders so as to evaluate the common benefit work performed by applicant firms for the period of December 21, 2016, through December 30, 2020. The FCC held another call on November 2, 2020, to prepare and plan for the upcoming time and expense review process.  The FCC then worked with the Court-appointed accountants during November and December of 2020, in advance of the time submission for time and expense through December 30, 2020, in order to prepare for the delivery of materials to all firms seeking common benefit compensation.

Upon the deadline for the submission of time and expense for consideration through December 30, 2020, the FCC worked with the CPA to oversee the delivery and compilation of time and expense spreadsheets to each firm seeking compensation on January 22, 2021. The CPA and the FCC returned to each applicant firm the time and expense documentation received by the CPA December 21, 2016, through December 30, 2020.  Thereafter, each firm had sixty days in

which to audit its time and confirm that the time and expense submitted was true, accurate, clear, and for the common benefit of the litigation.  Once complete, each firm was to resubmit its time and expense along with an affidavit from a senior member of the firm attesting that the time and expenses submitted were for common benefit.  The FCC received the audited time and expense from firms and accompanying affidavits in March of 2021.  The FCC met telephonically on March 25, 2021, to plan the process of reviewing the time submissions received from applicant firms.

The process of the Initial Review under the Protocol for submissions during the period of December 21, 2016, through December 30, 2020, began on March 30, 2020. The FCC's methodology in evaluating the submissions of applicant firms follows the Protocol and the Court's prior common benefit orders.  The FCC's review of the time and expense submissions and accompanying affidavits was conducted in accordance with the fifteen items enumerated in Section B of the Protocol, the ten factors identified in Section C of the Protocol (which are the same as the items in Section B of the FCC Order), as well as the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). The FCC assigned each firm seeking payment of common benefit funds to a panel of attorneys who were familiar with the review process, having participated in the review of time and expense in the initial submission through December 20, 2016. These attorneys worked together to review every time and expense entry received from the applicant firms.  In reviewing the time and expense submissions and affidavits, the reviewers were guided by the Protocol and the FCC Order in determining the firm's contribution to the common benefit of the overall litigation.  The FCC continued to meet during the process of review to discuss and ensure the consistent application of the review for each applicant firm's submission.  The FCC was assisted in its review process by certain other attorneys who were requested to assist the FCC pursuant to Section A of the FCC Order.  Those attorneys were Amy Collins (Burnett Law Firm),

Thomas Hollingsworth (Blasingame, Burch, Garrard & Ashley), Diane Watkins (Wagstaff & Cartmell), and Michael Moreland (Clark, Love & Hutson). These attorneys assisted the FCC in the preparation of materials for FCC meetings.

Upon commencement of the Initial Review of the time submission by applicant firms, the FCC recognized that some firms diligently self-audited their time entries and submitted time for review that was substantially compliant with the instructions from the Court regarding hours that would be considered as contributing to the common benefit of the litigation. However, other firms made little or no changes to their time submission during the Court-ordered self-audit process, which resulted in submissions for time that did not meet the Court's instructions. The elimination of time that clearly did not meet the Court's criteria for common benefit consideration, which should have been identified in the self-audit process, resulted in the FCC's recognition of a relatively lower percentage of submitted hours as common benefit for firms that failed to adequately self-audit. Conversely, firms that made a good-faith effort to review their time submission during the self-audit period had a higher percentage of submitted time recognized as contributing to the common benefit as a result of those firms' diligence.

The process of reviewing the time and expense submissions made by firms continued through April of 2021, with the panel of reviewers meeting in Houston, Texas to perform the time and expense reviews on April 6, 7, and 8, 2021. The FCC met telephonically on April 15, 2021, to discuss ongoing reviews and ensure that all firms were receiving consistent evaluations pursuant to the Protocol. The FCC met again on May 18, 2021, in Houston, Texas, for the purpose of discussing those firms whose review had been completed by the panel of reviewers assigned the task of reviewing time submissions. The FCC met again by Zoom on May 27, 2021, June 1, 2021, and July 23, 2021, to finalize its discussion and analysis of firms seeking compensation for the

period of December 21, 2016, through December 30, 2020. During these meetings, each firm was thoroughly discussed by the entire FCC. While the number of FCC meetings was significant, greater time was invested by FCC members between meetings. FCC members routinely worked on matters in preparation for the next FCC meeting.

During its meetings from May 18, 2021, through July 23, 2021, the FCC received detailed presentations about each firm seeking common benefit compensation. The work of the FCC during this period was not simply to determine the number of hours that might be considered compensable, but also (and more significantly to the FCC) the quality of those hours and the extent such time was of benefit to the litigation. As each firm was discussed, the FCC decided which time entries would (at that stage) be considered as common benefit, which time entries were deemed of no compensable value, and which entries required additional information in order for the FCC to properly evaluate the submission.

Simultaneously, the FCC evaluated the nature of the legal work reflected in the time submissions. The FCC considered for each firm whether the work for which time was submitted was performed by attorneys or non-attorney staff, and the experience and seniority of the attorney performing work, as well as whether multiple lawyers or firm members were performing the same or similar tasks that could appropriately be handled by a single attorney. The FCC discussed the nature of the work and the role of the applicant firm as reflected in the time submissions, including, for example, whether the firm was engaged in document review, expert identification and preparation, written discovery, depositions, trials, briefing or appellate work, or settlement negotiation. With regard to the venue of cases, and in accordance with the Court's instruction in the FCC Protocol, the FCC considered whether trial work was performed within the MDLs or in various state courts, and the extent to which it contributed to the outcome of the litigation and

benefited the MDL.  In addressing trials, the FCC considered whether a trial was the first successful trial of a particular mesh product, whether the trial attorneys created common benefit materials and shared such materials with other plaintiffs' firms within the litigation without compensation (and at what point in time that material was shared), and whether the trial attorneys consulted with MDL leadership in case selection, trial preparation and trial strategy.  Further, the FCC considered whether a firm participated in a lead role, a back-up role, or was simply an observer of the activity in the litigation.  Despite repeated requests by the FCC, in some instances, the low quality of information delivered to the FCC by the applicant firm made it impossible for the FCC to identify any common benefit derived from the submitted time.

The foregoing examples are not meant to be exhaustive but are meant to be illustrative of the attention given to each firm during the Initial Review.  Throughout the Initial Review, the FCC was mindful of the Court's instruction that "the over-arching guideline that the FCC must consider is the contribution of each common benefit attorney to the outcome of the litigation." The FCC received time entries totaling more than one hundred thirty-eight thousand (138,000) hours. The FCC reviewed every time entry from every firm in conducting its Initial Review.  Where the FCC had questions requiring further evaluation of applicant firms, the FCC members continued their review and returned at subsequent meetings to respond.  No applicant firm's time or expense was approved for distribution to the firm until the FCC unanimously approved the time or expense.

On July 26, 2021, the FCC provided its Initial Review to the applicant firms.  Each firm received a letter detailing the process utilized by the FCC along with five exhibits. Exhibit A identified those time entries where the FCC found that there was no basis for an award of compensation for the time. Exhibit B identified those time entries requiring more information from the applicant firm. Exhibit C identified the dates beyond which the FCC determined that time did

not contribute to the common benefit of the litigation. Exhibit D identified those expenses sought for reimbursement which were allowed by the FCC as common benefit and those expenses which were disallowed by the FCC as common benefit.  Exhibit E set forth categories of expenses which applicant firms were to remove from their submission.  The letter to each firm instructed the applicant firm how and when to respond and also provided the reasons why time was placed on Exhibits A and B for that firm.  Each letter was unique and tailored to the specific firm providing only those reasons that were applicable to the particular firm's time. Firms were to provide an affidavit in the format provided in the Protocol signed by a senior firm member setting forth the reasons, grounds and explanation for the Firm's entitlement to common benefit fees under the factors outlined in the FCC Order and in the FCC Protocol.  Firms were also given the opportunity to provide a response for each time entry that the firm believed was placed on Exhibit A or B in error. Likewise, firms were to provide a response for each expense entry that the firm believed was disallowed on Exhibit D in error. For any firm that did not provide a complete response, the FCC contacted firms on September 2, 2021, requesting that the applicant firm complete its response.

After receipt of the responsive materials from the firms, the panel of attorneys working with the FCC once again reviewed each time and expense entry for which the applicant firm sought reimbursement, as well as the materials provided, in order to further evaluate the contribution made by each firm to the common benefit of the litigation.  The panel of reviewers met, in person, on September 27, 28, and 29, 2021, to review the materials provided by firms seeking compensation and to perform subsequent review of the time and expense submissions.  The review process continued during September and October of 2021.  The FCC met on November 4, 2021, in Atlanta Georgia.  During the meeting the FCC received presentations regarding the responses received from applicant firms.  The FCC discussed and decided on whether time submissions placed on

Exhibits A and B delivered to the firms should be considered as contributing to the common benefit.  Likewise, the FCC discussed and decided on whether expense submissions marked as disallowed on Exhibit D delivered to the firms should be considered as reimbursable. As discussed above, the FCC's focus during its review of responses of applicant firms was not directed toward a mechanical calculation of the numbers reflected in time and expense entries.  Rather, the FCC endeavored to analyze the benefit and value of the work reflected in these submissions in light of each firm's role in the litigation and in accordance with the Court's directives set forth in the common benefit orders, based on the FCC's experience in the litigation and the materials and information submitted by each Firm.  Specifically, the FCC considered the final time and expense submissions and materials provided by each firm in light of the items enumerated in Section B of the Protocol, the factors enumerated in Section C of the Protocol, and the factors set forth in *Barber v. Kimbrell's, Inc.*

On November 12, 2021, the FCC delivered to each applicant firm the results of the FCC's evaluation of the firm's materials in response to the Initial Review.  At that time, the FCC notified each firm of the hours and expenses that the FCC found to be eligible for consideration as common benefit.  In accordance with Section D of the Protocol, each firm was given notice of the opportunity to be heard by the FCC.  The letter provided to each firm was accompanied by a revised version of Exhibits A, B, and D reflecting the FCC's decision to allow or disallow each entry based upon the information provided by the applicant firm in its final submission of time and expense.  The letter provided instructions on how to request an opportunity to be heard by the FCC.  Of the thirty-seven firms whose time was reviewed, four elected to be heard by the FCC. The FCC conducted meetings with representatives of each firm who made a request.  The FCC conducted meetings in Atlanta, Georgia on December 8, 2021. In accordance with Section C. of

the FCC Order, each firm was permitted to "present the reasons, grounds, and explanation for their entitlement to common benefit," and was generally allowed to be heard by and to discuss with the FCC any matter of its choosing during these meetings. The FCC received and considered all of the oral presentations of all applicant firms who availed themselves of this opportunity. Based on the presentations of firms, the FCC reviewed, and where appropriate, revised the hours or expenses considered for common benefit. Additionally, the FCC met and discussed the presentation of firms in light of the value that each firm contributed to the litigation. At the conclusion of the meetings, the FCC finalized the number of hours and amount of expenses for its preliminary recommendation.

The FCC met on January 19, 2022, via Zoom for the purpose of finalizing its allocation of funds available for compensation of common benefit. In so doing, the FCC relied upon its detailed knowledge and understanding of the work performed throughout the process of thoroughly reviewing each firm's time and expense submissions, affidavits, additional written materials, and meetings with firms. The FCC also relied upon the collective personal knowledge and experience of its members in this litigation and the input received from other leadership within the litigation. The process of allocating the potential fund was not a new process for the FCC, rather it was the continuation of the process that began with the entry of the FCC Order. The FCC met again on March 3, 2022, via Zoom to complete its discussion of the allocation of potential funds for common benefit awards. At the request of the FCC, the Chairperson proposed a series of awards utilizing a percentage of the funds for each of the applicant firms. The FCC then addressed each of the firms individually and discussed whether the proposed percentage award was appropriate. The percentage value assigned to each firm was then adjusted to reflect the decision of the FCC for each firm. Some adjustments were upwards, some downwards and some remained unchanged. In

discussing an appropriate percentage for the applicant firms, the FCC was again guided by their experience and familiarity with the litigation, the nature and value of the work performed, the FCC Order and the FCC Protocol with focus being given to the items enumerated in Section C of the Protocol and the *Barber* factors. Only FCC members participated in the discussion and decision regarding the allocation of common benefit funds.  Attorneys who assisted the FCC in its review process did not participate in the decision by the FCC regarding allocation of funds to applicant firms.

The FCC did not request any information regarding billing rates utilized by applicant firms. The FCC did not apply a formulaic or grid approach whereby an applicant's recommended common benefit award was the sum of points or the product of an "hours x rate x multiplier" equation.  The FCC observed that the hours submitted by firms varied widely in quality, with some applicants submitting significant numbers of hours of no common benefit, while others submitted fewer hours that provided substantial benefit to the litigation.  The FCC followed its directive under the Protocol to focus on (and reward) firms based on their substantive contributions rather than the bulk submission of hours.

Upon the completion of the allocation process, the FCC was unanimous in its agreement that the process used throughout the review of time and expense was performed in accordance with the Court's Orders and the applicable legal authority, and the FCC was unanimous in its agreement to the amounts allocated to each firm in the Preliminary Written Recommendation. The FCC met and collectively approved the materials for distribution of the FCC's Preliminary Written Recommendation during its meeting on March 3, 2022.  The FCC reviewed the information being delivered to each applicant firm and discussed the Protocol with regard to the Preliminary Written Recommendation, the opportunity for objections thereto and the Final Written Recommendation.

The FCC's Preliminary Written Recommendation was delivered to all applicant firms on March 4, 2022.

Applicant firms were permitted to make any objection to the Preliminary Written Recommendation on or before March 18, 2022. Of the thirty-seven firms receiving the Preliminary Written Recommendation, the FCC received objections from five firms. The FCC considered the written objections of firms and met on March 30, 2022, via Zoom to deliberate and discuss the objections. The FCC then continued to confer regarding objections via Zoom, and on May 5, 2022, the FCC met to approve the form and content of this Final Written Recommendation. Of the five objections two have now been resolved. After due consideration of the remaining objections, the FCC unanimously agreed to its proposed allocation of funds for compensation of common benefit to each applicant firm as set forth in this Final Written Recommendation.

The FCC received certain objections from counsel to its Preliminary Written Recommendation, which remain unresolved. Generally, the remaining objectors argue that their awards are insufficient in light of their contribution. Some objectors took the position that the FCC's recommendations for the members of the FCC were too high, while others commended the FCC members for their hard work, dedication, and the value they added to the litigation. The FCC members' firms contribution to the common benefit of the litigation continued to provide the majority of common benefit time and value. Often, objectors claimed to have performed the same work as was performed by other applicant firms. In reviewing the objections, and preparing this Final Written Recommendation, the FCC revisited its preliminary recommendations with an eye toward ensuring compliance with the Courts directives in the applicable pretrial orders, with careful attention paid to recommending awards on a firm-by-firm basis that reflected as accurately as possible the value provided by that firm to MDL claimants.

16

The FCC notes that certain of the remaining objections are preoccupied with the computation or comparison of hourly rates that objecting firms calculated in order to subjectively compare themselves to other firms. Similarly, certain of the objecting firms attempt to use an hourly calculation to compare the compensation of the firm during the prior time period through December 21, 2016, with the current period ending December 30, 2020. These objections necessarily substitute the objecting firm's subjective evaluation of the firm's contribution to the common benefit of the litigation in place of the analysis performed by the FCC. The essential crux of each such objection is that the firm seeks an increase in its award based on its self-evaluation in comparison to other firms, or the firm wishes to re-litigate its dissatisfaction with the Court's Order awarding common benefit from the previous period. The FCC, as discussed in detail in this Final Written Recommendation, did not use an hourly rate method in arriving at its percent allocation for each applicant firm.

The overarching theme of the unresolved objections received can be summarized as follows: my firm did not receive enough money (either in this period of review or in the prior period after exhausting all appeals and the appellate courts' affirmation that no right of appeal exists) and/or another firm (or other firms) received too much money.  However, the subjective comparisons proffered by the objecting firms are often contradictory, if not self-defeating. It readily appears that the objecting firms' true intent is to substitute their own subjective judgment for that of the FCC with respect to the value of their and other firms' work in the allocation process.

It was further noted that the remaining objecting firms generally sought to compare their effective hourly rate to that which they calculated for other firms (typically those whose rates they calculated as being higher than their own).  However, in challenging why another firm (or other firms) received a higher rate than theirs, several of the objecting firms focused primarily on their

subjective views regarding the quality or value of the work.  As required under the FCC Protocol when determining the common benefit of time submitted, the FCC considered the skill, reputation and experience of each of the individuals who submitted time for each firm, as well as the nature and quality of work being performed by each of those individuals.

**4.  Legal analysis of common benefit fee allocation process.**

"It is beyond dispute that a court may 'appoint a committee of plaintiffs' counsel to recommend how to divide up an aggregate fee award.'" *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 773 (E.D. La. 2011).  As recognized in *In re Diet Drugs Prods. Liab. Litig.*, 2003 WL 21641958, *6 (E.D. Pa. 2003), a committee allocating attorneys' fees is "well suited" for that task where it is "comprised of respected attorneys with in-depth knowledge of the work performed throughout the course of . . . the litigation."; *see also*, *In re Diet Drugs Prods. Liab. Litig.*, 2002 WL 32154197, at *23 (E.D. Pa. 2002) (finding it "both more efficient and fairer" to permit a committee of counsel involved in the litigation to make an initial attempt at allocating a fee award among the applicant counsel, rather than having the court make those determinations in the first instance); *Vioxx*, 802 F. Supp. 2d at 764 (observing that fee committee appointees were "heavily involved" in the litigation and thus "had firsthand knowledge of the nature and extent of the common benefit work which was done and who did it"); *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 90 (2d Cir. 2010) ("Since lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions, it is neither unusual nor inappropriate for courts to consider lead counsel's proposed allocation of attorneys fees, particularly…where the district court retains the ultimate power to review applications and allocations and to adjust them where appropriate."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6909680, *2 (N.D.Ca.2016) ("In class actions lead counsel commonly propose the initial

plan of fee allocation since 'class counsel are the most familiar with the amount of work actually contributed by each of the…firms,' and can assess 'in a manner that they believe, in good faith, reflects the contributions of counsel to the prosecution and settlement of the claims.'") (Cits. omitted).

"As a general principle, . . . [attorneys'] fees are to be allocated in a manner that reflects the relative contribution of the individual firms and attorneys to the overall outcome of the litigation." *Diet Drugs*, 2003 WL 21641958, at *6. *See also*, *In re Copley Pharmaceutical, Inc., Albuterol Prods. Liab. Litig.*, 50 F.Supp.2d 1141, 1149-50 (D.Wyo.1999) ("The Court's research reveals that courts unanimously make allocations based 'upon the quantity and quality of effort expended by the attorneys in obtaining the common fund.'") (Internal cits. omitted); *Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797, 812 (E.D.La.2008) ("This apportionment [of common benefit funds among counsel] is largely dependent on an analysis of the amount, nature, and significance of the work of each counsel and how it relates to the work of the other counsel."). Consistent with such authority, and as discussed above, the Court instructed in its Order Establishing Criteria for Applications to MDL Common Benefit Fund that "the over-arching guideline that the FCC must consider [in allocating common benefit attorney's fees] is the contribution of each common benefit attorney to the outcome of the litigation." (Order Establishing Criteria for Applications to MDL Common Benefit Fund, p. 5).

Stated plainly, the "allocation of fees is not an exact science," and the methodology used may vary, so long as it is designed to produce results that are both fair and reasonable. *See Diet Drugs*, 2003 WL 21641958, at *7, *11. *See also*, *In re Motor Fuel Temperature Sales Practices Litig.*, 2016 WL 4445438, *13 (D.Kan.2016) ("In determining reasonable attorneys' fees, the essential goal 'is to do rough justice, not to achieve auditing perfection.'"). Because subjective

factors, such as the nature of the work performed, the skill and experience of the counsel doing it, and the results achieved are relevant considerations, "some subjectivity is unavoidable in allotting common benefit fees." *Vioxx*, 802 F. Supp. 2d at 774. "[I]n the real and imperfect world of litigation it is an accepted fact that not all work hours are entitled to the same compensation rate. The nature of the work, the skill and experience of the party doing the work, and the result achieved all factor into the appropriate allocation. How these factors are weighed injects an unavoidable amount of subjectivity in the analysis. **The best that can be done to assure the validity of the analysis is to base the subjectivity quotient on sufficient facts and experience, and to invite input from those affected**." *Id.* (Emphasis added). "With so much money at stake and so much time invested by skilled attorneys on valuable common benefit work, it is not surprising that disputes exist concerning the proper method and dollar amount of the individual allocations. We emphasize, however, that the allocation of fees is not an exact science." *Diet Drugs*, 2003 WL 21641958 at *10-*11.

The process used in allocating attorneys' fees generally should also offer the opportunity for meaningful input by the fee applicants. *Diet Drugs*, 2003 WL 21641958 at *6 (noting that applicants had the opportunity to object to their proposed fee allocation, meet with the fee committee and discuss their objections, suggest revisions before a final recommended allocation was determined, and, if still dissatisfied, seek relief from the court).

The proposed fee allocation in this case plainly satisfies all of the necessary criteria discussed in the applicable legal authority, as well as the protocols and procedures established by the Court. In their objections to the FCC's preliminary recommendation, certain of the applicant firms have suggested that the FCC was required to utilize a "lodestar" methodology, where the hours credited to the firm are multiplied by an hourly rate. Several courts have considered and

rejected similar arguments, and to be clear, the FCC was not required to and did not attempt to employ any "lodestar" calculation. *See, In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307-08 (1st Cir.1995) (rejecting argument that common fund must be allocated among counsel using lodestar method, stating "[W]e hold that in a common fund case the district court, in the exercise of discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar…. [W]e rule the court below did not err in purposing to allocate fees based on the [percentage of fund] method, emphasizing the attorneys' 'relative contribution' to the creation of the Fund."); *Glaberson v. Comcast Corp.*, 2016 WL 6276233 (E.D.Pa. 2016) (observing that in allocation of common fund attorneys' fees, "a mathematical application of a ratio of the firms' lodestars is not mandated.")  Here, the FCC considered the submitted time of counsel for common benefit fee purposes as entitled to allocation weight only in relationship to outcome contribution. Not simply how much time an attorney has spent and submitted, but whether and how an attorney's time contributed to the outcome of the litigation, has been a consistent, and even primary, focus of the FCC in its analysis and recommendation.

In a similar vein, the dollar-specific allocations recommended by the FCC are not driven by mathematical formulation, any more than they are based upon the mere counting of attorney hours.  The FCC was charged by the Court with the task of reviewing time and expense submissions and accompanying materials from thirty-seven different law firms.  As described above, a painstaking, detailed review by the FCC of submitted time records was conducted over several months. The Initial Review, along with the affidavits and other materials submitted from the applicant firms, and the feedback and input from objecting firms, assisted the FCC in analyzing *inter alia* the nature, quantity and duration of the work performed, the identity of the attorneys

performing the work and their respective experience and abilities, and generally how the work contributed (or did not contribute) to the overall common benefit of the MDL plaintiffs. As outlined in detail above, this review and allocation process that involved hundreds of hours over several months was thorough. Each applicant firm was allowed to provide substantive input to the process, and to receive feedback from the FCC. While the FCC extensively reviewed the hours submitted by every firm and took the approved time into consideration in making its proposed allocation, the FCC did not request hourly rates from any firm or attempt to mechanically apply any "hours x rate" analysis. *See*, *Vioxx*, 802 F.Supp.2d at 773 ("To simply total the hours spent, apply an appropriate lodestar factor, and allocate the fee on that basis alone would not be appropriate in this case."). Instead, the FCC reviewed the submitted time and applicant input in light of the Court's directives set forth in the Fee Committee Protocol and prior common benefit orders, the ultimate purpose of which is to "evaluat[e] what work and expenses furthered the common benefit of the litigation." (Fee Committee Protocol, p. 10). *See*, *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995) ("While the time logged is still relevant to the court's inquiry – even under the [percentage of fund] method, time records tend to illuminate the attorney's role in the creation of the fund, and, thus, inform the court's inquiry into the reasonableness of a particular percentage…."); *In re Copley Pharmaceutical, Inc., Albuterol Prods. Liab. Litig.*, 50 F.Supp.2d 1141, 1149-50 (D.Wyo.1999) ("[t]he value of time expended with appropriate adjustments may provide a rough starting point for assessing the respective roles of counsel, but it should not be used rigidly as a precise measure to the exclusion of other intangible factors.").

The FCC's approach in making this proposed allocation is consistent with the allocation methodology applied in similar multi-plaintiff product liability settlements. Recently, in *In re*

*Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, MDL 2428 ("*Granuflo*"), the court-appointed fee committee recommended an allocation to each applicant firm of a percentage of the total fee award based on the committee's experience and the facts submitted, and after receiving input from the interested firms. *Granuflo*, 1:13-md-2428, Doc. 1983 (Memorandum in Support of Plaintiff Leadership's Petition for Award and Allocation of Common Benefit Fees) (D.Mass. Dec. 12, 2017). The fee committee in *Granuflo* emphasized in its petition that it did not undertake to apply "an unyielding mathematical formula," which it noted could not account for the multitude of subjective differences that must be considered in making such an award, such as the differing skills and contributions of the attorneys and varying nature and complexity of the tasks involved. (*Id.*, p. 22). The MDL court approved the fee committee's recommendation. *Granuflo*, 2018 WL 2163627 (D.Mass.2018). Similarly, in *In re Nuvaring Prods. Liab. Litig.*, 2014 WL 7271959, *2 (E.D.Mo.2014) (Order approving recommendation of Special Master's Recommendation Regarding Allocation and Distribution of Common Benefit Fees and Expenses), the Court affirmed the Special Master's recommended allocation of common benefit fees. As noted there, the recommended allocations were based on the quality and value of the work performed, not on a "lodestar" analysis of rates multiplied by hours. *Id.* at *6. Likewise, in the *In re Yasmin and Yaz Prods. Liab. Litig.* MDL, the Special Master recommended an allocation based on the quality and value of the work to the litigation and resolution and expressly rejected the "lodestar" approach as both arbitrary and inappropriate because it would not properly consider the value and quality of the work involved. *In re Yasmin and Yaz Prods. Liab. Litig.*, 3:09-md-02100, Doc. 3843 (Special Master's Report and Recommendation Regarding the Allocation and Distribution of Common Benefit Fees and Expenses) (S.D.Ill. Nov. 6, 2015), pp. 7-8. The *Yaz* MDL Judge, the Hon. David R. Herndon, adopted the Special Master's allocation recommendation in its entirety. *Id.*, Doc. 3856

(Minute Order adopting Special Master's recommended allocation in its entirety) (S.D. Ill. Nov. 20, 2015).

In its Recommendation for Fee Allocation filed in *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, MDL 2179, the court-appointed Fee Committee stated that it "did not employ a 'lodestar' or 'hourly rate' approach…. Nor did the FCC interpret its task to simply apply a single blended hourly rate to all hours that had been submitted in the case." (*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2:10-md-2179, Doc. 22628 (Fee and Cost Committee Recommendation for Proposed Cost Reimbursements and Fee Allocation) (E.D. La. Apr. 11, 2017), p. 5). The *Deepwater Horizon* committee further explained that it "did not, at any time, assign particular 'rates', or 'multipliers', to a firm's accepted hours, and then use that to derive the ultimate fee recommendation." *Id.*, p. 7. Instead, "[t]he overarching guideline for the FCC to consider was the relative common benefit contribution of each Fee Applicant to the outcome of the litigation…." *Id.*, p. 6. Likewise, the *Deepwater Horizon* Special Master cited to Judge Fallon's *Vioxx* opinion, noting that **"[m]echanically calculating hours and allocating fees solely on that basis would incentivize padded hours and diminish the work that truly moved the litigation towards its conclusion**." (*Deepwater Horizon*, Doc. 23574-1 (Special Master's Recommendation Concerning the Allocation of Common Benefit Fees) (Oct. 24, 2017), p. 8 (emphasis added)). The court in *Deepwater Horizon* adopted the Special Master's recommended allocation. (*Id.*, Doc. 23574 (Order Adopting Special Master's Recommendation Concerning the Allocation of Common Benefit Fees) ()). *See also*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2013 WL 1867117, *4-*15 (E.D.La.2013) (approving MDL fee allocation proposed by PSC and by Special Master by percentage of available common benefit fees); *In re Prempro Prods. Liab. Litig.*, 2014

WL 3809101, *1-*2 (E.D. Ark. 2014) (adopting percentage-based common benefit allocation recommended by Common Benefit Fee Committee and proposed by Special Master).

**5.  Objections claiming lack of "discovery" from FCC.**

Certain of the objecting firms have sought to conduct discovery regarding the FCC's deliberations and complain generally about an alleged lack of "transparency" about the process. Initially, as all applicant firms are aware, the Court charged the FCC "with engaging in **confidential** discussions as part of the FCC's function." (FCC Order, Section A) (Emphasis added).  As the Court's Order recognizes, confidentiality is necessary for the FCC to have candid and frank discussions and deliberations about the value and benefit of the contribution of the firms involved.

In *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014), the Eighth Circuit considered and rejected a similar objection to a common fund allocation for lack of discovery, observing as follows:

> Although the court did not appoint an external auditor or permit discovery, *cf. In re Diet Drugs,* 582 F.3d at 533–34, discovery in connection with fee motions is rarely permitted, *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 338 (3d Cir.1998), and a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

In *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, C.A. No. 3:12-md-02385, Doc. 613 (Case Management Order No. 89 - Denying Motion to Stay and Prohibiting Discovery Relating to Common Benefit Fee Determination) (S.D.Ill. Jan. 8, 2015), the Hon. David R. Herndon, an experienced MDL Judge, similarly rejected a firm's ("CDL") request for discovery regarding a common benefit fee allocation.  Instructively, Judge Herndon stated there "The Court finds that it has imposed appropriate guidelines and ground rules with regard to the common benefit fee determination. [The law firm seeking discovery] has not presented the Court with any reason to

doubt the methodology that has been employed, conclude that informal or formal discovery is genuinely needed, or doubt the billing information that has been provided to date. Accordingly, the Court sees no reason to depart from the principle that discovery in connection with fee motions should rarely be permitted."

Here, the Court provided detailed guidance and established rules and criteria that have governed the FCC's common benefit allocation process. The facts and information considered by the FCC have been provided and explained in detail to every firm that applied for common benefit. As detailed above, every applicant firm has been provided substantial information about how their work was evaluated, including written explanations regarding the applicant firm's submitted time considered – or not considered – as common benefit, and an opportunity to respond in writing and in-person.

As the Court-Ordered Protocol and this Final Written Recommendation reflect, applicant firms were given several opportunities to receive feedback from the FCC about the review and allocation process, both in writing and in-person. All applicant firms were allowed to make a presentation and/or provide a written submission to the FCC which they felt would establish the value of their work and/or their contribution to the common benefit of this MDL. (*See, e.g.*, FCC Protocol, Section C (each applicant firm must submit affidavit that "shall forth the reasons, grounds and explanation for the firm's entitlement to common benefit fees."); FCC Order, Section C ("It is the responsibility of the FCC to conduct meetings, at the appropriate time, during which any counsel who has submitted an application for common benefit compensation may, at his or her discretion, separately appear and present the reasons, grounds, and explanation for their entitlement to common benefit fees."). Likewise, pursuant to Court's Protocol, the FCC provided ample opportunity for applicant firms to provide substantive feedback and input regarding the

26

process – again, both in-person and in writing – including any input regarding the relative contributions or benefit provided by any applicant firm.  Not only has every applicant firm had multiple opportunities to both provide and receive information and feedback to and from the FCC, the Court's Protocol provides additional opportunities to present objections to the Court-appointed External Review Specialist and to the Court.  Any complaint about an alleged lack of information here is unfounded.

### 6.  Final Recommended Allocation of Funds:

Comprised of attorneys whose work spanned the entire litigation, the FCC was well-informed of the substantive contributions made by each applicant firm and endeavored to appropriately recognize those contributions. The FCC has exhaustively reviewed all of the facts and information provided by common benefit applicant firms, has applied the principles and complied with the directives established in the Court's protocol, and relied upon its experience and familiarity with the litigation and with the facts, providing multiple opportunities to provide and receive input by common benefit applicant firms in writing and in person.  After several months of deliberations regarding the applications, the FCC reached its recommendations.

Based on the foregoing, the FCC makes the following observations regarding the contribution of each common benefit applicant to the outcome of the litigation and recommends the following awards. In making its Final Recommendation, the FCC utilized the following method.  First, the FCC considered the total anticipated funds available in the MDL common benefit fund at the time of the first anticipated distribution by the Court to be approximately $33,000,000 (specifically the assumption of $33,484,033.54 was utilized). Using the percentage method discussed previously in this Final Written Recommendation, the FCC recommends that upon application of the recommended percentages for each applicant firm, the following amounts

should be distributed to each firm. The FCC further anticipates that additional funds will continue to be received by the MDL common benefit fund.  While the FCC has undertaken only to review the period of time from December 21, 2016, through December 30, 2020, in this Final Written Recommendation, the FCC has also observed and evaluated whether there was material contribution to common benefit in the time submissions beyond December 30, 2020.  The FCC's opinion is that there has been no material contribution to common benefit by firms since December 30, 2020, that would not be adequately compensated by prospective application of the percentages recommended in this Final Written Recommendation, and that there is no need for a third period of review[7].  Because it does not believe a third period of common benefit review is necessary, the FCC's Final Written Recommendation proposes a methodology for the distribution of all common benefit funds on hand at this time, and all funds to be received into the MDL common benefit fund in the future.  In order to discharge its assigned duties on a final basis, the FCC recommends that the Court allocate the thirty percent (30%) fund which has presently been held back by the CPA in accordance with the percentages set forth below after payment of the expenses identified below. The FCC further recommends that with regard to future funds, the Court (1) allocate thirty percent (30%) of future funds received in the MDL common benefit fund utilizing the same percentages as set forth herein below; and (2) continue to allocate seventy percent (70%) of future funds received in the MDL common benefit fund amongst applicant firms utilizing the same percentages as set forth in the Court's July 25, 2019, Allocation Order.

In accordance with the Fee Committee Protocol, any firm wishing to object to this Final Written Recommendation shall deliver its objection within fourteen (14) days of this Final Written

---

[7] The FCC notes that the time incurred by FCC members in performing the necessary review of time and expense submissions occurred after December 30, 2020.  While the FCC's efforts are contributions to the common benefit, the FCC members propose that there be no further period of review for time submissions, including those of the FCC members beyond December 30, 2020.

Recommendation. Any objection is limited to ten (10) pages. Upon timely notice to the FCC, objections will be considered by the External Review Specialist prior to the External Review Specialist's delivery of his recommended allocation to the Court.

The FCC recommends that allocation of funds for common benefit be paid as follows:

**Anderson Law Office.** Anderson Law Office partner Ben Anderson is a member of the Plaintiffs' Steering Committee and served as Co-Lead of the Cook MDL. For the period of December 21, 2016, through December 30, 2020, the firm aided leadership in the Ethicon MDL in preparing and updating general expert reports associated with the MDL Court's wave process and the Mullins consolidation. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.24700%, plus reimbursement of $8,238.77 in expenses.

**Andrus Wagstaff.** Andrus Wagstaff partner Amy Wagstaff is a member of the Plaintiffs' Steering Committee, was appointed to serve as Co-Lead Counsel for the Boston Scientific MDL, and was appointed as a member of the Executive Committee. For the period of December 21, 2016, through December 30, 2020, the firm aided leadership in the Ethicon MDL in deposition preparation, depositions and Daubert motion practice involving general experts in the Mullins consolidation. As Co-Lead Counsel, Ms. Wagstaff also administered BSC cases moving forward in the MDL Court's wave process. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.888000%, plus reimbursement of $29,671.75 in expenses.

**Aylstock, Witkin, Kries & Overholtz, PLLC.** Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO") was an early participant in the TVM litigation. AWKO began its work in TVM litigation in New Jersey as part of the New Jersey Consolidation. Upon formation of the Federal MDL, AWKO partner Bryan Aylstock was assigned as one of the three Coordinating Co-Leads in the overall TVM MDLs, was a member of the Executive Committee and the Plaintiffs' Steering Committee; and AWKO partner Renee Baggett was assigned to a Co-Lead position in the Ethicon MDL and is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the AWKO worked to coordinate the efforts of plaintiffs' counsel and provided information to plaintiffs' counsel regarding developments in the litigation across multiple MDLs. The firm also worked to conduct discovery in the Coloplast MDL under the Hague Convention. AWKO partner Renee Baggett also served as a member of the Common Benefit Fee and Cost Committee in performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, materials provided by the firm, the firm's in-person presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 10.80000%, plus reimbursement of $84,358.30 in expenses.

**Blasingame, Burch, Garrard & Ashley, PC.** Blasingame, Burch, Garrard & Ashley, PC ("BBGA") helped start the Pelvic Mesh litigation. BBGA partner Henry Garrard was appointed by Judge Goodwin to numerous positions, including Coordinating Co-Lead Counsel for all of the transvaginal mesh MDLs, Co-Lead Counsel for the Bard MDL, a member of the Executive Committee, as well as a member of the Plaintiffs' Steering Committee. BBGA partner Henry Garrard was also appointed as Chairperson of the Common Benefit Fee and Cost Committee. BBGA partner Josh Wages was appointed to the Plaintiffs' Steering Committee. BBGA started the TVM litigation that resulted in creating all the MDLs. For the period of December 21, 2016, through December 30, 2020, the firm undertook significant work in performing the review of time and expense submissions of firms seeking common benefit compensation. BBGA also prepared materials for distribution to firms seeking common benefit compensation and drafted the pleadings resulting in the successful award of the common benefit fund, the allocation of the common benefit fund, and the successful defense of the common benefit award against objections and appeals. Additionally, BBGA managed and coordinated the ongoing activities of the MDLs and assisted attorneys across the country in handling their cases. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 13.65934%, plus reimbursement of $467,202.31 in expenses.

**Blizzard & Nabers, LLP.** Blizzard & Nabers partner Ed Blizzard is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed document review and conducted the deposition of a corporate representative in the Coloplast MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.08600%, plus reimbursement of $2,243.67 in expenses.

**Bossier & Associates, PLLC.** The firm worked with members of the Executive Committee and in the Bard MDL. For the period of December 21, 2016, through December 30, 2020, the firm aided leadership in the development of the Bard Alyte product litigation. The firm performed document review, and prepared expert reports for general experts in support of the Bard Alyte product litigation. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.11000%, plus reimbursement of $11,242.94 in expenses.

**Burnett Law Firm.** Burnett Law Firm partner Riley Burnett is a Co-lead in the Coloplast and Neomedic MDLs, and a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm worked to develop the general liability case in the Coloplast MDL including coordination of MDL work assignments, performing document review, and taking depositions regarding product design, sales, marketing, regulatory affairs and general experts. Burnett Law Firm partner Riley Burnett also served as a member of the Common Benefit Fee and Cost Committee in performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the

common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 6.80000%, plus reimbursement of $37,594.84 in expenses.

**Carey Danis & Lowe, LLP.** For the period of December 21, 2016, through December the 30, 2020, the firm performed work in state and federal courts for Ethicon cases that benefitted the MDL The time and expense submissions of the firm were reviewed by the FCC. Based on a complete review of the time and expense records, materials provided by the firm, the firm's in-person presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.20000%.

**Clark, Love & Hutson, G.P.** Clark, Love & Hutson, G.P. ("CLH") performed a leadership role in the state and federal transvaginal mesh litigation from its inception. CLH partner Clayton Clark was appointed to serve as Co-Lead Counsel for the Boston Scientific MDL, is a member of the Executive Committee and the Plaintiffs' Steering Committee. Clayton Clark was also appointed as a member of the Common Benefit Fee and Cost Committee. CLH partner Scott Love is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm worked significantly in review of time and expense submissions of firms seeking common benefit compensation. CLH also aided in the preparation of materials for distribution to firms seeking common benefit compensation and the drafting of pleadings resulting in the successful award of the common benefit fund, and the allocation of the common benefit fund. In addition to contributions to the FCC, CLH continued its leadership of the BSC MDL by managing and coordinating the ongoing activities of the MDL and assisting firms with cases in the MDL waves. The firm also contributed to the Coloplast MDL through document review, preparation of discovery motions, preparation of general expert reports, and the taking of depositions of corporate representatives. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 13.15932%, plus reimbursement of $583,616.22 in expenses.

**Evers Law Group.** The firm contributed to the common benefit of the Ethicon MDL. For the period of December 21, 2016, through December 30, 2020, the firm performed document review at the request of leadership in the Ethicon MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.14000%.

**Frankovitch, Anetakis, Simon, Decapio & Pearl, LLP.** Frankovitch, Anetakis, Simon, Decapio & Pearl partner Carl Frankovitch serves as Plaintiffs' Co-Liaison Counsel and is a member of the Plaintiffs' Steering Committee. Carl Frankovitch also served as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the

common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.34000%, plus reimbursement of $34,964.75 in expenses.

**Frees & Goss, PLLC.** For the period of December 21, 2016, through December 30, 2020, the firm seeks recovery only for instances where expenses were incurred but not yet charged or received during the prior period of review. These expenses were associated with time that was previously found to be compensable as common benefit, but invoices were not received until after the end of the prior review period. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs, the Fee Committee recommends reimbursement of $325,359.03 in expenses.

**Hail Law Office.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in the Coloplast MDL at the request of leadership. The firm primarily performed document review and additionally aided in preparation of a general expert report along with participation in *Daubert* briefing related to the general expert. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.77000%.

**Keith Miller Butler.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in its cases in federal courts for Ethicon cases. The time and expense submissions of the firm were for work performed in individual cases after the established cutoff time set forth by the Fee Committee. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends that the firm receive no allocation of common benefit funds.

**Kline & Specter, P.C.** Kline & Specter former partner Lee B. Balefsky is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed limited work in support of the Coloplast litigation. The firm held a position of leadership in the MDL but performed most of its work in the state courts of Pennsylvania. In the Philadelphia Mass Tort Program in Pennsylvania State Court, the firm assisted in obtaining several successful verdicts against Ethicon, although most of those verdicts came on products where Plaintiffs' verdicts were already obtained either in the MDL or in prior state courts. The firm acknowledges that much of the work product used in their state court trials was obtained from the MDL, and MDL attorneys – including leadership in the Ethicon MDL, BSC MDL and others –also participated in the work-up and trial of those cases. The firm was not an active participant in the overall strategy and decision-making of the PSC. The firm has ultimately performed good work in representing their individual clients in state court in Pennsylvania. The hours submitted and reviewed by the FCC were for work on individual cases in state court. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.00000%.

**The Lanier Law Firm.** Lanier Law Firm partner Rick Meadow is a member of the Plaintiffs'

Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit.  Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.17500%.

**The Law Offices of A. Craig Eiland.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in the development of the AMS MiniArc product litigation at the request of leadership.  The firm prepared expert reports and conducted depositions in support of the MiniArc case development. The firm also worked in the development of expert reports and conducting depositions in the Coloplast litigation. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.19400%, plus reimbursement of $14,994.96 in expenses.

**The Law Office of Adam D. Peavy.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in Coloplast MDL.  The firm performed document review, conducted the deposition of corporate representatives and aided in the preparation of general expert reports. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.37000%.

**Levin Simes, LLP.** For the period of December 21, 2016, through December 30, 2020, the firm continued its leadership role in the AMS MDL.  The firm prepared general expert reports, conducted depositions of AMS corporate witnesses and opposed *Daubert* motions filed against plaintiffs' expert witnesses. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.75000%, plus reimbursement of $85,162.70 in expenses.

**Lockridge Grindal Nauen.** Lockridge Grindal Nauen partner Yvonne Flaherty was appointed to the Plaintiffs' Steering Committee.  Yvonne Flaherty also served as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm contributed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation and assisted in other common benefit work and activities.  Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.34000%, plus reimbursement of $60,546.69 in expenses.

**Mazie Slater Katz & Freeman.** Mazie Slater Katz & Freeman contributed to the common benefit of the Bard and Ethicon MDLs.  For the period of December 21, 2016, through December 30, 2020, the firm performed good work in representing their individual clients in state court in New

Jersey. The firm was one of the first to bring TVM lawsuits and focused almost entirely upon litigation in New Jersey state court.  In pursuit of the New Jersey litigation, the firm undertook discovery, document review, trial preparation and trial.  Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 4.25000%, plus reimbursement of $81,000.00 in expenses.

**Meyers & Flowers, LLC.** Meyers & Flowers partner Pete Flowers is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit.  Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.06800%.

**The Monsour Law Firm.** Monsour Law Firm partner Douglas Monsour is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm participated in the development of the Coloplast litigation.  The firm prepared for and was lead in multiple expert depositions in the Coloplast MDL.  Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.04500%, plus reimbursement of $5,891.50 in expenses.

**Mostyn Law Firm P.C.** Former Mostyn Law Firm partner Steve Mostyn was a Co-lead in the Coloplast MDL and was a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm provided document review and other work in the Coloplast MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.60000%, plus reimbursement of $30,570.59 in expenses.

**Motley Rice, LLC.** Motley Rice, LLC played an active role in the state and federal litigation of transvaginal mesh from its inception.  Motley Rice partner Fred Thompson was appointed by Judge Goodwin Coordinating Co-Lead for all transvaginal mesh MDLs and as a member of the Plaintiffs' Steering Committee and Executive Committee.  Motley Rice partner Fidelma Fitzpatrick was appointed as Co-Lead Counsel for the AMS MDL and as a member of the Plaintiffs' Steering Committee. Motley Rice partner Joe Rice was appointed as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed significant work in the AMS and Ethicon MDLs through work with general experts, communications to firms regarding the MDL Wave process, organizing MDL experts to assist firms with wave cases, and providing updated expert reports and *Daubert* briefing in the wave process.  The firm also contributed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, materials provided by the firm, the firm's in-person presentation to the

Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 8.65932%, plus reimbursement of $176,626.47 in expenses.

**Mueller Law Firm.** Mueller Law Firm partner Mark Mueller is a member of the Plaintiffs' Steering Committee and was Co-Lead of the Coloplast MDL. For the period of December 21, 2016, through December 30, 2020, the firm had limited time submission relating to appearances in Court regarding the Coloplast MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.01800%, plus reimbursement of $2,809.75 in expenses.

**The Oliver Law Group, P.C.** Oliver Law Group partner Alyson Oliver is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.00600%.

**Perdue & Kidd.** Perdue & Kidd contributed to the common benefit of the Boston Scientific, Ethicon and Coloplast MDLs. For the period of December 21, 2016, through December 30, 2020, the firm assisted in general expert reports in the Boston Scientific and Ethicon MDLs. The firm also conducted expert depositions in the Coloplast MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.62900%, plus reimbursement of $14,220.75 in expenses.

**Potts Law Firm.** Potts Law Firm partner Derek Potts is a member of the Plaintiffs' Steering Committee, Executive Committee, and is a Co-Lead Plaintiff's Counsel in the Bard and Neomedic MDLs. For the period of December 21, 2016, through December 30, 2020, the firm continued to respond to questions as leadership in the MDL. The firm, at the direction of the MDL Court, acted as mediator for cases and successfully aided the resolution of individual cases. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.84000%, plus reimbursement $62,082.84 in expenses.

**Restaino Law, LLC.** The firm performed common benefit work in the Ethicon MDL. For the period of December 21, 2016, through December 30, 2020, the firm conducted the deposition of defendant's general experts and aided in the *Daubert* briefing regarding plaintiffs' experts in the Ethicon MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends

an allocation of 0.98700%.

**Salim Beasley, L.L.C.** Salim Beasley partner Robert Salim is a member of the Plaintiffs' Steering Committee and serves as Co-Lead for the Coloplast MDL. For the period of December 21, 2016, through December 30, 2020, the firm generally helped coordinate and oversee the development of the Covidien MDL. The firm conducted Coloplast discovery and briefing. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.50000%, plus reimbursement of $519,242.97 in expenses.

**The Sanders Firm.** Sanders Firm partner Victoria Maniatis is a member of Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm participated in development of cases in the Mullins consolidation in the Ethicon MDL. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.05270%.

**Schneider, Wallace, Cottrell, Konecky, LLP.** Schneider, Wallace, Cottrell, Konecky partner Amy Eskin started litigation against AMS before the creation of the MDL and was named Co-Lead of the AMS MDL upon its creation as well as a member of the Executive Committee and the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, Amy Eskin continued her leadership role in the AMS MDL. Ms. Eskin responded to questions from firms with cases placed in the MDL Waves, assigned coverage of depositions, and opposed *Daubert* motions filed against plaintiffs' expert witnesses. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.06900%.

**Schroeder Law Office.** Schroeder Law Office partner Karen H. Beyea-Schroeder is a member of the Plaintiffs' Steering Committee and Co-Lead of the Neomedic MDL For the period of December 21, 2016, through December 30, 2020, the firm continued its leadership role in the Neomedic MDL and also handled the privilege and redaction log in the Boston Scientific MDL at the request of leadership. Ms. Beyea-Schroeder's time in working with the Burnett Law Firm in Coloplast was considered as part of the award made to Burnett Law Firm. Based on a complete review of the time, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.11000%.

**Wagstaff & Cartmell, LLP.** Wagstaff & Cartmell partner Tom Cartmell was appointed as member of the Executive Committee, the Plaintiffs' Steering Committee and Co-Lead Counsel for the Ethicon litigation. Wagstaff & Cartmell partner Jeff Kuntz served as the leader of the Ethicon Expert and Bellwether Committees during the Ethicon MDL. Wagstaff & Cartmell partner Tom Cartmell was also appointed as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm contributed to the AMS, Coloplast and Ethicon MDLs. In the AMS MDL, the firm updated general expert reports for use

in the MDL Court's Wave process. In Coloplast, the firm conducted document review, preparation of expert reports and the conduct of depositions of Coloplast corporate representatives. In Ethicon, the firm continued to provide leadership support for plaintiffs in the MDL Court's Wave process. The firm updated expert reports, defended *Daubert* motions filed against plaintiffs' general experts and conducted depositions including the preparation of the Mullins consolidation. The firm also contributed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 13.15932%, plus reimbursement of $229,768.56 in expenses.

**Watts Guerra, LLP.** For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit. Based on a complete review of the time and expense records, materials provided by the firm, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.00800%.

**Wexler Wallace, LLP.** Wexler Wallace partner Ed Wallace is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm contributed to the common benefit in the AMS and Ethicon MDLs. In both the AMS and Ethicon MDLs, the firm performed work related to general expert defense including updated general expert reports, depositions and *Daubert* briefing. The firm also provided appellate briefing support for an MDL bellwether case whose verdict pre-dated the review period, and provided briefing support to another firm for its appellate case without fee interest. Based on a complete review of the time and expense records, materials provided by the firm, the firm's presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.97000%.

Thank you for your prompt attention to the matters addressed herein.

Very truly yours,

Henry G. Garrard, III
Chairperson

Renee Baggett

Yvonne M. Flaherty

Riley L. Burnett, Jr.

Carl N. Frankovitch

Thomas P. Cartmell

William H. McKee, Jr.

Clayton A. Clark

Joseph F. Rice

FCC's Final Written Recommendation

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| IN RE: C.R. BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL NO. 2187 |
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABIILITY LITIGATION | MDL No. 2325 |
| IN RE: BOSTON SCIENTIFIC CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2326 |
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2327 |
| IN RE: COLOPLAST CORP., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2387 |
| IN RE: COOK MEDICAL, INC, PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | MDL No. 2440 |
| IN RE NEOMEDIC PELVIC REPAIR SYSTEM PRODUCT LIABILITY LITIGATION | MDL No. 2511 |

*This Document Relates To All Cases*

## Declaration of Henry G. Garrard, III in Support of
## Final Written Recommendation of the Common Benefit Fee and Cost Committee
## Concerning the Allocation of Common Benefit Fees and the Reimbursement of Shared
## Expenses and Held Costs

On this day came the undersigned, Henry G. Garrard, III, who, pursuant to 18 U.S.C. § 1746, makes this declaration under penalty of perjury:

1. Never before in the history of MDL practice has the JPML sent multiple, large-scale product liability MDLs involving different products and manufacturers to a single MDL court for inter-MDL coordinated proceedings.

2. The pelvic mesh litigation coordinated before this Court ultimately grew to include more than 100,000 filed cases, comprising one of the largest mass tort litigations in history.

3. As explained in the Plaintiffs' Proposed Counsel Organizational Structure, which was submitted to the Court on March 17, 2012, the common medical, scientific and legal claims and theories, common defenses, and common experts, as well as the presence of numerous plaintiffs implanted with different defendants' products, called for a singular "cross-MDL" Plaintiffs' leadership structure.

4. The Proposed Counsel Organizational Structure was vetted and agreed upon by every attorney who was included in the proposal.

5. The Plaintiffs' lawyers involved in the litigation from the outset foresaw the onerous task that lay ahead and assembled a Plaintiffs' Steering Committee ("PSC") of 61 attorneys from law firms across the country, who were ultimately appointed and assigned by the Court the responsibility of marshaling resources and leading this sprawling litigation under a unified leadership structure.

6. In the time period applicable to the present Final Written Recommendation, Plaintiffs' leadership continued their prior work in moving the MDLs toward conclusion.

7.     MDL leadership continued to provide the support and materials associated with plaintiffs' expert witnesses so that cases placed in the MDL Court's wave process and ultimately those cases remanded for trial could satisfy the expert requirements.

8.     MDL leadership also continued to support firms in the wave process by identifying deposition transcripts, relevant documents in support of liability, and briefing materials for use by counsel in preparation of individual cases for trial.

9.     The development of the general liability case regarding the Coloplast products continued during the applicable time period including corporate depositions, document review, development of expert witnesses, *Daubert* and dispositive motion briefing, and depositions of defendant's expert witnesses.

10.    Continuing discovery and development was undertaken during the applicable time period with regard to the *Mullins* consolidation in the Ethicon MDL, the Bard Alyte product and the AMS MiniArc product.

11.    MDL leadership worked at the Court's direction to aid in the resolution of cases in an effort to ensure that those plaintiff's attorneys with limited numbers of cases received the full benefit of MDL leadership's knowledge and experience when negotiating the resolution of their cases.

12.    MDL leadership appeared in West Virginia to aid in the negotiation and resolution of individual cases without charge to any plaintiff.

13.    The FCC members devoted significant time to the review of time and expense submissions for the initial review period through December 20, 2016.

14.    FCC members along with members of their firms reviewed time and expense submissions, met to evaluate the merit of submissions, prepared materials for distribution

to firms and drafted pleadings in support of the Court's Order establishing the payment of common benefit funds including briefing to the Fourth Circuit Court of Appeals and the United States Supreme Court.

15.     In the prior period, ending December 20, 2016, ninety-four law firms submitted more than 900,000 hours of time for common benefit consideration, and the Court-appointed FCC recognized a total of 679,191.20 of those hours as being for common benefit.

16.     For the current period of December 21, 2016, through December 30, 2020, the FCC received submissions from thirty-seven firms totaling more than 138,000 hours, and the Court-appointed FCC recognized a total of 61,646.48 of those hours as being for common benefit.

17.     Over ninety-five percent of cases in these MDLs have reached resolution or otherwise been dismissed, which has resulted in approximately $525,000,000 in payments into the common benefit fund by Defendants.

18.     Approximately $490,000,000 has been distributed to firms pursuant to the percentages set forth in the Court's July 25, 2019, Allocation Order, including continuing quarterly distribution of seventy percent (70%) of funds received into the common benefit fund each calendar quarter since January of 2020.

19.     At present, there remains a fund of approximately $33,000,000 available for payment of common benefit time and expenses for the period of December 21, 2016, through December 30, 2020.

20.     On October 4, 2012, the Court entered its Pretrial Order Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit Issues.

21. In its Order, the Court set preliminary procedures for attorneys establishing standards for maintaining and submitting time and expenses for possible future consideration as common benefit and established the account to receive and disburse funds for the common benefit of the litigation.

22. The Court directed attorneys to submit time and expense records to the Court-appointed accountant on a periodic basis of every six weeks beginning November 1, 2012.

23. The Court's October 4, 2012, Order was approved by all members of the PSC and signed and submitted by all members of the Plaintiffs' Executive Committee.

24. All Participating Counsel are expressly bound by the terms of the Court's October 4, 2012, Order.

25. On October 26, 2020, the FCC held its first meeting, by telephone, for the purpose of performing the tasks required under the Court's Orders so as to evaluate the common benefit work performed by applicant firms for the period of December 21, 2016, through December 30, 2020.

26. The FCC held another call on November 2, 2020, to prepare and plan for the upcoming time and expense review process.

27. The FCC then worked with the Court-appointed accountants during November and December of 2020, in advance of the time submission for time and expense through December 30, 2020, in order to prepare for the delivery of materials to all firms seeking common benefit compensation.

28. Upon the deadline for the submission of time and expense for consideration through December 30, 2020, the FCC worked with the CPA to oversee the delivery and

compilation of time and expense spreadsheets to each firm seeking compensation on January 22, 2021.

29.   The CPA and the FCC returned to each applicant firm the time and expense documentation received by the CPA December 21, 2016, through December 30, 2020.

30.   Thereafter, each firm had sixty days in which to audit its time and confirm that the time and expense submitted was true, accurate, clear, and for the common benefit of the litigation.

31.   Once complete, each firm was to resubmit its time and expense along with an affidavit from a senior member of the firm attesting that the time and expenses submitted were for common benefit.

32.   The FCC received the audited time and expense from firms and accompanying affidavits in March of 2021.

33.   The FCC met telephonically on March 25, 2021, to plan the process of reviewing the time submissions received from applicant firms.

34.   The process of the Initial Review under the Protocol for submissions during the period of December 21, 2016, through December 30, 2020, began on March 30, 2020.

35.   The FCC's methodology in evaluating the submissions of applicant firms follows the Protocol and the Court's prior common benefit orders.

36.   The FCC's review of the time and expense submissions and accompanying affidavits was conducted in accordance with the fifteen items enumerated in Section B of the Protocol, the ten factors identified in Section C of the Protocol (which are the same as the items in Section B of the FCC Order), as well as the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).

37.    The FCC assigned each firm seeking payment of common benefit funds to a panel of attorneys who were familiar with the review process, having participated in the review of time and expense in the initial submission through December 20, 2016.

38.    These attorneys worked together to review every time and expense entry received from the applicant firms.

39.    In reviewing the time and expense submissions and affidavits, the reviewers were guided by the Protocol and the FCC Order in determining the firm's contribution to the common benefit of the overall litigation.

40.    The FCC continued to meet during the process of review to discuss and ensure the consistent application of the review for each applicant firm's submission.

41.    The FCC was assisted in its review process by certain other attorneys who were requested to assist the FCC pursuant to Section A of the FCC Order.

42.    Those attorneys were Amy Collins (Burnett Law Firm), Thomas Hollingsworth (Blasingame, Burch, Garrard & Ashley), Diane Watkins (Wagstaff & Cartmell), and Michael Moreland (Clark, Love & Hutson). These attorneys assisted the FCC in the preparation of materials for FCC meetings.

43.    Upon commencement of the Initial Review of the time submission by applicant firms, the FCC recognized that some firms diligently self-audited their time entries and submitted time for review that was substantially compliant with the instructions from the Court regarding hours that would be considered as contributing to the common benefit of the litigation.

44.     Other firms made little or no changes to their time submission during the Court-ordered self-audit process, which resulted in submissions for time that did not meet the Court's instructions.

45.     The elimination of time that clearly did not meet the Court's criteria for common benefit consideration, which should have been identified in the self-audit process, resulted in the FCC's recognition of a relatively lower percentage of submitted hours as common benefit for firms that failed to adequately self-audit. Conversely, firms that made a good-faith effort to review their time submission during the self-audit period had a higher percentage of submitted time recognized as contributing to the common benefit as a result of those firms' diligence.

46.     The process of reviewing the time and expense submissions made by firms continued through April of 2021, with the panel of reviewers meeting in Houston, Texas to perform the time and expense reviews on April 6, 7, and 8, 2021.

47.     The FCC met telephonically on April 15, 2021, to discuss ongoing reviews and ensure that all firms were receiving consistent evaluations pursuant to the Protocol.

48.     The FCC met again on May 18, 2021, in Houston, Texas, for the purpose of discussing those firms whose review had been completed by the panel of reviewers assigned the task of reviewing time submissions.

49.     The FCC met again by Zoom on May 27, 2021, June 1, 2021, and July 23, 2021, to finalize its discussion and analysis of firms seeking compensation for the period of December 21, 2016, through December 30, 2020.

50.     During these meetings, each firm was thoroughly discussed by the entire FCC.

51.   While the number of FCC meetings was significant, greater time was invested by FCC members between meetings.  FCC members routinely worked on matters in preparation for the next FCC meeting.

52.   During its meetings from May 18, 2021, through July 23, 2021, the FCC received detailed presentations about each firm seeking common benefit compensation.

53.   The work of the FCC during this period was not simply to determine the number of hours that might be considered compensable, but also (and more significantly to the FCC) the quality of those hours and the extent such time was of benefit to the litigation.

54.   As each firm was discussed, the FCC decided which time entries would (at that stage) be considered as common benefit, which time entries were deemed of no compensable value, and which entries required additional information in order for the FCC to properly evaluate the submission.

55.   Simultaneously, the FCC evaluated the nature of the legal work reflected in the time submissions.

56.   The FCC considered for each firm whether the work for which time was submitted was performed by attorneys or non-attorney staff, and the experience and seniority of the attorney performing work, as well as whether multiple lawyers or firm members were performing the same or similar tasks that could appropriately be handled by a single attorney.

57.   The FCC discussed the nature of the work and the role of the applicant firm as reflected in the time submissions, including, for example, whether the firm was engaged in document review, expert identification and preparation, written discovery, depositions, trials, briefing or appellate work, or settlement negotiation.

58.   With regard to the venue of cases, and in accordance with the Court's instruction in the FCC Protocol, the FCC considered whether trial work was performed within the MDLs or in various state courts, and the extent to which it contributed to the outcome of the litigation and benefited the MDL.

59.   In addressing trials, the FCC considered whether a trial was the first successful trial of a particular mesh product, whether the trial attorneys created common benefit materials and shared such materials with other plaintiffs' firms within the litigation without compensation (and at what point in time that material was shared), and whether the trial attorneys consulted with MDL leadership in case selection, trial preparation and trial strategy.

60.   Further, the FCC considered whether a firm participated in a lead role, a back-up role, or was simply an observer of the activity in the litigation.

61.   Despite repeated requests by the FCC, in some instances, the low quality of information delivered to the FCC by the applicant firm made it impossible for the FCC to identify any common benefit derived from the submitted time.

62.   The foregoing examples are not meant to be exhaustive but are meant to be illustrative of the attention given to each firm during the Initial Review.  Throughout the Initial Review, the FCC was mindful of the Court's instruction that "the over-arching guideline that the FCC must consider is the contribution of each common benefit attorney to the outcome of the litigation."

63.   The FCC received time entries totaling more than one hundred thirty-eight thousand (138,000) hours.

64.   The FCC reviewed every time entry from every firm in conducting its Initial Review.

65.     Where the FCC had questions requiring further evaluation of applicant firms, the FCC members continued their review and returned at subsequent meetings to respond.

66.     No applicant firm's time or expense was approved for distribution to the firm until the FCC unanimously approved the time or expense.

67.     On July 26, 2021, the FCC provided its Initial Review to the applicant firms.

68.     Each firm received a letter detailing the process utilized by the FCC along with five exhibits. Exhibit A identified those time entries where the FCC found that there was no basis for an award of compensation for the time. Exhibit B identified those time entries requiring more information from the applicant firm. Exhibit C identified the dates beyond which the FCC determined that time did not contribute to the common benefit of the litigation. Exhibit D identified those expenses sought for reimbursement which were allowed by the FCC as common benefit and those expenses which were disallowed by the FCC as common benefit.  Exhibit E set forth categories of expenses which applicant firms were to remove from their submission. A true and correct example of the letter sent to each firm is attached hereto as **Exhibit 1**.

69.     The letter to each firm instructed the applicant firm how and when to respond and also provided the reasons why time was placed on Exhibits A and B for that firm.

70.     Each letter was unique and tailored to the specific firm providing only those reasons that were applicable to the particular firm's time.

71.     Firms were to provide an affidavit in the format provided in the Protocol signed by a senior firm member setting forth the reasons, grounds and explanation for the Firm's entitlement to common benefit fees under the factors outlined in the FCC Order and in the FCC Protocol.

72. Firms were also given the opportunity to provide a response for each time entry that the firm believed was placed on Exhibit A or B in error.

73. Firms were also to provide a response for each expense entry that the firm believed was disallowed on Exhibit D in error.

74. For any firm that did not provide a complete response, the FCC contacted firms on September 2, 2021, requesting that the applicant firm complete its response.

75. After receipt of the responsive materials from the firms, the panel of attorneys working with the FCC once again reviewed each time and expense entry for which the applicant firm sought reimbursement, as well as the materials provided, in order to further evaluate the contribution made by each firm to the common benefit of the litigation.

76. The panel of reviewers met, in person, on September 27, 28, and 29, 2021, to review the materials provided by firms seeking compensation and to perform subsequent review of the time and expense submissions.

77. The review process continued during September and October of 2021.

78. The FCC met on November 4, 2021, in Atlanta Georgia.  During the meeting the FCC received presentations regarding the responses received from applicant firms.

79. The FCC discussed and decided on whether time submissions placed on Exhibits A and B delivered to the firms should be considered as contributing to the common benefit.

80. The FCC also discussed and decided on whether expense submissions marked as disallowed on Exhibit D delivered to the firms should be considered as reimbursable.

81. As discussed above, the FCC's focus during its review of responses of applicant firms was not directed toward a mechanical calculation of the numbers reflected in time and expense entries.  Rather, the FCC endeavored to analyze the benefit and value of the work

reflected in these submissions in light of each firm's role in the litigation and in accordance with the Court's directives set forth in the common benefit orders, based on the FCC's experience in the litigation and the materials and information submitted by each Firm.

82.   Specifically, the FCC considered the final time and expense submissions and materials provided by each firm in light of the items enumerated in Section B of the Protocol, the factors enumerated in Section C of the Protocol, and the factors set forth in *Barber v. Kimbrell's, Inc.*

83.   On November 12, 2021, the FCC delivered to each applicant firm the results of the FCC's evaluation of the firm's materials in response to the Initial Review.  A true and correct example of the letter sent to each firm is attached hereto as **Exhibit 2**.

84.   At that time, the FCC notified each firm of the hours and expenses that the FCC found to be eligible for consideration as common benefit.

85.   In accordance with Section D of the Protocol, each firm was given notice of the opportunity to be heard by the FCC.

86.   The letter provided to each firm was accompanied by a revised version of Exhibits A, B, and D reflecting the FCC's decision to allow or disallow each entry based upon the information provided by the applicant firm in its final submission of time and expense.

87.   The letter provided instructions on how to request an opportunity to be heard by the FCC.

88.   Of the thirty-seven firms whose time was reviewed, four elected to be heard by the FCC.

89.   The FCC conducted meetings with representatives of each firm who made a request.

90.   The FCC conducted meetings in Atlanta, Georgia on December 8, 2021.

91.    In accordance with Section C. of the FCC Order, each firm was permitted to "present the reasons, grounds, and explanation for their entitlement to common benefit," and was generally allowed to be heard by and to discuss with the FCC any matter of its choosing during these meetings.

92.    The FCC received and considered all of the oral presentations of all applicant firms who availed themselves of this opportunity.

93.    Based on the presentations of firms, the FCC reviewed, and where appropriate, revised the hours or expenses considered for common benefit.

94.    Additionally, the FCC met and discussed the presentation of firms in light of the value that each firm contributed to the litigation.

95.    At the conclusion of the meetings with firms, the FCC finalized the number of hours and amount of expenses for its preliminary recommendation.

96.    The FCC met on January 19, 2022, via Zoom for the purpose of finalizing its allocation of funds available for compensation of common benefit.

97.    In so doing, the FCC relied upon its detailed knowledge and understanding of the work performed throughout the process of thoroughly reviewing each firm's time and expense submissions, affidavits, additional written materials, and meetings with firms.

98.    The FCC also relied upon the collective personal knowledge and experience of its members in this litigation and the input received from other leadership within the litigation.

99.    The process of allocating the potential fund was not a new process for the FCC, rather it was the continuation of the process that began with the entry of the FCC Order.

100.   The FCC met again on March 3, 2022, via Zoom to complete its discussion of the allocation of potential funds for common benefit awards.

101.   At the request of the FCC, the Chairperson proposed a series of awards utilizing a percentage of the funds for each of the applicant firms.

102.   The FCC then addressed each of the firms individually and discussed whether the proposed percentage award was appropriate.

103.   The percentage value assigned to each firm was then adjusted to reflect the decision of the FCC for each firm.

104.   Some adjustments were upwards, some downwards and some remained unchanged.

105.   In discussing an appropriate percentage for the applicant firms, the FCC was again guided by their experience and familiarity with the litigation, the nature and value of the work performed, the FCC Order and the FCC Protocol with focus being given to the items enumerated in Section C of the Protocol and the *Barber* factors.

106.   Only FCC members participated in the discussion and decision regarding the allocation of common benefit funds.  Attorneys who assisted the FCC in its review process did not participate in the decision by the FCC regarding allocation of funds to applicant firms.

107.   The FCC did not request any information regarding billing rates utilized by applicant firms.

108.   The FCC did not apply a formulaic or grid approach whereby an applicant's recommended common benefit award was the sum of points or the product of an "hours x rate x multiplier" equation.

109.    The FCC observed that the hours submitted by firms varied widely in quality, with some applicants submitting significant numbers of hours of no common benefit, while others submitted fewer hours that provided substantial benefit to the litigation.

110.    The FCC followed its directive under the Protocol to focus on (and reward) firms based on their substantive contributions rather than the bulk submission of hours.

111.    Upon the completion of the allocation process, the FCC was unanimous in its agreement that the process used throughout the review of time and expense was performed in accordance with the Court's Orders and the applicable legal authority, and the FCC was unanimous in its agreement to the amounts allocated to each firm in the Preliminary Written Recommendation.

112.    The FCC met and collectively approved the materials for distribution of the FCC's Preliminary Written Recommendation during its meeting on March 3, 2022.

113.    The FCC reviewed the information being delivered to each applicant firm and discussed the Protocol with regard to the Preliminary Written Recommendation, the opportunity for objections thereto and the Final Written Recommendation.

114.    The FCC's Preliminary Written Recommendation was delivered to all applicant firms on March 4, 2022. A true and correct example of the letter sent to each firm is attached hereto as **Exhibit 3**.

115.    Applicant firms were permitted to make any objection to the Preliminary Written Recommendation on or before March 18, 2022.

116.    Of the thirty-seven firms receiving the Preliminary Written Recommendation, the FCC received objections from five firms.

117. The FCC considered the written objections of firms and met on March 30, 2022, via Zoom to deliberate and discuss the objections.

118. The FCC made adjustments to some firms' allocations based upon the objections. The FCC communicated the adjustments to objecting firms that received a modified award. Two objecting firms accepted the adjusted allocation and agreed to the modification. One firm received an adjusted allocation but did not accept the modification.

119. The FCC then continued to confer regarding objections via Zoom, and on May 5, 2022, the FCC met to approve the form and content of this Final Written Recommendation.

120. Of the five objections two have now been resolved.

121. The FCC's Final Written Recommendation includes the FCC's consideration of the objections made to the Preliminary Written Recommendation.  In response to those objections, the FCC decided to modify some of the awards to firms seeking common benefit funds.

122. After due consideration of the remaining objections, the FCC unanimously agreed to its proposed allocation of funds for compensation of common benefit to each applicant firm as set forth in its Final Written Recommendation.

123. The FCC was well-informed of the substantive contributions made by each applicant firm and endeavored to appropriately recognize those contributions.

124. The FCC exhaustively reviewed all of the facts and information provided by common benefit applicant firms, applied the principles and complied with the directives established in the Court's protocol, and relied upon its experience and familiarity with the litigation and with the facts, providing multiple opportunities to provide and receive input by common benefit applicant firms in writing and in person.

125. The FCC, through carrying out the process in the Protocol, allowed firms seeking payment for common benefit work to participate in the process of evaluation and provide additional information to the FCC including: (1) allowing firms to self-audit their time prior to consideration by the FCC; (2) allowing firms to respond to the comments delivered as a result of the FCC's initial review; (3) allowing firms to appear for an in-person opportunity to be heard; (4) allowing firms to provide written objections from the FCC's preliminary written recommendation; and (5) allowing firms to provide written objections to the FCC's final written recommendation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 18, 2022.

Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, P.C.
440 College Avenue
P.O. Box 832
Athens, Georgia 30603
706-354-4000
706-549-3545 fax
hgarrard@bbga.com

# Exhibit 1

# BBGA

## BLASINGAME · BURCH · GARRARD & ASHLEY, P.C.
### Attorneys at Law

W. Seaborn Ashley
1947–2001

J. Ralph Beaird
1925–2014

E. Davison Burch
of counsel

Leanna B. Pittard
of counsel

Gary B. Blasingame

Henry G. Garrard III

Andrew J. Hill III

Thomas H. Rogers Jr.

Michael A. Morris

James B. Matthews III

Richard W. Schmidt

Evan W. Jones

George W. Brown III

David A. Dismuke

Molly K. Talley

Josh B. Wages

Thomas F. Hollingsworth III

Alvin L. Bridges

Lee S. Atkinson

Michael Ruppersburg

Patrick H. Garrard

Sara E. Schramm

Thomas J. Jeffords

Haley C. Robison

P.O. Box 832
Athens, Georgia 30603
440 College Avenue, Suite 320
Athens, GA 30601
Phone 706.354.4000
Fax 706.353.0673

1021 Parkside Commons
Suite 104
Greensboro, GA 30642
Phone 706.453.7139
Fax 706.453.7842

PLEASE REPLY TO
ATHENS ADDRESS

Henry G. Garrard, III
hgarrard@bbga.com

***Sent Via E-Mail***
RECIPIENT FIRM CONTACT
RECIPIENT FIRM NAME
E-MAIL ADDRESS

RE:    Transvaginal Mesh MDL Common Benefit Fee and Cost Committee
          Initial Review of Fee Submission

Dear RECIPIENT:

I am writing to you on behalf of the Common Benefit Fee and Cost Committee appointed by the Honorable Joseph R. Goodwin with regard to MDL Nos. 2187, 2325, 2326, 2327, 2387, 2440, and 2511 (the "FCC"). The MDL Court previously entered its Order awarding five percent of the gross value of all resolved cases for the purpose of payment of common benefit fees and expenses, and the Court Ordered that funds be distributed to firms for common benefit fees and expenses incurred through December 21, 2016. Payments have been made to firms in accordance with the Court's Orders. In accordance with the Court's instructions, the FCC is now in the process of reviewing submissions from firms seeking reimbursement of professional time and expense associated with work that was to the common benefit of the MDL litigation in accordance with the Fee Committee Protocol established by the Court for the period from December 22, 2016 through December 30, 2020.The Court's July 25, 2019, Order required that thirty percent (30%) of payments received by the Common Benefit Fund since July 25, 2019, be set aside to pay such time and expenses deemed to be eligible as common benefit for the period after December 21, 2016. At this time, the FCC has completed its Initial Review of your fee and expense submissions.

There were approximately 140,000 hours and $7 million in expenses submitted to the FCC for review for the period of December 22, 2016 through December 30, 2020. The FCC has carefully reviewed each time and expense submission and has met to discuss the contributions made by each firm to the MDL common benefit. Where warranted, the FCC has consulted with plaintiffs' MDL leadership regarding the contributions made by each firm to the MDL common benefit. All time and expense entries have been evaluated by the FCC under the criteria as set forth in the Fee Committee Protocol and the Orders of the Court. The time and expenses submitted by the firms who have a member on the FCC have been evaluated under the same protocol, rules and criteria. **Under the rules of the FCC, individual members of the committee cannot discuss your submission with you.**

You will have the opportunity, if you desire, to discuss any issues you have in accordance with the Fee Committee Protocol. You must submit a response to the FCC by affidavit, in accordance with the terms of the Court's Fee Protocol Order.

Consistent with the Court's Orders regarding common benefit – as well as applicable case law – the number of hours expended by a firm is simply one of numerous factors guiding the FCC's impending recommendations. As you are all aware, the Court has outlined many criteria to apply in analyzing the overall contributions of firms and lawyers. Hours claimed are a factor but overall contribution in accordance with the court protocol are very important and significant.

As an initial matter, you submitted XXXX hours to be considered as common benefit time. After careful review, the FCC has determined that certain hours that you submitted were not for the common benefit. The FCC's Initial Review has determined that XXXX hours of that total were not for the joint and common benefit of plaintiffs and claimants whose claims have been treated by the MDL Court as part of the MDL proceedings. *See,* Exhibit A attached hereto. The reasons for the FCC's reduction of these hours include:

1. INDIVIDUALIZED EXPLANATIONS WERE PROVIDED FOR PLACEMENT OF TIME ENTRIES ON EXHIBIT A.

If you have an issue with these reductions by the FCC, then include in your final Affidavit reasons explaining why you should receive reimbursement from the common benefit fund for those items described above. In providing your explanation, you should address why the time "deemed by the FCC not to be 'for the joint and common benefit of plaintiffs and claimants whose claims have been treated by this Court as part of these proceedings'" should nevertheless be compensated. *See,* Fee Protocol Order § B, p. 3.

Additionally, the FCC also reviewed your time submission to identify potential entries where the FCC had further questions regarding the time submission. The FCC identified XXXX of your time submission as requiring further explanatory information in order to reach its initial review decision. Without additional information from you the FCC believes these hours should not be recognized as common benefit or should be reduced. *See,* Exhibit B attached hereto. The FCC identified the following issues upon its completion of its initial review of your time:

1. INDIVIDUALIZED EXPLANATIONS WERE PROVIDED FOR PLACEMENT OF TIME ENTRIES ON EXHIBIT B.

Your Affidavit "shall set forth the reasons, grounds and explanation for the Firm's entitlement to common benefit fees," for those categories of time identified immediately above.

The FCC, as a policy, believes that time submissions of fifteen hours or more in a day are *per se* excessive. Additionally, the FCC looked at many tasks where the submitted time is believed to be excessive in relation to the task. The time that the FCC included on Exhibit A indicates that in the judgment of the FCC and under the Court's Orders that time was not expended for the common benefit of the claimants in the pelvic mesh MDLs. The FCC, as a further policy, believes that all time submitted for law clerks was not of value to the common benefit of the claimants in the pelvic

mesh MDLs. There are also date ranges in which the FCC anticipates compensable time will occur. Within the exhibits to this letter is a sheet identifying the creation date for each MDL and the end date for common benefit work for each MDL. *See* Exhibit C attached hereto. Time submission outside of these date ranges will be evaluated with close scrutiny regarding whether common benefit was derived from those entries. As a general proposition, the Committee does not believe such time is compensable.

The FCC, in accordance with the Court's Orders, has established criteria for the evaluation of expense submissions. The FCC has reviewed your expense submission and identifies a total of $XXXXX in expenses for potential reimbursement as compensable Common Benefit expenses. *See*, Exhibit D. The FCC determined that certain categories of expense were not expended for the common benefit of the claimants in the pelvic mesh MDL's. Within the exhibits to this letter is a sheet identifying those categories of expense that are NOT of common benefit. *See* Exhibit E attached hereto. Generally, the FCC is not recognizing as Common Benefit expenses incurred in individual cases nor expenses identified on Exhibit E to this letter. The approach to what will be recognized as common benefit expense is being applied to all firms.

**Your final submission should not include requests for reimbursement of expenses identified in the attached Exhibit E. Additionally, when time has not been allowed as set forth in Exhibit A, expenses related to that time should be removed.**

The FCC membership is familiar with the challenges associated with trial preparation and is aware of the operation of a modern law practice. In an effort to address instances of significant duplication of time entries by multiple persons on the same date, the FCC has allowed two persons from a law firm to bill while not accepting any duplicative entries by greater than two persons per firm. This was done as an accommodation to firms. There are many instances where multiple people billed for the same task such as "receipt and review" of a document. This is not allowable under the Court's Protocol.

In accordance with the Court's Orders, your firm has thirty (30) days from the date of this letter in which to review the information accompanying this letter and submit your firm's final affidavit for review. The process for completing your response is as follows:

1. In the spreadsheets delivered as Exhibits A and B with this letter, a column has been added under the heading "Comments From Requesting Firm". Please add any information or explanation you deem significant for the FCC to review in making its final evaluation of the time submission. The information provided within this column cannot exceed 75 characters within any particular cell. This response will be considered your final time submission by the FCC.

2. In the spreadsheet delivered as Exhibit D with this letter, a column has been added under the heading "Comments From Requesting Firm". Please add any information or explanation you deem significant for the FCC to review in making its final evaluation of the expense submission. The information provided within this column cannot exceed 75 characters within any particular cell. This response will be considered your final expense submission by the FCC.

3. Prepare the affidavit set forth under the Fee Committee Protocol in conformity with Exhibit 4 set forth in the Protocol Order including your response to the issues identified herein.

4. Deliver any comments to Exhibits A, B and D, and the affidavit to me as Chairman and to the accountant, John Jenkins, within thirty (30) days of receipt of this letter. No other submissions will be accepted by the FCC for review. Only the timely delivery of these materials will be considered by the FCC.

As a reminder for firms claiming less than 20,000 hours, you are limited to an affidavit of twenty (20) pages, and if you are claiming over 20,000 hours, the limit is twenty-five (25) pages. The process identified above gives you the opportunity to provide comment on any time and expense identified by the FCC as being not for the common benefit. Completion of the process constitutes the delivery of your final time and expense in accordance with the Fee Committee Protocol.

Upon timely submission of the required materials, you may request an in-person meeting between a representative of your firm and the FCC in which there will be an opportunity to be heard on all matters concerning the final submission of time and expenses by your firm. Should you choose to do so, you will be expected to present on issues identified by the FCC regarding the compensability of the time and expenses submitted by your firm. Please be aware that as a result of any meeting with the FCC, the amount of time and expense found to be for the common benefit could be increased or reduced for your firm. Additional information on dates and times will be circulated after receipt of responses to the Initial Review. If you agree with the FCC's review of your time, you will not need to schedule an in-person meeting.

After completion of those meetings, the FCC will deliberate and provide its preliminary written recommendation to you. In accordance with the Fee Committee Protocol the FCC, in considering any fee award, will give appropriate consideration to the experience, talent, and contribution made by any eligible attorney or law firm submitting an application for reimbursement of costs and apportionment of attorneys' fees from the MDL Fund for work performed for common benefit. The FCC will also give appropriate consideration to the time and effort expended and the type, necessity, and value of the particular legal services rendered. In making its recommendations to the Court, the over-arching guideline that the FCC will consider is the contribution of each common benefit attorney to the outcome of the litigation. **The FCC's task is not to simply apply an hourly rate to approved hours.** In making its preliminary recommendation for payments to firms seeking compensation, the time and expense submitted will be a component, but there are other factors that will be considered in accordance with the Court's Orders regarding reimbursement for common benefit work, as well as applicable case law.

Thank you for your prompt attention to the matters addressed herein.

Very truly yours,

_____
Henry G. Garrard, III
Chairperson

_____
Renee Baggett

_____
Riley L. Burnett, Jr.

_____
Thomas P. Cartmell

_____
Clayton A. Clark

_____
Yvonne M. Flaherty

_____
Carl N. Frankovitch

_____
William H. McKee, Jr.

_____
Joseph F. Rice

Exhibit C

| START DATES - COMMON BENEFIT WORK | | |
|---|---|---|
| **MDL** | **Creation Date** | **FCC Cut-Off Date** |
| C.R. Bard - MDL No. 2187 | October 12, 2010 | September 1, 2015 |
| AMS - MDL No. 2325 | February 7, 2012 | October 2, 2014 |
| Boston Scientific - MDL No. 2326 | February 7, 2012 | January 1, 2016 |
| Ethicon - MDL No. 2327 | February 7, 2012 | January 1, 2017 |
| Coloplast - MDL No. 2387 | August 6, 2012 | June 16, 2014 |
| Cook - MDL No. 2440 | June 11, 2013 | June 22, 2016 |
| Neomedic - MDL No. 2511 | February 18, 2014 | November 30, 2015 |

Exhibit E

## **Categories of Expense**

## **Not for the Joint and Common Benefit of Plaintiffs and Claimants**

1. Plaintiff and spouse travel expenses for deposition

2. Plaintiff and spouse deposition costs - Transcript/Court reporter

3. Medical records costs

4. Court filing fees

5. Treating physician expenses – Unless during trial

6. Other individual specific case expenses

    a. Damages only witness expenses

    b. Plaintiffs' family members travel expenses

    c. Plaintiff specific support witness expenses

    d. Independent Medical Examination client expenses

    e. Medical summary service expenses

    f. Storage of pathology expenses

7. Expenses of observing filings – PACER / FileServe / LEXIS

    a. Unless you were in leadership – Leads/Co-Leads

8. Legal research costs – Westlaw / Lexis / Research Costs

    a. Unless you were in leadership – Leads / Co-Leads / Specifically assigned a research project by a Lead or Co-Lead

9. Case specific experts unless deemed by leadership to have been for the Common Benefit

10. Observation of Trial – Except for Leads / Co-Leads

11. Non-Federal MDL Assessments

# Exhibit 2



**BB** **BLASINGAME · BURCH · GARRARD & ASHLEY,** P.C.
**GA** Attorneys at Law

W. SEABORN ASHLEY
1947–2001

J. RALPH BEAIRD
1925–2014

GARY B. BLASINGAME

E. DAVISON BURCH

THOMAS H. ROGERS JR.

MICHAEL A. MORRIS

*Of counsel*

HENRY G. GARRARD III

ANDREW J. HILL III

JAMES B. MATTHEWS III

RICHARD W. SCHMIDT

EVAN W. JONES

GEORGE W. BROWN III

DAVID A. DISMUKE

MOLLY K. TALLEY

JOSH B. WAGES

ROBERT S. HUESTIS

THOMAS F. HOLLINGSWORTH III

ALVIN L. BRIDGES

SARA E. SCHRAMM

LEE S. ATKINSON

MICHAEL RUPPERSBURG

THOMAS J. JEFFORDS

LEANNA B. PITTARD

CHARLES W. RUFFIN

ALEXANDRA K. HUGHES

AMY S. BEMENT

W. BLAKE OGDEN

CAROLINE J. HARVEY

TYLER C. MATHIS

Henry G. Garrard, III
hgarrard@bbga.com

***Sent Via E-Mail***
RECIPIENT FIRM CONTACT
RECIPIENT FIRM
E-MAIL ADDRESS

RE:     Transvaginal Mesh MDL Common Benefit Fee and Cost Committee

Dear Counsel:

I am writing to you on behalf of the Common Benefit Fee and Cost Committee appointed by the Honorable Joseph R. Goodwin with regard to MDL Nos. 2187, 2325, 2326, 2327, 2387, 2440, and 2511 (the "FCC"). At this time, the FCC has completed its Initial Review of your fee and expense submissions for the period of December 22, 2016, through December 30, 2020. Further, the FCC received your final time and expense submission as accompanied by your affidavit in accordance with the Protocol established by the Court.

At the time the FCC delivered its initial review, your firm submitted XXXX hours of time for consideration as common benefit. The FCC's initial review identified XXXX hours on Exhibit A as not being common benefit, and XXXX hours on Exhibit B as having questions regarding common benefit at that time.

After review and consideration of your Affidavit and revisions or comments in Exhibits A and B delivered by your firm, the FCC has determined that XXXX hours identified on Exhibit A and XXXX hours on Exhibit B will be eligible for consideration as common benefit, thereby increasing your hours for consideration by the FCC as common benefit by a total of XXXX hours. **The FCC, after its review, now identifies a total of XXXX hours for consideration as common benefit time.** Your Exhibit A and B reflecting those hours eligible for consideration after the FCC considered your input are included herewith. Please understand that the number of hours under consideration as common benefit is only one part of the evaluation process in regard to an award ultimately recommended to the Court. In the Fee Committee Protocol there are multiple other factors the FCC is obligated to consider. Your Affidavit is helpful to the FCC in that regard.

PLEASE REPLY TO
ATHENS ADDRESS

ATHENS
440 College Avenue
Suite 320
Athens, GA 30601
Phone 706.354.4000
Fax 706.353.0673

GREENSBORO
1021 Parkside Commons
Suite 104
Greensboro, GA 30642
Phone 706.453.7139
Fax 706.453.7842

ATLANTA
1201 W. Peachtree Street
Suite 2313
Atlanta, GA 30309
Phone 205.414.7009

BIRMINGHAM
2100 Southbridge Parkway
Suite 650
Birmingham, AL 35209
Phone 205.414.7009

Additionally, your firm submitted $XXXXX in out-of-pocket expenses for consideration as common benefit. The FCC's initial review identified $XXXXX in expenses for potential reimbursement as compensable Common Benefit expenses as reflected in Exhibit D delivered to you.

After review and consideration of your Affidavit and revisions or comments in Exhibit D delivered by your firm, the FCC has determined that $XXXXX identified on Exhibit D will be eligible for consideration as common benefit. **The FCC, after its review, now identifies a total of $XXXXX for consideration as common benefit expense.** Your Exhibit D reflecting those out-of-pocket expenses eligible for consideration after the FCC considered your input are included herewith.

Generally, the FCC is not recognizing as Common Benefit, expenses incurred in individual cases nor expenses identified on Exhibit E to the letter of July 26, 2021, sent to you. Individual case expenses, including Wave cases, in normal practice are charged to the individual case at settlement. The approach to what will be recognized as common benefit expense is being applied to all firms.

**If you do not wish to further challenge the FCC's findings with regard to your hours and expenses set forth in the preceding paragraphs as recognized by the FCC as common benefit, you need take no further action.  In accordance with the Fee Committee Protocol, if you wish to be heard by the FCC on the number of hours and the amount of expense to be considered by the FCC you must notify the FCC on or before Friday, November 19, 2021, via email to the FCC Chairperson Henry Garrard at hgarrard@bbga.com.** Upon timely notice to the FCC, you will be contacted regarding the timing of your meeting with the FCC. The FCC anticipates that your meeting with the FCC will take place, in person, in Atlanta, Georgia on December 8th or December 9th.

Thank you for your prompt attention to the matters addressed herein.

Very truly yours,

Henry G. Garrard, III
Chairperson

Renee Baggett

Riley L. Burnett, Jr.

Thomas P. Cartmell

Clayton A. Clark

Yvonne M. Flaherty

Carl N. Frankovitch

William H. McKee, Jr.

Joseph F. Rice

# Exhibit 3



BLASINGAME · BURCH · GARRARD & ASHLEY, P.C.
Attorneys at Law

W. SEABORN ASHLEY
1947–2001

J. RALPH BEAIRD
1925–2014

GARY B. BLASINGAME
E. DAVISON BURCH
THOMAS H. ROGERS JR.
MICHAEL A. MORRIS
*Of counsel*

HENRY G. GARRARD III
ANDREW J. HILL III
JAMES B. MATTHEWS III
RICHARD W. SCHMIDT
EVAN W. JONES
GEORGE W. BROWN III
DAVID A. DISMUKE
MOLLY K. TALLEY
JOSH B. WAGES
ROBERT S. HUESTIS
THOMAS F. HOLLINGSWORTH III
ALVIN L. BRIDGES
SARA E. SCHRAMM
LEE S. ATKINSON
MICHAEL RUPPERSBURG
LEANNA B. PITTARD
THOMAS J. JEFFORDS
CHARLES W. RUFFIN
ALEXANDRA K. HUGHES
AMY S. BEMENT
W. BLAKE OGDEN
TYLER C. MATHIS

Henry G. Garrard, III
hgarrard@bbga.com

March 4, 2022

**_Sent Via E-Mail_**
RECIPIENT FIRM CONTACT
RECIPIENT FIRM
E-MAIL ADDRESS

RE:     Transvaginal Mesh MDL Common Benefit Fee and Cost Committee
        Preliminary Written Recommendation


Dear Counsel:

We are writing to you on behalf of the Common Benefit Fee and Cost Committee appointed by the Honorable Joseph R. Goodwin with regard to MDL Nos. 2187, 2325, 2326, 2327, 2387, 2440, and 2511 (the "FCC").  At this time, the FCC has completed its Initial Review of your fee submissions and your final time and expense submission as accompanied by your affidavit in accordance with the Fee Committee Protocol established by the Court. For those firms who sought an opportunity to be heard regarding common benefit fees and expenses, those meetings have been completed. There were approximately 120,000 hours submitted to the FCC for review.  The FCC carefully reviewed each submission and, where necessary, met with certain MDL co-leads to discuss the contributions made by firms to the MDL common benefit. For those firms that did not object to the hours and expense as delivered to you, the FCC deems that you have no objection regarding your hours or expenses for consideration.

The FCC now issues its Preliminary Written Recommendation with regard to the allocation of fees and expenses. The FCC currently recommends that your firm receive consideration of XXXXX% of the funds withheld pursuant to the prior Orders of the Court.  Additionally, the FCC currently recommends that your firm receive $XXXXX in reimbursement for held expenses that were for the common benefit of MDL claimants. Currently we believe $30,000,000.00 will be available for payment of common benefit contributions at the time of the distribution. The FCC also anticipates an additional amount of approximately $2,650,000.00 will be paid for the reimbursement of held costs. The recommended percentage (identified above) will be multiplied by the total amount available pursuant to the Court's Allocation Order (30% of all common benefit funds received since July 25, 2019) less any amount paid for recognized expenses.

PLEASE REPLY TO
ATHENS ADDRESS

ATHENS
440 College Avenue
Suite 320
Athens, GA 30601
Phone 706.354.4000
Fax 706.353.0673

GREENSBORO
1021 Parkside Commons
Suite 104
Greensboro, GA 30642
Phone 706.453.7139
Fax 706.453.7842

ATLANTA
1201 W. Peachtree Street
Suite 2313
Atlanta, GA  30309
Phone 404.795.5087

BIRMINGHAM
2100 Southbridge Parkway
Suite 650
Birmingham, AL  35209
Phone 205.414.7009

The amounts discussed herein are the FCC's preliminary recommendation and are subject to change prior to the submission of the FCC's final written recommendation to the external review specialist, The Honorable Dan Stack.  Please note that all amounts are proposed and are subject to the consideration and final decision of the MDL Court. The FCC anticipates that there will be subsequent distributions in the future. Pursuant to the MDL Court's July 25, 2019, Allocation Order, 70% of any future funds received will be distributed by the Court in accordance with the allocations by the Court made in the Allocation Order. In addition, the FCC anticipates that it will request that 30% of any future funds be paid in accordance with the percentages identified in the FCC's Final Written Recommendation. The FCC intends to recommend to the Court that these recommended percentages be applied in the future against further funds withheld pursuant to the Allocation Order.

Each firm is receiving the basis for its allocation in accordance with the Fee Committee Protocol. Further, in accordance with the Fee Committee Protocol, attached to this letter is the explanation of the basis of the allocation for every firm seeking compensation for common benefit.  In making its Preliminary Written Recommendation, the FCC considered the factors set forth in the Orders regarding common benefit, including Section B (Criteria for Common Benefit Applications) of the Court's Order establishing common benefit compensation criteria for each of the firms seeking compensation.  The FCC previously delivered to you those hours and expenses that the FCC identified as being disallowed for purposes of consideration for compensation through its delivery of Exhibits A, B and expenses through its delivery of Exhibit D. The number of hours under consideration as common benefit was only one part of the evaluation process in regard to the FCC's Preliminary Written Recommendation. Based on the requirements of the Fee Committee Protocol, the FCC evaluated each firm using the same criteria and exercised its discretion in evaluating the degree to which the work and expense incurred by each firm furthered the common benefit of the litigation. To the extent a firm requested an opportunity to be heard by the FCC, the FCC has considered the information presented by firms and has incorporated its deliberations and decisions into its Preliminary Written Recommendation.  Throughout its evaluation, the FCC was primarily focused on evaluating the contribution of each common benefit attorney to the outcome of the litigation.

**You did not request an opportunity to be heard previously. If you accept the FCC's Preliminary Written Recommendation, you need take no further action.  In accordance with the Fee Committee Protocol, if you wish to object to the preliminary written recommendation, you must notify the FCC on or before March 18, 2022, via email to the FCC Chairperson Henry Garrard at <u>hgarrard@bbga.com</u>.** Any objection is limited to ten (10) pages. Upon timely notice to the FCC, your objection will be considered by the FCC prior to the issuance of the final written recommendation by the FCC.

Thank you for your prompt attention to the matters addressed herein.

Very truly yours,

Henry G. Garrard, III
Chairperson

Renee Baggett

Yvonne M. Flaherty

Riley L. Burnett, Jr.

Carl N. Frankovitch

Thomas P. Cartmell

William H. McKee, Jr.

Clayton A. Clark

Joseph F. Rice

**Please note that the description of your firm's activities below identifies only those activities for the time period of December 21, 2016, through December 30, 2020. The FCC's previous recommendations included descriptions of activities prior to the current period of review. The FCC adopts those prior descriptions without restating them herein.**

**Anderson Law Office.** Anderson Law Office partner Ben Anderson is a member of the Plaintiffs' Steering Committee and served as Co-Lead of the Cook MDL. For the period of December 21, 2016, through December 30, 2020, the firm aided leadership in the Ethicon MDL in preparing and updating general expert reports associated with the MDL Court's wave process and the Mullins consolidation. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.24700%, plus reimbursement of $8,238.77 in expenses.

**Andrus Wagstaff.** Andrus Wagstaff partner Amy Wagstaff is a member of the Plaintiffs' Steering Committee, was appointed to serve as Co-Lead Counsel for the Boston Scientific MDL, and was appointed as a member of the Executive Committee. For the period of December 21, 2016, through December 30, 2020, the firm aided leadership in the Ethicon MDL in deposition preparation, depositions and Daubert motion practice involving general experts in the Mullins consolidation. As Co-Lead Counsel, Ms. Wagstaff also administered BSC cases moving forward in the MDL Court's wave process. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.888000%, plus reimbursement of $29,671.75 in expenses.

**Aylstock, Witkin, Kries & Overholtz, PLLC.** Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO") was an early participant in the TVM litigation. AWKO began its work in TVM litigation in New Jersey as part of the New Jersey Consolidation. Upon formation of the Federal MDL, AWKO partner Bryan Aylstock was assigned as one of the three Coordinating Co-Leads in the overall TVM MDLs, was a member of the Executive Committee and the Plaintiffs' Steering Committee; and AWKO partner Renee Baggett was assigned to a Co-Lead position in the Ethicon MDL and is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the AWKO worked to coordinate the efforts of plaintiffs' counsel and provided information to plaintiffs' counsel regarding developments in the litigation across multiple MDLs. The firm also worked to conduct discovery in the Coloplast MDL under the Hague Convention. AWKO partner Renee Baggett also served as a member of the Common Benefit Fee and Cost Committee in performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, the Fee Affidavit, the firm's in-person presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 10.80000%, plus reimbursement of $84,358.30 in expenses.

**Blasingame, Burch, Garrard & Ashley, PC.** Blasingame, Burch, Garrard & Ashley, PC ("BBGA") helped start the Pelvic Mesh litigation. BBGA partner Henry Garrard was appointed by Judge Goodwin to numerous positions, including Coordinating Co-Lead Counsel for all of the

transvaginal mesh MDLs, Co-Lead Counsel for the Bard MDL, a member of the Executive Committee, as well as a member of the Plaintiffs' Steering Committee.  BBGA partner Henry Garrard was also appointed as Chairperson of the Common Benefit Fee and Cost Committee. BBGA partner Josh Wages was appointed to the Plaintiffs' Steering Committee. BBGA started the TVM litigation that resulted in creating all the MDLs.  For the period of December 21, 2016, through December 30, 2020, the firm undertook significant work in performing the review of time and expense submissions of firms seeking common benefit compensation.  BBGA also prepared materials for distribution to firms seeking common benefit compensation and drafted the pleadings resulting in the successful award of the common benefit fund, the allocation of the common benefit fund, and the successful defense of the common benefit award against objections and appeals. Additionally, BBGA managed and coordinated the ongoing activities of the MDLs and assisted attorneys across the country in handling their cases.  Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 13.86434%, plus reimbursement of $467,202.31 in expenses.

**Blizzard & Nabers, LLP.**  Blizzard & Nabers partner Ed Blizzard is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed document review and conducted the deposition of a corporate representative in the Coloplast MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.08600%, plus reimbursement of $2,243.67 in expenses.

**Bossier & Associates, PLLC.** The firm worked with members of the Executive Committee and in the Bard MDL. For the period of December 21, 2016, through December 30, 2020, the firm aided leadership in the development of the Bard Alyte product litigation.  The firm performed document review, and prepared expert reports for general experts in support of the Bard Alyte product litigation. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.11000%, plus reimbursement of $11,242.94 in expenses.

**Burnett Law Firm.** Burnett Law Firm partner Riley Burnett is a Co-lead in the Coloplast and Neomedic MDLs, and a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm worked to develop the general liability case in the Coloplast MDL including coordination of MDL work assignments, performing document review, and taking depositions regarding product design, sales, marketing, regulatory affairs and general experts.  Burnett Law Firm partner Riley Burnett also served as a member of the Common Benefit Fee and Cost Committee in performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 6.80000%, plus reimbursement of $37,594.84 in expenses.

**Carey Danis & Lowe, LLP.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in state and federal courts for Ethicon cases that benefitted the MDL The time and expense submissions of the firm were reviewed by the FCC. Based on a complete review of the time and expense records, the Fee Affidavit, the firm's in-person presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.20000%.

**Clark, Love & Hutson, G.P.** Clark, Love & Hutson, G.P. ("CLH") performed a leadership role in the state and federal transvaginal mesh litigation from its inception. CLH partner Clayton Clark was appointed to serve as Co-Lead Counsel for the Boston Scientific MDL, is a member of the Executive Committee and the Plaintiffs' Steering Committee. Clayton Clark was also appointed as a member of the Common Benefit Fee and Cost Committee. CLH partner Scott Love is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm worked significantly in review of time and expense submissions of firms seeking common benefit compensation. CLH also aided in the preparation of materials for distribution to firms seeking common benefit compensation and the drafting of pleadings resulting in the successful award of the common benefit fund, and the allocation of the common benefit fund. In addition to contributions to the FCC, CLH continued its leadership of the BSC MDL by managing and coordinating the ongoing activities of the MDL and assisting firms with cases in the MDL waves. The firm also contributed to the Coloplast MDL through document review, preparation of discovery motions, preparation of general expert reports, and the taking of depositions of corporate representatives. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 13.36432%, plus reimbursement of $583,616.22 in expenses.

**Evers Law Group.** The firm contributed to the common benefit of the Ethicon MDL. For the period of December 21, 2016, through December 30, 2020, the firm performed document review at the request of leadership in the Ethicon MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.14000%.

**Frankovitch, Anetakis, Simon, Decapio & Pearl, LLP.** Frankovitch, Anetakis, Simon, Decapio & Pearl partner Carl Frankovitch serves as Plaintiffs' Co-Liaison Counsel and is a member of the Plaintiffs' Steering Committee. Carl Frankovitch also served as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.34000%, plus reimbursement of $34,964.75 in expenses.

**Frees & Goss, PLLC.** For the period of December 21, 2016, through December 30, 2020, the firm seeks recovery only for instances where expenses were incurred but not yet charged or received during the prior period of review.  These expenses were associated with time that was previously found to be compensable as common benefit, but invoices were not received until after the end of the prior review period.  Based on a complete review of the time and expense records, the Fee Affidavits, and evaluation of the firm's overall contribution to the common benefit of the MDLs, the Fee Committee recommends reimbursement of $197,290.03 in expenses.

**Hail Law Office.**  For the period of December 21, 2016, through December 30, 2020, the firm performed work in the Coloplast MDL at the request of leadership.  The firm primarily performed document review and additionally aided in preparation of a general expert report along with participation in *Daubert* briefing related to the general expert. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.77000%.

**Keith Miller Butler.**  For the period of December 21, 2016, through December 30, 2020, the firm performed work in its cases in federal courts for Ethicon cases. The time and expense submissions of the firm were for work performed in individual cases after the established cutoff time set forth by the Fee Committee. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends that the firm receive no allocation of common benefit funds.

**Kline & Specter, P.C.** Kline & Specter former partner Lee B. Balefsky is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed limited work in support of the Coloplast litigation.   The firm held a position of leadership in the MDL but performed most of its work in the state courts of Pennsylvania. In the Philadelphia Mass Tort Program in Pennsylvania State Court, the firm assisted in obtaining several successful verdicts against Ethicon, although most of those verdicts came on products where Plaintiffs' verdicts were already obtained either in the MDL or in prior state courts. The firm acknowledges that much of the work product used in their state court trials was obtained from the MDL, and MDL attorneys – including leadership in the Ethicon MDL, BSC MDL and others –also participated in the work-up and trial of those cases. The firm was not an active participant in the overall strategy and decision-making of the PSC. The firm has ultimately performed good work in representing their individual clients in state court in Pennsylvania. The hours submitted and reviewed by the FCC were for work on individual cases in state court. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.00000%.

**The Lanier Law Firm.** Lanier Law Firm partner Rick Meadow is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit.  Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs

for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.17500%.

**The Law Offices of A. Craig Eiland.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in the development of the AMS MiniArc product litigation at the request of leadership. The firm prepared expert reports and conducted depositions in support of the MiniArc case development. The firm also worked in the development of expert reports and conducting depositions in the Coloplast litigation. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.19400%, plus reimbursement of $14,994.96 in expenses.

**The Law Office of Adam D. Peavy.** For the period of December 21, 2016, through December 30, 2020, the firm performed work in Coloplast MDL. The firm performed document review, conducted the deposition of corporate representatives and aided in the preparation of general expert reports. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.37000%.

**Levin Simes, LLP.** For the period of December 21, 2016, through December 30, 2020, the firm continued its leadership role in the AMS MDL. The firm prepared general expert reports, conducted depositions of AMS corporate witnesses and opposed *Daubert* motions filed against plaintiffs' expert witnesses. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.75000%, plus reimbursement of $85,162.70 in expenses.

**Lockridge Grindal Nauen.** Lockridge Grindal Nauen partner Yvonne Flaherty was appointed to the Plaintiffs' Steering Committee. Yvonne Flaherty also served as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm contributed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation and assisted in other common benefit work and activities. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.34000%, plus reimbursement of $60,546.69 in expenses.

**Mazie Slater Katz & Freeman.** Mazie Slater Katz & Freeman contributed to the common benefit of the Bard and Ethicon MDLs. For the period of December 21, 2016, through December 30, 2020, the firm performed good work in representing their individual clients in state court in New Jersey. The firm was one of the first to bring TVM lawsuits and focused almost entirely upon litigation in New Jersey state court. In pursuit of the New Jersey litigation, the firm undertook discovery, document review, trial preparation and trial. Based on a complete review of the time and expense records, and other submissions and interactions with Adam Slater, and evaluation of

the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 4.25000%.

**Meyers & Flowers, LLC.** Meyers & Flowers partner Pete Flowers is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.06800%.

**The Monsour Law Firm.** Monsour Law Firm partner Douglas Monsour is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm participated in the development of the Coloplast litigation. The firm prepared for and was lead in multiple expert depositions in the Coloplast MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.04500%, plus reimbursement of $5,891.50 in expenses.

**Mostyn Law Firm P.C.** Former Mostyn Law Firm partner Steve Mostyn was a Co-lead in the Coloplast MDL and was a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm provided document review and other work in the Coloplast MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.60000%, plus reimbursement of $30,570.59 in expenses.

**Motley Rice, LLC.** Motley Rice, LLC played an active role in the state and federal litigation of transvaginal mesh from its inception. Motley Rice partner Fred Thompson was appointed by Judge Goodwin Coordinating Co-Lead for all transvaginal mesh MDLs and as a member of the Plaintiffs' Steering Committee and Executive Committee. Motley Rice partner Fidelma Fitzpatrick was appointed as Co-Lead Counsel for the AMS MDL and as a member of the Plaintiffs' Steering Committee. Motley Rice partner Joe Rice was appointed as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed significant work in the AMS and Ethicon MDLs through work with general experts, communications to firms regarding the MDL Wave process, organizing MDL experts to assist firms with wave cases, and providing updated expert reports and *Daubert* briefing in the wave process. The firm also contributed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation. Based on a complete review of the time and expense records, the Fee Affidavit, the firm's in-person presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 8.86432%, plus reimbursement of $176,626.47 in expenses.

**Mueller Law Firm.** Mueller Law Firm partner Mark Mueller is a member of the Plaintiffs' Steering Committee and was Co-Lead of the Coloplast MDL. For the period of December 21, 2016, through December 30, 2020, the firm had limited time submission relating to appearances in Court regarding the Coloplast MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.01800%, plus reimbursement of $2,809.75 in expenses.

**The Oliver Law Group, P.C.** Oliver Law Group partner Alyson Oliver is a member of the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.00600.

**Perdue & Kidd.** Perdue & Kidd contributed to the common benefit of the Boston Scientific, Ethicon and Coloplast MDLs. For the period of December 21, 2016, through December 30, 2020, the firm assisted in general expert reports in the Boston Scientific and Ethicon MDLs. The firm also conducted expert depositions in the Coloplast MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.62900%, plus reimbursement of $14,220.75 in expenses.

**Potts Law Firm.** Potts Law Firm partner Derek Potts is a member of the Plaintiffs' Steering Committee, Executive Committee, and is a Co-Lead Plaintiff's Counsel in the Bard and Neomedic MDLs. For the period of December 21, 2016, through December 30, 2020, the firm continued to respond to questions as leadership in the MDL. The firm, at the direction of the MDL Court, acted as mediator for cases and successfully aided the resolution of individual cases. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.34000%, plus reimbursement of $62,082.84 in expenses.

**Restaino Law, LLC.** The firm performed common benefit work in the Ethicon MDL. For the period of December 21, 2016, through December 30, 2020, the firm conducted the deposition of defendant's general experts and aided in the *Daubert* briefing regarding plaintiffs' experts in the Ethicon MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.98700%.

**Salim Beasley, L.L.C.** Salim Beasley partner Robert Salim is a member of the Plaintiffs' Steering Committee and serves as Co-Lead for the Coloplast MDL. For the period of December 21, 2016, through December 30, 2020, the firm generally helped coordinate and oversee the development of

the Covidien MDL. The firm conducted Coloplast discovery and briefing. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 3.50000%, plus reimbursement of $519,242.97 in expenses.

**The Sanders Firm.** Sanders Firm partner Victoria Maniatis is a member of Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, the firm participated in development of cases in the Mullins consolidation in the Ethicon MDL. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.05270%.

**Schneider, Wallace, Cottrell, Konecky, LLP.** Schneider, Wallace, Cottrell, Konecky partner Amy Eskin started litigation against AMS before the creation of the MDL and was named Co-Lead of the AMS MDL upon its creation as well as a member of the Executive Committee and the Plaintiffs' Steering Committee. For the period of December 21, 2016, through December 30, 2020, Amy Eskin continued her leadership role in the AMS MDL. Ms. Eskin responded to questions from firms with cases placed in the MDL Waves, assigned coverage of depositions, and opposed *Daubert* motions filed against plaintiffs' expert witnesses. Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.06900%.

**Schroeder Law Office.** Schroeder Law Office partner Karen H. Beyea-Schroeder is a member of the Plaintiffs' Steering Committee and Co-Lead of the Neomedic MDL For the period of December 21, 2016, through December 30, 2020, the firm continued its leadership role in the Neomedic MDL and also handled the privilege and redaction log in the Boston Scientific MDL at the request of leadership. Ms. Beyea-Schroeder's time in working with the Burnett Law Firm in Coloplast was considered as part of the award made to Burnett Law Firm. Based on a complete review of the time, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.11000%.

**Wagstaff & Cartmell, LLP.** Wagstaff & Cartmell partner Tom Cartmell was appointed as member of the Executive Committee, the Plaintiffs' Steering Committee and Co-Lead Counsel for the Ethicon litigation. Wagstaff & Cartmell partner Jeff Kuntz served as the leader of the Ethicon Expert and Bellwether Committees during the Ethicon MDL. Wagstaff & Cartmell partner Tom Cartmell was also appointed as a member of the Common Benefit Fee and Cost Committee. For the period of December 21, 2016, through December 30, 2020, the firm contributed to the AMS, Coloplast and Ethicon MDLs. In the AMS MDL, the firm updated general expert reports for use in the MDL Court's Wave process. In Coloplast, the firm conducted document review, preparation of expert reports and the conduct of depositions of Coloplast corporate representatives. In Ethicon, the firm continued to provide leadership support for plaintiffs in the MDL Court's Wave process. The firm updated expert reports, defended *Daubert* motions filed against plaintiffs' general experts and conducted depositions including the preparation of the Mullins consolidation. The firm also

contributed work in the FCC by performing the review of time and expense submissions of firms seeking common benefit compensation.  Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 13.36432%, plus reimbursement of $229,768.56 in expenses.

**Watts Guerra, LLP.**  For the period of December 21, 2016, through December 30, 2020, the firm performed work relating to Ethicon MDL Wave cases prior to the FCC's cutoff for consideration of common benefit.  Based on a complete review of the time and expense records, the Fee Affidavit, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 0.00800%.

**Wexler Wallace, LLP.** Wexler Wallace partner Ed Wallace is a member of the Plaintiffs' Steering Committee.  For the period of December 21, 2016, through December 30, 2020, the firm contributed to the common benefit in the AMS and Ethicon MDLs.  In both the AMS and Ethicon MDLs, the firm performed work related to general expert defense including updated general expert reports, depositions and *Daubert* briefing. The firm also provided appellate briefing support for an MDL bellwether case whose verdict pre-dated the review period, and provided briefing support to another firm for its appellate case without fee interest.  Based on a complete review of the time and expense records, the Fee Affidavit, the firm's in-person presentation to the Fee Committee, and evaluation of the firm's overall contribution to the common benefit of the MDLs for the period of December 21, 2016, through December 30, 2020, the Fee Committee recommends an allocation of 1.65000%.